**Westlaw.**

Slip Copy                                                                                                          Page 1

Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
THE PACIFIC LUMBER CO, et al., Plaintiffs,
v.
NATIONAL UNION FIRE INSURANCE CO, OF PITTSBURGH, PA, et al., Defendant and Counter-Claimant.
No. C 02-4799 SBA(JL).

Jan. 5, 2005.

Bruce Stewart Flushman, Edgar B. Washburn, Scott Jonathan Kaplan, Noel Wise, Shaye Diveley, Stoel Rives LLP, San Francisco, CA, Frank Shaw Bacik, John A. Behnke, Carter Behnke Oglesby & Bacik, Ukiah, CA, for Plaintiffs.
James P. Wagoner, Jay A. Christofferson, McCormick Barstow Sheppard Wayte Carruth LLP, Fresno, CA, Jennifer M. Bozeat, Terry Marie Weyna, Lewis Brisbois Bisgaard & Smith, Sherman C. Lee, Norman J. Hamill, Sepanik Cortner McNaboeColliau Elenius, Linda Wendell Hsu, Lisa A. Williams, Nicholas Banko, Esq., Selman Breitman LLP, San Francisco, CA, Lane J. Ashley, Lewis Brisbois Bisgaard & Smith LLP, Alan H. Barbanel, Barbanel & Treuer, Alan S. Berman, Armen K. Hovannisian, Berman & Aiwasian, David A. Hadlen, Sheryl W. Leichenger, Selman Breitman LLP, Los Angeles, CA, Bruce H. Winkelman, Berkeley, CA, Frank Shaw Bacik, John A. Behnke, Carter Behnke Oglesby & Bacik, Ukiah, CA, for Defendants.

ORDER GRANTING GENERAL STAR'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES (Docket # 309)

Introduction

LARSON, Magistrate J.

*1 All discovery in this case has been referred by the district court (Hon. Saundra Brown Armstrong) as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72. Discovery cut-off was December 15, 2004 and the last day to file discovery motions under the version of Civil Local Rule 26-2 in effect until January 1, 2005 was December 27, 2004.

The parties met and conferred by letter and telephone to attempt to resolve this dispute. This Court prefers that parties meet and confer in person and reserves the right to order counsel to gather in a small unventilated witness interview room for that purpose.

Background

On August 23, 2004, General Star, a third-party defendant brought into this lawsuit by defendant National Union ("NUFI"), propounded 18 contention interrogatories to National Union to determine, among other things, whether there is any theory or scenario under which National Union contends that General Star's umbrella policies might be obligated to defend or indemnify plaintiff Pacific Lumber Company ("PALCO"), and whether National Union is aware of any evidence or documents showing that any *Wrigley* plaintiff alleged or sustained physical injury to tangible property, loss of use of tangible property, or bodily injury before July 1, 1991, the date of expiration of General Star's policy with Pacific Lumber. Resolution of this part of the case hinges on this information.

Contention interrogatories are meant to narrow the issues in a lawsuit. Narrowing the issues to either the most significant or the most viable enables the parties and the court to bring the lawsuit to a close, either through settlement or trial. The former is presumably more economical as to both financial and judicial resources. General Star propounded its interrogatories to National Union to attempt to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 2
Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

resolve the lawsuit prior to an expensive trial. It asked for specific facts and documents which support National Union's contentions that the plaintiffs in the underlying lawsuit (the *Wrigley* lawsuit, hence the "*Wrigley* plaintiffs"), over which many many insurance companies are battling, suffered alleged or actual damage to tangible property prior to 1991, the expiration date of General Star's policy with Pacific Lumber. Pacific Lumber settled with the plaintiffs in the underlying lawsuit and tendered that settlement to its insurers, who are passing it around like a hot potato.

National Union attempts to score with its quick pass in this particular discovery dispute. Not only do its responses not narrow the issues in the lawsuit, they actually manage to obscure, obfuscate and broaden the issues enough to render them virtually unrecognizable.

### Factual Background

The landowners in the watershed on the North Fork of the Elk River sued for damages to their farms and homes caused by flooding and siltation which was in turn caused by Pacific Lumber's logging roads and logging debris, which denuded the hillsides and choked the streams with soil and timber slash. The streams in turn clogged the North Fork of the Elk River, which rose several feet on its new floor of silt, where it had previously been paved in cobbles and gravel. The rise in the water level and the amount of muck in the water led the *Wrigley* plaintiffs to suffer clogged water pumps, stinking drinking water, and flooded homes, orchards and barns. As "the *Wrigley* plaintiffs," they sued Pacific Lumber, which settled, paid them and then tendered the costs of settlement and defense to its insurers.

### Contention Interrogatories

*2 General Star's policy with Pacific Lumber expired in 1991. All it wants to know from National Union is what specific damage National Union contends that the *Wrigley* plaintiffs either allege they sustained or actually sustained while General Star's policy was in effect, that is, prior to 1991. It doesn't ask what Pacific Lumber did, either before or after 1991. It doesn't ask what happened to the Elk River, either before or after 1991. It asks only about the plaintiffs' damages.

National Union contends that General Star's dissatisfaction with its responses is "nonsense." It contends that it is reasonable to answer questions about specific damages to *Wrigley* plaintiffs with information about acts of Pacific Lumber because " Any facts regarding Pacific Lumber's timber harvesting practices which took place prior to July 1, 1991 clearly relate to alleged and actual ' pre-1991 damages to tangible property' since such damages were alleged by the *Wrigley* plaintiffs to have emanated from Pacific Lumber's harvesting practices." (Opposition at 8)

National Union contends that it is legitimate for it to respond to General Star's Interrogatory Nos. 3 and 4 with "facts indicating the *Wrigley* plaintiffs suffered damages from 1985 onward based on Pacific Lumber's logging and harvesting practices and information indicating the damage occurred to the Elk River and/or the *Wrigley* plaintiffs real or personal property occurring both before and after 1991." (*Id.*)

National Union advises General Star to "disregard" any irrelevant information in its discovery responses. (*Id.*) Specifically, damage to Freshwater Creek is relevant because reports by government agencies describe it as similar to damage on the Elk River. (Opp. At 9) In addition, any information regarding sedimentation and pollution of the Elk River is relevant to plaintiffs' alleged injuries because their injuries relate to their water supply. (*Id.*)

National Union also defends the letter of Susan Kuehl, the claims supervisor for Old Republic on the *Wrigley* claim, expressing her opinion that all of Pacific Lumber's insurers from 1985 onward would be obligated to provide a defense based on the allegations of the *Wrigley* complaint. Kuehl concluded that plaintiffs alleged a continuous loss. National Union finds this relevant to show that the *Wrigley* plaintiffs suffered damages prior to July 1, 1991. (Opp. At 11)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 3

Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

National Union contends that the details and circumstances surrounding the *Wrigley* plaintiffs' alleged and actual damages are the same, therefore the allegations of the complaint are responsive to General Star's interrogatories, specifically Interrogatory 3 and 4. In particular, the amount of the settlement plus the value of the land purchased by Pacific Lumber could show the total amount of damages. National Union provided page and line citations to plaintiffs' deposition testimony in support of its contentions regarding their damages. National Union says the allegations of the individual *Wrigley* plaintiffs are set forth in the four versions of the complaint in that case. (Opp. at 13-14)

*3 In response to General Star's contention interrogatories:

Interrogatory 1: National Union refused to state which policy provisions it relies on to contend that General Star had a defense obligation to Pacific Lumber. National Union responds only that discovery has not concluded and this litigation has not progressed fully, so it is unknown whether the General Star Umbrella Policies have any obligation to defend or indemnify Pacific Lumber with regard to the *Wrigley* lawsuit. National Union naively disregards its own Third Party Complaint against General Star which alleges that General Star has an obligation to defend and indemnify Pacific Lumber under its Umbrella Policies.

This Court is mindful of its own prior decision denying National Union depositions of Third-party insurers' claims handlers and adjusters regarding its "hypothetical claims" against the Third Party insurers, mentioning in dicta that National Union's liability to Pacific Lumber had not yet been determined. However, the major rationale for the court's decision was that the proposed deponents had no personal knowledge of the subject matter on which they were to be deposed. Balancing the lack of knowledge against the burden of the depositions led the court to grant the protective order.

In these interrogatories, General Star is very reasonably asking National Union to lay its cards on the table-it should by now know what evidence supports its claims. National Union knows how much Pacific Lumber is demanding for defense, and the language of each of the Pacific Lumber policies, along with tens of thousands of pages of documents detailing the damage and when it occurred. The Court orders National Union to answer Interrogatory 1 with specific citations to policy provisions.

Interrogatory 2: National Union refuses to state which policy provisions give rise to a duty to indemnify Pacific Lumber. It objects that this query is "premature." Discovery closed on December 15. National Union sued General Star on the basis that it owed an indemnity obligation to Pacific Lumber under its umbrella policies. Now is the time for National Union to answer Interrogatory 2.

Interrogatory 3: National Union responds voluminously to General Star's question: "describe in detail any and all physical injury to tangible property that you contend [any *Wrigley* plaintiff] *allegedly* sustained before July 1, 1991."

However, its voluminous response is virtually nonresponsive. For example:

In fifteen pages, National Union gives five categories of nonresponsive data:

(1) allegations that Pacific Lumber performed certain acts before 1991;

(2) allegations of changes of river morphology in the Elk River, which was not property owned by any *Wrigley* plaintiff;

(3) references to alleged damages to property of *Wrigley* plaintiffs after 1991;

(4) references to alleged damages to property of *Wrigley* plaintiffs without regard to dates; and

*4 (5) references to completely irrelevant information such as damage to other watersheds not even involved in the *Wrigley* litigation (the Freshwater Creek watershed).

National Union's supplemental response to this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                   Page 4
Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

interrogatory merely adds silt to the flood, specifically the deposition testimony of Dr. Ranjit Gill, describing increased sedimentation of the Elk River since 1987, which might be interpreted as verifying harm to riparian rights of *Wrigley* plaintiffs. However, riparian rights are nontangible property, which is not covered under the umbrella or any other policies. *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001).

The supplemental response also includes a letter from Jan Kraepelien referring to Pacific Lumber's cutting practices since 1987, without connecting those practices to any specific property damage. A script from a video by Humboldt Watershed Counsel refers to logging practices, again without connecting them to any property damage. A statement by the *Wrigley* plaintiffs states that their initial lawsuit sought compensation for impairment of beneficial uses of the Elk River. These uses constitute intangible property not covered by the umbrella policies. *See Kanzi*, 24 Cal. 4th 879.

National Union's answers are nonresponsive. The Court orders National Union to answer Interrogatory 3 with reference to specific damage to tangible property.

Interrogatory 4: asks National Union to "describe in detail any and all physical injury to tangible property you contend [the *Wrigley* plaintiffs] *actually sustained* before July 1, 1991. National Union objects with boilerplate about burden oppression etc., and then responds, "See response to Interrogatory No. 3."

Responding to an interrogatory with a reference to another interrogatory or to a document or pleading is improper. "It is well established that an answer to an interrogatory 'must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.'" *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 650 (N.D.Ind.1991)(citing 4A J. Moore, J. Lucas, Moore's Federal Practice §

33.25[1](2d ed.1991)); *see also United States v. Dist. Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America*, 1992 WL 188379 (S.D.N.Y.1992)(" Where the interrogating party makes a request for an answer to certain questions, a [party] responds inappropriately by merely designating documents because the interrogatory did not call for business records."); *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686 (D.Kan.1991) ("Incorporation by reference to a deposition is not a responsive answer.").

National Union defends itself by saying it references pages and lines within depositions. This would be mitigating if its references were responsive. Most of the time, they are not.

*5 General Star asked separate interrogatories for a reason-the difference between alleged damages and actual damages is pivotal in insurance coverage disputes. The duty to indemnify rests entirely on what damages were proved to have been *sustained* by the insured. The duty to defend, however, is triggered by mere *allegations* of covered damages. This distinction is essential to narrowing the coverage issues in this lawsuit. National Union's response is evasive and incomplete. The Court orders National Union to answer Interrogatory 4 specifically with respect to physical injury it contends any of the *Wrigley* plaintiffs actually sustained.

Interrogatory 5 asks National Union to describe " with particularity" all **documents** evidencing " physical injury to tangible property" allegedly or actually sustained by the *Wrigley* plaintiffs before July 1, 1991.

National Union lists a "mountain" of **documents** and concludes its response with the catch-all provision of "[a]ll **documents** produced by parties in this action, including all Rule 26 disclosures and production of **documents** through requested discovery. All **documents** produced **pursuant** to subpoena in this action." After two meet and confer letters, National Union states in its October 18, 2004 letter that "in the spirit of compromise," it agrees to rely on all of the **documents** listed in its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        Page 5
Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

original response, but reserves the right to rely on other **documents**.

National Union defends its reference to numerous **documents** in response to Interrogatory 5, as well as Interrogatory 8 and Interrogatory 11. It claims it made "diligent efforts to cull" from the 70,000 pages of **documents identified** to date (Opp. At 16-17) (Nelson Decl. Ex. B, 18:8-19:12; Ex. G, 7:12-8:13) Specifically, National Union says "the **documents identified** in response to Interrogatory 5, in particular, are equally responsive to Interrogatory 11 because they all relate to the cause of the *Wrigley* plaintiffs' alleged and/or actual property damage (including loss of use of tangible property or bodily injuries) because they all implicate Pacific Lumbers logging and harvesting activities and related (1) flooding of the *Wrigley* plaintiffs' property; (2) hyper-sedimentation of the Elk River, which serves as the plaintiffs' water supply; and (3) damages incidental to the flooding and sedimentation exposure listed above." (Opp. at 18)

National Union's response is meaningless. Catch-all provisions are not sufficiently specific to be responsive, even when combined with more specific references to evidence. *Struthers Scientific & Intern. Corp. V. General Foods Corp.*, 51 F.R.D. 149, 153 (D.Del.1970). National Union posits a boundary-free discovery zone, including documents that refer to harm to the Elk River, which no *Wrigley* plaintiff owns, damages to other rivers not even involved in the *Wrigley* lawsuit, damages to *Wrigley* plaintiffs after 1991, and Pacific Lumber's actions without reference to dates.

*6 The Court orders National Union to answer Interrogatory 5 by **identifying** only those **documents** which contain evidence of "physical injury to tangible property" allegedly or actually sustained by the *Wrigley* plaintiffs before July 1, 1991.

Interrogatory 6 asks National Union to "describe in detail any and all bodily injury that [National Union] contends [the *Wrigley* plaintiffs] allegedly sustained before July 1, 1991."

National Union objected with boilerplate about burden oppression etc., but then responded that " Each plaintiff alleged injuries based on exposure to drinking polluted and oversilted water, using heavily silted water, exposure to smoke (from Pacific Lumber's burning debris), anxiety, sleep loss, emotional distress, headaches, and stomach aches. See response to Interrogatory No. 3."

General Star asks the Court to order National Union to explain why the use of silted water constitutes " sickness or disease," and to include the dates these " bodily injuries" took place, as well as which *Wrigley* plaintiff sustained which bodily injury. National Union defends its sparse response with the assertion that General Star's asking it to assign bodily injuries to each of the 21 *Wrigley* plaintiffs exceeds the interrogatory limit and that whether the use of silted water is a bodily injury is a legal contention which calls for a legal interpretation, outside the bounds of this discovery motion. General Star rejoins that an interrogatory directed at eliciting details concerning a common theme should be considered a single question. *Wright & Miller*, 8A Fed. Prac. & Proc. Civ.2d § 2168.1 at 261. General Star is aware of no bodily injuries sustained by *Wrigley* plaintiffs prior to July 1, 1991 and challenges National Union to provide evidence otherwise. The inquiry does not exceed the interrogatory limit and National Union shall respond according to its own contentions.

The Court orders National Union to answer Interrogatory 6 by specifying which *Wrigley* plaintiff suffered which bodily injury and the date of the injury.

Interrogatory 7-"As to each plaintiff in the *Wrigley* action, describe in detail any and all bodily injury that you contend he or she *actually* sustained before July 1, 1991.

National Union objected with boilerplate and then responded that this interrogatory regarding all 21 *Wrigley* plaintiffs exceeds the limit of 25 interrogatories. Then it referred to its response to Interrogatory 6.

General Star seeks an answer because a bodily injury *actually* sustained by a *Wrigley* plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 6
Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

could potentially trigger a duty to indemnify, as distinguished from an *allegation* of bodily injury which could trigger a duty to defend. National Union's referral to its response to Interrogatory 6 is improper and its refusal to answer is evasive and the Court orders National Union to respond to Interrogatory 7 as to each injury it contends any *Wrigley* plaintiffs actually sustained.

*7 Interrogatory 8-"Describe with particularity all **documents** evidencing bodily injury allegedly or actually sustained by any and all plaintiffs to the *Wrigley* action before July 1, 1991. If any **document** consists of more than one page, explain in detail what portion or portions of the **document** evidence bodily injury sustained by the plaintiffs to the *Wrigley* action before July 1, 1991.

National Union objects as it does to Interrogatories 6 and 7 and then refers General Star to its response to Interrogatory 5.

Interrogatory 8 seeks **documents** with evidence of *bodily injury*. Interrogatory 5 asks about **documents** with evidence of damage to *tangible property*. National Union's response to Interrogatory 5 refers to a "mountain" of non-responsive information including acts by Pacific Lumber, effects on the Elk River and generalizations. Once again, National Union is evading answering the question. The Court orders National Union to provide a direct responsive narrative answer to Interrogatory 8, specifying only documents it relies on for evidence of bodily injury allegedly or actually sustained by any *Wrigley* plaintiffs.

Interrogatory 9-"As to each plaintiff in the *Wrigley* action, describe in detail any and all loss of use of tangible property that you contend he or she *allegedly* sustained before July 1, 1991."

National Union responded as it did to Interrogatories 5-8-with boilerplate objections and that the request exceeds the 25 interrogatory limit under the Civil Local Rules. It then describes The *Wrigley* plaintiffs' loss of riparian rights, inability to draw water from the river for cooking, drinking and washing, lost use of barns, automobiles, fields, livestock, pasture land, water filters, bridges and their own homes based on flooding and siltation of the North Fork of the Elk River. It then refers General Star to its response to Interrogatory 3.

The latter response is procedurally improper, since it refers to another interrogatory. The objection is not well-taken, since the interrogatory is not compound because it asks the same question regarding a common group of people *See Wright & Miller*, 8A Fed. Prac. & Proc. Civ.2d § 2168.1 at 261.

National Union also ignores the temporal aspect of the interrogatory, responding vaguely about loss of use without reference to dates, the most significant aspect of the question. General Star's coverage ended on July 1, 1991. General Star contends the only covered damage would be that which occurred while its policy was in force. Some of the damage listed by National Union did not occur until 1994. National Union may have a theory that the earlier acts of Pacific Lumber started a continuous sequence of damages, during the pendency of General Star's policy. Nevertheless, General Star is entitled to a straight answer. The Court orders National Union to answer Interrogatory 9, listing specific plaintiffs, their damages and the dates.

Interrogatory 10-"As to each plaintiff in the *Wrigley* action, describe in detail any and all loss of use of tangible property that you contend he or she *actually* sustained before July 1, 1991."

*8 National Union objected with boilerplate, and that the interrogatory exceeded the 25-interrogatory limit set by the Civil Local Rules. Then National Union responded "See Interrogatory Nos. 3, 9."

Referring to another interrogatory is procedurally improper, and ignores the significant difference between the interrogatories. Again, National Union is ignoring the distinction between *allegedly* sustained loss of use and *actually* sustained loss of use by the *Wrigley* plaintiffs. This distinction is crucial in insurance coverage litigation, as actual damages may affect the duty to indemnify, while alleged damages may affect the duty to defend. National Union's reference to its response to Interrogatory 9 frustrates General Star's attempt to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 318811 (N.D.Cal.)
(Cite as: Slip Copy)

Page 7

narrow the issues in this case. The Court orders National Union to answer Interrogatory 10 with a narrative response specifying specific damage for each plaintiff for specific dates.

Interrogatory 11-"Describe with particularity all **documents** evidencing loss of use of tangible property allegedly or actually sustained by any and all plaintiffs to the *Wrigley* action before July 1, 1991. If any **document** consists of more than one page, explain in detail what portion or portions of the **document** evidences loss of use of tangible property sustained by plaintiffs to the *Wrigley* action before July 1, 1991."

National Union objects with boilerplate, and that the interrogatory exceeds the 25 interrogatory limit, then responds: "See Response to Interrogatory Nos. 3, 5."

National Union's response referring to other interrogatories is improper, since it merely incorporates those responses by reference. National Union's Responses to Interrogatory Nos. 3 and 5 merely refer to every document and every injury alleged by any *Wrigley* plaintiffs (and some plaintiffs from other, unrelated litigation). This response defeats the purpose of a contention interrogatory to narrow the issues for settlement or trial and put a party on notice of its opponent's contentions and the evidence on which it relies. The Court orders National Union to answer Interrogatory 11 with specific reference to particular *Wrigley* plaintiffs, specific damages and specific dates.

Conclusion

National Union asserts that "General Star cannot make threats of seeking sanctions for bad faith actions by National Union because it has set forth too many facts and documents." Sanctionable or not, National Union's attempt to muddy the waters by producing a mountain of non-responsive information creates a logjam in the course of this litigation. It is time to clear away the debris.

IT IS SO ORDERED.

N.D.Cal.,2005.
Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh
Slip Copy, 2005 WL 318811 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 4:02cv04799 (Docket) (Oct. 04, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.