

Slip Copy                                                                                                                                               Page 1
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia,Atlanta Division.
Yanga J. WILLIAMS, as surviving spouse of Frederick Jerome Williams, deceased, and the Estate of Frederick Jerome Williams, by its Administrator, Brenda G. Bates, Plaintiffs,
v.
TASER INTERNATIONAL, INC. a Delaware Corporation, Gwinnett County, Georgia, Gwinnett County Sheriff R.L. "Butch" Conway, in his official and individual capacity, Robert E. Kenyon, in his individual capacity, T.J. Topor, in his individual capacity, Prison Health Services, Inc., a Delaware Corporation, Stephen C. Smith, Michael A. Mustachio, in his individual capacity, Mark R. Cook, in his individual capacity, Todd P. Butorac, in his individual capacity, and James Thomas Ferguson, in his individual capacity, Defendants.
**Civil Action No. 1:06-CV-0051-RWS.**

June 30, 2006.

Alan J. Hamilton, Butler, Wooten & Fryhofer, LLP, Melvin T. Johnson, Melvin Johnson & Assoc., Atlanta, GA, James Edward Butler, Jr., Butler, Wooten & Fryhofer, LLP, Columbus, GA, Joan Gale Crumpler, Keenan R. S. Nix, Nix, Graddock & Crumpler, P.C., Decatur, GA, for Plaintiffs.
Jessie C. Fontenot, Jr., Joel G. Pieper, Womble Carlyle Sandridge & Rice, Phillip Edward Friduss, Matthew R. Lavallee, Hall Booth Smith & Slover, Atlanta, GA, Bret Thomas Thrasher, John Patrick O'Brien, Thompson O'Brien Kemp & Nasuti, Norcross, GA, Karen Gilpin Thomas, Terry Eugene Williams, Terry Williams & Associates, Lawrenceville, GA, for Defendants.

### *ORDER*
RICHARD W. STORY, District Judge.
**\*1** Now before the Court are Defendants' Fourth Motion for Extension of Time To Answer Crossclaims [76]; Defendant Taser International, Inc.'s Motion for Protective Order [95]; Plaintiffs' First Motion to Compel [101]; Plaintiffs' First Motion for Extension of Time to Complete Discovery [109]; and Plaintiffs' Motion for Hearing on Plaintiffs' First Motion to Compel and Defendant Taser's Motion for Protective Order [116]. After considering the entire record, the Court enters the following Order.

### Background

This case arises out of the death of Frederick Williams while in the custody of the Gwinnett County Sheriff's Department. Plaintiffs allege that the death of Mr. Williams was caused, in part, by the use of a Taser M-26 "stun gun." As relevant to the instant motions, Plaintiffs have asserted claims against Defendant Taser International, Inc. ("Taser"), the manufacturer of the Taser M26, for the negligent design and manufacture of the M-26, failure to warn of known defects, and strict liability.

Discovery in this matter is ongoing. However, both parties have filed motions requesting that the Court intervene to resolve several discovery disputes.

### Discussion

### I. Preliminary Matters

Before turning to the merits of the pending discovery motions, the Court resolves two preliminary matters. First, the docket in this matter reflects that Defendants' Fourth Motion for Extension of Time to Answer [76] is still pending before the Court. This Motion was resolved by consent order (*see* Order of April 11, 2006[89] ), and the Moving Defendants have timely filed their answers. (*See* Answer to Crossclaim of Gwinnett Defendants [93]; Answer to Crossclaim of Defendant Michael Mustachio [94].) Accordingly, the Clerk is **DIRECTED** remove this Motion from the pending motions list.

Second, Plaintiffs have filed a Motion for Hearing with respect to both their Motion to Compel and Taser's Motion for Protective Order. (*See* Pls.' Mot. for Hrg. [116].) The Court has reviewed the submissions of the parties and has determined that an oral hearing on these motions is unnecessary. Accordingly, Plaintiffs' Motion for Hearing [116] is **DENIED.**

### II. Defendant's Motion for Protective Order

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The parties have negotiated in an attempt to reach a compromise with respect to the terms of a protective order to govern discovery in this case. These negotiations have failed, however, to result in a consent protective order, and the Court must now resolve this dispute.

Federal Rule of Civil Procedure 26(c) provides that for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way....

Fed.R.Civ.P. 26(c)(7). It is well-established that the party wishing to obtain a protective order has the burden of demonstrating that "good cause" exists for the order. *See, e.g., Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir.1994); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.,* 231 F.R.D. 426, 429-30 (M.D.Fla.2005); *Condit v. Dunne,* 225 F.R.D. 113, 115 (S.D.N.Y.2004). Moreover, "[t]he party seeking a protective order must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners, Ins.,* 231 F.R.D. at 430 (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)); *see also, e.g., Doe v. Dist. of Columbia,* 230 F.R.D. 47, 50 (D.D.C.2005) (stating that to demonstrate good cause under Rule 26(c), "the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements.").

*2 Taser moves this Court for entry of a protective order on grounds that it "derives a competitive advantage in the marketplace from the proprietary information covered by Plaintiffs' discovery requests, and the disclosure of this information to competitors would cause [Taser] significant harm," (Mot. for Prot. Ord. [95-1] at 3), and has submitted a proposed protective order as an exhibit to its motion.[FN1] Plaintiffs do not contest the entry of a protective order generally, or the fact that they seek discovery of confidential business information. Rather, Plaintiffs take issue with four specific aspects of Taser's proposed protective order. Specifically, Plaintiffs ask this Court to reject provisions of that proposed order which Plaintiffs contend

FN1. Taser submitted a proposed protective order attached as an exhibit to its initial motion which erroneously stated that counsel for the parties had consented to the terms of that order. (*See* Mot. for Prot. Order Ex. A [95-2] at 1.) On May 8, 2006, the Court entered the order, believing that all parties had consented. (*See* Order of May 8, 2006[96].) Counsel for Plaintiffs then advised the Court that they did not consent to the Order as entered and desired an opportunity to respond. In view of Plaintiffs' objections, the Court vacated its May 8, 2006 Order. (*See* Order of May 9, 2006.) Taser has now submitted a proposed protective order attached as an exhibit to its reply which, aside from now reflecting the absence of Plaintiffs' consent, is identical to the initial proposed order. All references to Taser's proposed protective order, therefore, will be to that order submitted as Exhibit B to Taser's Reply (Dkt. No. 112-3).

(1) require destruction of documents and prevent sharing with other attorneys and experts pursuing similar litigation against Taser; (2) seek to use a generic mark of "confidential", instead of a case-specific identifier "*Subject to Protective Order/Williams v. Taser, et al.*"; (3) require plaintiffs to obtain written acknowledgment forms from any experts or witnesses receiving confidential information; and (4) make it a violation of this Court's order for a person to say he has or has seen confidential information.
(Resp. to Mot. for Prot. Order [102-1] at 2-3 (citations omitted).) The Court addresses each of the contested provisions in turn.

A. Document Destruction/Non-sharing

Plaintiffs object to certain provisions of Taser's proposed protective order on grounds that those provisions would require confidential documents to be returned or destroyed at the conclusion of this litigation, and preclude Plaintiffs from sharing confidential information obtained in the course of discovery with attorneys pursuing similar cases against Taser. In this regard, Plaintiffs object to Paragraph 3, which limits the persons to whom confidential information may be provided, and Paragraph 14, which provides that counsel agrees to destroy or return all documents designated as confidential within ten days of the conclusion of this litigation. (*Id.* at 6.) In furtherance of their position,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                      Page 3
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

Plaintiffs assert that any prohibition on sharing confidential documents is contrary to law and sound public policy, and contend that Taser has failed to establish that Plaintiffs' retention and sharing of documents with counsel in other litigation against Taser will lead to a competitive disadvantage. (*Id.*)

The Court appreciates why Plaintiffs would desire to share confidential documents with other attorneys involved in litigation against Taser, and in no way doubts counsel's intent to abide by the terms of the protective order. That said, the Court recognizes that the more widely confidential documents are disseminated, it becomes both more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order. In this case, the Court finds the risk to Taser posed by the release of its confidential information, and the difficulties of enforcing a protective order when confidential documents are widely disseminated, outweigh Plaintiffs' interest in sharing that information among various plaintiffs' counsel and experts. Thus, the Court declines to allow Plaintiffs to either retain confidential documents upon the conclusion of this litigation, or to share confidential documents with other attorneys or experts involved in litigation against Taser.

**\*3** Accordingly, the Court will adopt the language set forth in Paragraph 3 of Taser's proposed protective order. Additionally, the Court will adopt the language in Paragraph 14 of Taser's proposed protective order, as modified below:
The Parties' counsel agree to destroy or return all Confidential Documents they receive from another Party within twenty (20) calendar days of the conclusion of this litigation, including any appeal, or the applicable appeal period if an appeal is not filed. Counsel will submit written certification of the destruction of the documents to the producing Party upon their destruction. Counsel of record may retain, subject to the confidentiality provisions of this Protective Order, a copy of all correspondence, pleadings, motion papers, deposition or trial transcripts and exhibits, legal memoranda and work product, as well as any Confidential Information contained within any summaries of Confidential Documents. Where such information is retained, it shall remain protected pursuant to the terms of this Protective Order, both during and after the conclusion of this litigation.

B. Case-specific Identifying Stamp

Plaintiffs take issue with Paragraph 1 of Taser's proposed protective order which states:
Each page of any document claimed by any Party to be subject to this Protective Order shall be marked "CONFIDENTIAL" in such a way as to not obscure any text, drawings, or markings.

(*See id.* at 10-13.) Rather, Plaintiffs propose the following language:Each page of any document claimed by any Party to be subject to this Protective Order shall be marked **"Subject to Protective Order/Williams v. Taser, et al."** in such a way as to not obscure any text, drawings, or markings.

(*Id.* at 10.)

Plaintiffs contend that a generic designation of "CONFIDENTIAL" is inadequate for two reasons. First, Plaintiffs argue that allowing Taser to use a generic stamp will allow it to "mindlessly subject thousands of pre-marked documents to this Court's order," rather than evaluating whether a specific document may be properly designated as confidential under Rule 26 in this case. (*Id.* at 10-12.) Second, Plaintiffs argue that, in the event that a document designated as confidential were to become public, there is no way, in the absence of a case-specific identifying stamp, for Plaintiffs to refute an allegation that they were responsible for the publication, and no way for this Court to adjudicate such a dispute. (*See id.* at 12-13.)

The Court finds a designation of "CONFIDENTIAL" sufficient to protect the interests of all parties in this litigation. It is no secret that the safety of Taser products has been, and is presently being, litigated in other fora, and the Court perceives no reason to require that confidential documents produced in this case be specially stamped, when the same documents may also be subject to production under protective orders in other cases. That said, the Court expects that documents will be designated as confidential in this case only after they have been carefully reviewed and the propriety of such a designation evaluated.[FN2] Were the Court to conclude that, for example, documents were designated as confidential without first assessing whether they are properly subject to this Court's protective order, or that the confidential designation was used to frustrate discovery, the Court would likely find sanctions appropriate.

FN2. A corollary to this, of **course**, is that the Court would similarly expect that the

Slip Copy                                                                                                                    Page 4
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

confidential designation be removed from any **documents** previously labeled as such, but for which that designation is no longer appropriate.

**\*4** Moreover, the Court finds Plaintiffs' fears unfounded where, as here, **Defendant** has represented that all **documents produced** subject to this Court's protective order will be marked with a case-specific Bates label. (*See* Reply in Supp. of Mot. for Prot Order [112-1] at 8.) Such case-specific Bates labeling of confidential **documents** is sufficient to allow the parties, and this Court, to readily assess whether a **document** improperly made public was **produced** in this case. As such, the Court finds appropriate, and will adopt, the language set forth in Paragraph 1 of Taser's proposed protective order.

C. Written Acknowledgments

The parties disagree about language in Taser's proposed protective order which would **require** any person to whom disclosure of confidential information is made to receive a copy of this Court's Protective Order and to acknowledge, in writing and in the form attached as Exhibit "A" to the protective order, that they are bound by its terms. Additionally, the parties dispute whether they should be required to maintain these acknowledgment forms, and to make them available at the conclusion of this litigation upon the request of any party.

Such written acknowledgments are common in cases involving the disclosure of sensitive information. Additionally, as Taser recognizes, they are often necessary for the effective enforcement of a protective order. The Court finds imposing a similar requirement here to be reasonable, and accordingly, adopts the language set forth in Paragraph 7 of Taser's proposed protective order.

D. Provisions Relating to Revelation of Confidential Information

Paragraph 8 of Taser's proposed protective order provides:
No Qualified Person shall distribute sell, offer for sale, advertise or publicize Confidential Information or the fact that such persons have obtained Confidential Information. Nothing in this Paragraph shall prohibit persons from referring to the existence of this Order.

Plaintiffs object to this language as overbroad, in that it would protect not only the substance of confidential information disclosed in the course of this litigation, but also prohibit the disclosure of the mere fact that such information exists. The Court agrees.

While the Court may question the rationale behind disclosing the mere existence of confidential information, and would, moreover, view the disclosure of confidential information in violation of this Court's Protective Order as sanctionable, the Court perceives no substantial relationship between the disclosure of the fact that confidential information exists and the protection of Taser's legitimate business interests. Accordingly, the Court will adopt the language proposed by Plaintiffs, and Paragraph 8 of the protective order shall state:
No Qualified Person shall distribute sell, offer for sale, advertise or publicize Confidential Information.

E. "Proprietary Business Information Privilege"

Plaintiffs represent that Taser has heretofore objected to the production of documents based on the fact that Plaintiffs seek "proprietary business information," and request that the Protective Order preclude the raising of such objections in the future. In this regard, Plaintiffs request that the protective order contain the following language:

**\*5** No party shall withhold any document or information from production in this litigation on the grounds of any "proprietary business information" or similar privilege, nor shall any party raise any such objection to production. Rather, the proper procedure is to produce such document or information, subject to this protective order.

(Resp. to Mot. for Prot. Order at 16-17.) Taser does not address this issue in its Reply, and as such, the language proposed by Plaintiffs will be incorporated into the protective order.

F. Direction to the Parties

Having ruled on the disputed terms of the protective order, the parties are **DIRECTED** to confer, jointly prepare, and submit to the Court a revised protective order reflecting the rulings of the Court, *supra.* The revised protective order shall be submitted to the Court within five (5) days from the date this Order is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                                       Page 5
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

entered.

## II. Plaintiffs' Motion to Compel

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs have served Taser with their first requests to produce documents. In their request, Plaintiffs ask that Taser produce responsive documents at their counsel's offices in Atlanta, Georgia. Regarding the location of production, Taser's responded to Plaintiffs' request as follows:

As more fully set forth below, TASER will make available for inspection at a time mutually convenient to the parties, the documents requested at its office located at 17800 N. 85th Street, in Scottsdale, Arizona, (in TASER's litigation reading room "reading room").... The request that the documents be available for inspection at Plaintiffs' counsel's office in Atlanta, Georgia is unduly burdensome and expensive. *See, e.g., Gluck v. Ansett Australia, Ltd.,* 204 F.R.D. 217, 221 (D.D.C.2001).

(Mot. to Compel Ex. C, Taser's Resp. to Pls.' First Req. to **Produce** [101-6] ¶ 4.)

There are two issues for the Court to resolve here. First, there is the question of whether Taser's making responsive **documents** available in a "litigation reading room" is sufficient to satisfy its discovery obligations under Federal Rule of Civil Procedure 34. Plaintiffs contend that it is **not**, and argue vigorously that Taser's "reading room is an obvious ploy to avoid and delay discovery." (*Id.* at 5-6.) Taser, in contrast, avers that it has **identified** in excess of 200,000 pages of **documents** relevant to Plaintiffs' discovery requests (Gibeaut Decl. ¶ 3 [110-1] ), and argues that copying and shipping such a quantity of **documents** is unduly burdensome.

Second, there is the question of which party must pay for copying the **documents**, and shipping those **documents** if they are to be **produced** at counsel's offices in Atlanta. Plaintiffs contend that Taser should be **required** to pay for all copying and shipping costs. Taser counters that these obligations rest with Plaintiffs. Additionally, Taser argues that Plaintiffs should be **required** to compensate it for its employees' time expended on **producing**, copying, and shipping **documents**.

*6 Rule 34 **requires** that the requesting party specify a "reasonable time, place, and manner" for inspection and copying. Fed.R.Civ.P. 34(b). Whether the requested time, place and manner for production is reasonable must be determined on a case-by-case basis.

As the cases cited by the parties make clear, where significant volumes of documents must be produced, the location and manner of inspection and copying has, on more than one occasion, been the subject of dispute because of the costs and burdens that may have to be borne by the respective parties. In this case, and in view of the volume of responsive **documents** Taser has **identified**, the Court declines to order Taser to **produce** the **documents**, at its cost, at Plaintiffs' counsel's offices in Atlanta. Rather, Plaintiffs may elect to either (1) travel to the Taser facility in Arizona to inspect and copy the requested **documents**, or (2) have the requested **documents** copied and shipped to Plaintiffs' counsel's offices in Atlanta, Georgia. If the **documents** are **produced** at the Taser facility, Plaintiffs shall bear the costs of copying those **documents** they select; if the **documents** are copied and shipped to counsel's offices, Plaintiffs shall be **required** to reimburse Taser for all reasonable copying costs, as well as the reasonable costs of shipping the copied **documents**. *See Monarch Ins. Co. v. Spach,* 281 F.2d 401, 413 n. 30 (5th Cir.1960) ("Ordinarily, [Rule 34] does **not require** the adversary to furnish copies."); *see also Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 620 (D.Kan.2005) (stating that "under Rule 34, a responding party need only make requested **documents** available for inspection and copying; it need **not** pay the copying costs[,]" and **requiring** plaintiffs to reimburse **defendant** for reasonable copying and shipping costs); *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 297 (W.D.N.Y.1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant **documents** and does **not require** a responding party to pay for copying costs of voluminous materials."); *see generally* Moore's Federal Practice-Civil § 34.14.6 ("A party **producing documents** will ordinarily **not** be put to the expense of making copies for the requesting party."). Under no circumstances, however, shall Plaintiff be **required** to bear any other costs associated with the copying, and if necessary, shipping, of the **documents**, including but **not** limited to wages paid to employees or other expenses associated with compiling, organizing, and labeling responsive **documents** as **required** by this Order. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("Under [the Federal Rules], the presumption is that the responding party must bear the expense of complying with discovery requests....").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                    Page 6
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

Although the Court declines to compel Taser to copy and ship responsive **documents**, at its cost, to Atlanta, Plaintiffs' concerns with respect to being **required** to wade through large numbers of **documents** and to **identify** themselves those **documents** which are responsive to their requests are **not** lost on the Court. Therefore, the Court takes this opportunity to clarify Taser's obligations under the Federal Rules.

Rule 34 specifically **requires** that the party **producing documents** "**produce** them as they are kept in the **usual course** of **business** or organize and label them to correspond with the categories in the request." Whether the **documents** are inspected and copied at Taser's facility, or copied and shipped to Atlanta, Taser must comply with this mandate. While the party **producing** "cannot attempt to hide a needle in a haystack by mingling responsive **documents** with large numbers of nonresponsive **documents**," the plain language of Rule 34 makes clear that "a responding party has no duty to organize and label the **documents** if it has **produced** them as they are kept in the **usual course** of **business**." _Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.,_ 222 F.R.D. 594, 598 (E.D.Wis.2004); _see also Rowlin v. Ala. Dep't of Pub. Safety,_ 200 F.R.D. 459, 462 (M.D.Ala.2001) ("[U]nder Rule 34, it is up to the **producing** party to decide how it will **produce** its records, provided that the records have **not** been maintained in bad faith."); _cf._ Fed.R.Civ.P. 34 advisory committee note to 1980 amendment (explaining that this provision of Rule 34 was intended to facilitate the discovery of relevant information, and to prevent parties from "deliberately mix[ing] critical **documents** with others in the hope of obscuring significance."). Therefore, insofar as Plaintiffs request this Court to compel Taser to organize and label **documents** according to their specific requests, their motion is denied.

As other courts have recognized, however, Rule 34 does **not** explain what it means to **produce documents** "as they are kept in the **usual course** of **business**." _Cardenas,_ 230 F.R.D. at 611. Therefore, the Court makes clear that while Taser has the option to **produce documents** as they are kept in the ordinary **course** of **business**, it also has an obligation to organize the **documents** in such a manner that Plaintiffs may obtain, with reasonable effort, the **documents** responsive to their requests. Were the Court to conclude that the filing system utilized was so disorganized as to prevent Plaintiffs from making a meaningful review of the requested **documents**, the Court would **not** hesitate to compel Taser to organize and specifically label **documents** as responsive to Plaintiffs' requests. _See Wagner v. Dryvit Sys., Inc.,_ 208 F.R.D. 606, 610-11 (D.Neb.2001) ("**producing** large amount of **documents** in no apparent order does **not** comply with a party's obligation under Rule 34"); _Kozlowski v. Sears, Roebuck & Co.,_ 73 F.R.D. 73, 76 (D.Mass.1976) (stating that a party "may **not** excuse itself from compliance with Rule 34 by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to **identify** or locate them, thus rendering the production of the **documents** an excessively burdensome and costly expedition."). Moreover, were the Court to conclude that Taser had been "overly generous" in **identifying** responsive **documents** so as to unduly burden Plaintiffs in their search of those **documents**, the Court would similarly **require** Taser to organize and label **documents** as responsive to Plaintiffs' requests. _See Bd. of Ed. v. Admiral Heating & Ventilating, Inc.,_ 104 F.R.D. 23, 36 (N.D.Ill.1984) (**requiring** such organization and labeling and stating that "the burden to a stranger of rummaging through what may be massive job files to find the 'smoking gun,' ... justifies placing the burden on the discovered rather than the discovering party."). Finally, the Court notes that should Taser elect to **produce** the **documents** "as they are kept in the **usual course** of **business**," it would bear the burden of showing that the **documents** were in fact **produced** in that manner. _Cardenas,_ 230 F.R.D. at 611.

### III. Plaintiffs' Motion for Extension of Discovery Period

**\*8** Plaintiffs request that discovery in this matter be extended through December 12, 2006. (_See_ Mot. for Ext. of Time to Complete Disc. [109] ¶ 15.) Defendants do not oppose an extension, but represent that a four month extension would be sufficient. (_See_ Resp. and Stmt. of No Opp'n [113] ¶¶ 3-4; Resp. to Mot. to Ext. Disc. [117] ¶¶ 2-3.) In view of the issues raised in this litigation, as well as the very limited discovery that has heretofore taken place, the Court finds a six month extension of the discovery period appropriate. Accordingly, Plaintiffs' Motion for Extension of Time to Complete Discovery [109] is **GRANTED.** The discovery period in this case is hereby **EXTENDED** for a period of approximately six months, up to and including December 12, 2006. The parties shall file any motions for summary judgment not later than twenty (20) days following the close of the extended discovery period. L.R. 56.1(D), NDGa.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                Page 7
Slip Copy, 2006 WL 1835437 (N.D.Ga.)
**(Cite as: Slip Copy)**

Conclusion

For the reasons stated herein, the Clerk is **DIRECTED** remove Defendants' Fourth Motion for Extension of Time to Answer [76] from the pending motions list; Plaintiffs' Motion for Hearing [116] is **DENIED;** Defendant's Motion for Protective Order [95] is **GRANTED IN PART and DENIED IN PART,** and the parties are **DIRECTED** to confer, jointly prepare, and submit to the Court a revised protective order reflecting the rulings of the Court within five (5) days from the date this Order is entered; Plaintiffs' Motion to Compel [101] is **DENIED;** and Plaintiffs' Motion for Extension of the Discovery Period is **GRANTED** and the discovery period in this case is hereby **EXTENDED** for a period up to and including December 12, 2006. Motions for summary judgment shall be filed no later than twenty (20) days following the close of the extended discovery period.

SO ORDERED this *30th* day of June, 2006.

N.D.Ga.,2006.
Williams v. Taser Intern., Inc.
Slip Copy, 2006 WL 1835437 (N.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1389434 (Trial Motion, Memorandum and Affidavit) Reply of Defendant Taser International, Inc. to Plaintiffs' Opposition to Motion to Dismiss the First Amended Complaint (Apr. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1389433 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Taser International, Inc.'s Second Motion to Dismiss (Apr. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 1025589 (Trial Motion, Memorandum and Affidavit) Brief in Support of Taser International, Inc.'s Motion to Dismiss the First Amended Complaint (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1025587 (Trial Pleading) Gwinnett Defendants' Answer and Defenses to Plaintiffs' First Amended Complaint (Mar. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 1025585 (Trial Pleading) Plaintiffs' First Amended Complaint (Mar. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 736116 (Trial Motion, Memorandum and Affidavit) Taser International, Inc.'s Response to Plaintiffs' Improper Surreply (Feb. 21, 2006) Original Image of this Document (PDF)
• 2006 WL 736115 (Trial Motion, Memorandum and Affidavit) Reply of Defendant Taser International, Inc. to Plaintiffs' Opposition to Motion to Dismiss (Feb. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 736660 (Trial Pleading) Answer and Affirmative Defenses of Defendants Prison Health Services, Inc., and Stephen C. Smith To First Amended Complaint (Feb. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 736658 (Trial Pleading) Taser's Answer To Cross-Claim of Michael Mustachio (Feb. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 736659 (Trial Pleading) Taser's Answer To Amended Cross-Claim of Gwinnett Defendants (Feb. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 426867 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response in Opposition to Taser International, Inc.'s Motion to Dismiss (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 427211 (Trial Pleading) Gwinnett Defendants' Amended and Restated Cross-Claim Against Defendant Taser International, Inc. (Jan. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 426866 (Trial Motion, Memorandum and Affidavit) Brief in Support of Taser International, Inc.'s Motion to Dismiss (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 427206 (Trial Pleading) Answer and Defenses of Gwinnett County, Georgia, Gwinnett County Sheriff R.L. ""Butch" Conway, Robert E. Kenyon, T.J. Topor, Mark R. Cook, Todd P. Butorac, and James Thomas Ferguson (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 427207 (Trial Pleading) Defendant Michael A. Mustachio's Cross-Claim Against Co-Defendants Taser International, Inc. (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 427208 (Trial Pleading) Defendant Michael A. Mustachio's Cross-Claim Against Co-Defendant Prison Health Services, Inc. (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 427209 (Trial Pleading) Gwinnett Defendants' Cross-Claim Against Defendant Prison Health Services, Inc. (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 427210 (Trial Pleading) Gwinnett Defendants' Cross-Claim Against Defendant Taser International, Inc. (Jan. 17, 2006) Original Image of this Document (PDF)
• 1:06cv00051 (Docket) (Jan. 9, 2006)
• 2006 WL 427205 (Trial Pleading) Answer and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 1835437 (N.D.Ga.)  
**(Cite as: Slip Copy)**

Page 8

Affirmative Defenses of Defendants Prison Health Services, Inc., and Stephen C. Smith (Jan. 2006)  
Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.