Ms. Heather L. Kennedy
Ms. Karen Klaver
C.N.M.I. Public School System
P.O. Box 501370 CK
Saipan, MP 96950
Telephone: (670) 237-3046
Facsimile: (670) 664-3713

Attorneys for: Public School System

# IN THE UNITED STATES DISTRICT COURT
# OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LISA BLACK, | ) Civil Case No. 05-0038 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) [PROPOSED] |
| | ) FINDINGS OF UNCONTROVERTED |
| JIM BREWER, CNMI Public School System and JOHN AND/OR JANE DOE, | ) FACT |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PROPOSED FINDINGS OF UNCONTROVERTED FACT

1. Plaintiff began work as a classroom teacher for the Public School System in 1996. On June 10, 1996, Plaintiff entered into an employment contract with PSS effective July 29, 1996 through July 28, 1998. Charley Kenty Declaration Para. 5. Exhibit A.

2. Plaintiff's annual salary pursuant to her initial contract was $27,437.44. The contract also afforded employee a housing allowance of $400 per month. Exhibit A. This amounts to $32,237.44 for the first year of the contract.

3. To implement CNMI Public Law 10-35, "CNMI Public School Reclassification and Compensation Act of 1996", PSS offered teachers the option to enter a new contract with no

housing benefits to receive the increased salary rates authorized by law or to remain under the current contract with housing benefits. Kenty Decl. Para.6.

4. PSS provided Plaintiff with a form that informed her that she had a choice to continue under her initial contract or sign a new contract and receive higher pay. Kenty Decl. Para. 7 Exhibit B.

5. Plaintiff wrote PSS a letter on March 12, 1997 acknowledging her choice. Kenty Decl. Para. 8 Exhibit C.

6. Shortly thereafter, Plaintiff signed a new contract with PSS on March 21, 1997. Kenty Decl. Para. 9 Exhibit D.

7. The term of the new contract covered March 2, 1997 through July 28, 1998. The contract gave Plaintiff's a new salary of $38,646,74 without housing benefits. This amounts to more than $6000 above the salary plus housing from Plaintiff's initial 1996 contract ($32,237.44). Exhibit D.

8. While Plaintiff refused to sign the form (Exhibit B) or "waiver" as stated in the her complaint, she did sign the new contract, which included the cessation of a housing allowance as required by CNMI law, and accepted the higher compensation of $38,646,74. Kenty Decl. Para. 10.

9. On April 14, 1998, Plaintiff received notice that her employment contract with the Public School System that expired on July 28, 1998 would not be renewed. Kenty Decl. Para. 11 Exhibit E.

10. In July of 1998, Plaintiff was transferred from San Antonio Elementary School to Koblerville Elementary School. She signed a new contract with PSS reflecting the change. Kenty Decl. Para. 12 Exhibit F.

11. Plaintiff continued working for PSS at Koblerville Elementary School until she resigned in April of 2002. Kenty Decl. Para. 13 Exhibit G.

12. While working for Koblerville Elementary School, Plaintiff received two reprimand letters dated November 7, 2001 and March 22, 2002 for insubordination. Kenty Decl. Para. 14 Exhibit H and I.

13. During April of 2002, Plaintiff requested annual leave to attend a sailing regatta. Plaintiff Deposition Transcript (Exhibit J) p. 27-28.

14. Plaintiff's request was specifically denied by the Principal. Plaintiff Depo Transcript. p.29 L.6-7.

15. Plaintiff went to the regatta anyway and did not report to work. Plaintiff Depo Transcript p. 29 L. 24 and p.30 L.1.

16. Plaintiff resigned shortly after the sailing regatta on April 19, 2004. Exhibit G.

17. Plaintiff returned to the Public School System in March of 2004. She entered into a short-term contract with PSS effective March 4, 2004 through June 4, 2004. This contract was extended from June 5, 2004 through July 30, 2005. Kenty Decl. Para. 15 Exhibit K.

18. This contract (Exhibit K) provides:

> CONTRACT TENURE: There are no tenured employment positions offered by PSS. This contract is only for the term stated in § 1 (c) and no right to renewal is granted, expressly or impliedly, by PSS to the Employee regardless of whether job performance during the contract term is satisfactory. An offer for continued employment is completely within the discretion of PSS.

19. In school year 2004-05, most teacher employment contracts were for a two-year time period. Kenty Decl. Para.16.

20. In October of 2004, some members of the Hopwood Junior High School ("HOPWOOD" or "Hopwood") staff submitted a letter of concern regarding the performance and management of

Vice-Principal Beth Nepaial. Kenty Decl. Para.17. Exhibit L.

21. Plaintiff has repeatedly denied involvement in the letter of concern.

    a. Plaintiff's Complaint Plaintiff 12 (stating "Mr. Brewer formulated the **erroneous** belief that Ms. Black was responsible for drafting, circulating, and/or encouraging others to sign it" (emphasis added)).

    b. Guerrero Decl. Para.6, Exhibit M p. 738-741(letters Plaintiff submitted to Board Hearing Panel regarding her not being involved in the "letter of concern" regarding Mrs. Nepaial).

    c. Plaintiff Depo Transcript p. 67 Line 20-21 (Plaintiff stated that she told Mr. Brewer ". . . I explained to him that I didn't write it and I hadn't even signed it . . .").

22. The letter of concern dated October 4, 2004 focuses in three main areas "(1) capabilities of being the vice-principal for curriculum and counseling department (2) apparent lack of equity toward the staff she should aim to lead (3) her lack of interpersonal skills." Exhibit L.

23. The letter of concern was submitted to the Commissioner's Office and the Board of Education before the concerns were raised to the Principal of Hopwood. Plaintiff acknowledges this was not appropriate. Plaintiff Depo Transcript p. 67 lines 1-8.

24. From October until nearly the end of school year 2004-05, staff members and community members became focused on the dispute. Nepaial Decl. Para.10. The divisive environment affected HOPWOOD's administration, teachers and staff's ability to focus on an accreditation review, which took place in the spring of 2005. Nepaial Decl. Para.10.

25. As a result of the "letter of concern", the administrators at Hopwood, the Commissioner, and the PSS Human Resources Officer spent a considerable amount of time addressing the matter. Kenty Decl. Para. 18. The Human Resources Officer over a period of two months met individually with the signatories to the letter to discuss their concerns. Kenty Decl. Para. 19.

26. Plaintiff received a letter of reprimand on January 11, 2005 from Principal Brewer for

failing to provide substitute teaching coverage and embarrassing a student. Kenty Decl. Para.20. Exhibit N.

27. Reminders about substitution coverage were listed in school bulletins. Beth Nepaial Decl. Para. 13. Exhibit O.

    a. December 13, 2004 Teacher Bulletin (bates stamped 1908-09).
    b. December 17, 2004 Teacher Bulletin (bates stamped 1910-11).
    c. December 22, 2004 Teacher Bulletin (bates stamped 1912-13).

28. Plaintiff admitted that she typically receives bulletins in her box. Plaintiff Depo Transcript p. 105 18-21 and p. 102 lines 15-24.

29. Plaintiff received a schedule in her box at school that specifically listed her name and the class periods that she would need to provide substitution coverage. Beth Nepaial Decl. Para.13 Exhibit P. Plaintiff Depo Transcript p. 102 lines 15-24.

30. Plaintiff admits that she interrupted another teacher's class and spoke to Beth Nepaial's son in front of other students. Depo Transcript lines p. 91. Plaintiff asked Ms. Nepaial's son if he was afraid of Plaintiff. Plaintiff Depo Transcript lines p. 91 lines 12-24. Plaintiff admits that she asked him about his mom [Ms. Nepaial] being afraid to send him to Plaintiff's class. Plaintiff Depo Transcript lines p.91 lines 12-24.

31. Plaintiff received another letter of reprimand from Principal Brewer dated February 14, 2005 for insubordination for interrupting Ms. Menchu Grayer's class during instructional time despite instructions from Principal Brewer not to do so. Kenty Decl. Para.21. Exhibit Q.

32. Plaintiff admits that she was told not to interrupt instructional time. Plaintiff Depo Transcript p. 141 lines 9-13. When discussing a complaint registered by a co-worker against Plaintiff, Principal Brewer specifically instructed Plaintiff not to discuss the issue with Ms.

Greyer or interrupt class time. Plaintiff Depo Transcript p. 145 lines 3-17.

33. Upon leaving Principal Brewer's Office, Plaintiff went directly to co-worker Ms. Greyer's class despite Principal Brewer's instructions. Plaintiff Depo Transcript p. 145.

34. Plaintiff submitted a written transcript of the meeting with Principal Brewer wherein she states: "Absolutely" when asked if she interrupted Ms. Grayer's class time despite Mr. Brewer's instructions not to. Exhibit M. p.1802.

35. On February 14, 2005, Plaintiff received a letter of concern regarding her flicking the ears of students and pushing their heads. Exhibit M. p.1751.

36. Plaintiff admitted to flicking the ears of students and pushing their heads. Plaintiff claimed that the flicking and pushing were part of a lesson on levels of comfort. The Board Hearing Panel did not find this excuse credible. Exhibit M p. 1676.

37. Plaintiff received a letter of concern dated April 18, 2005 regarding her failure to provide information regarding an excused absence and her failure to report to the meeting with Ms. Nepaial. Nepaial Decl. Para.18.   Exhibit R.

38. On April 14, 2005, Beth Nepaial asked a student to deliver a note to Plaintiff regarding the meeting. Nepaial Decl. Para.16.  The note requested that Plaintiff meet with Ms. Nepaial at the end of school that day but Plaintiff did not report to the meeting. Nepaial Decl. Para.16 and 17.  Plaintiff Depo Transcript p.107 L. 7-22

39. Letters of concern are not placed in PSS employee personnel files.  Formal reprimands are placed in employee's personnel files. Kenty Decl. Para. 22.

40. It was well known that a school counselor, Nariani Sikyang, was the leader of the group with the concerns about Beth Nepaial. Nepaial Decl. Para.7   Sikyang Decl. Para.7 and 8.

41. Ms. Sikyang collected the information that constituted the letter of concern and obtained

signatures of her fellow employees. Sikyang Decl. Para.3.

42. In the months following the letter of concern, investigations, meetings and complaints in the media took place with dispute being mediated by the Commissioner of Education in February of 2005. Kenty Declaration. Para. 23.

43. During this process, PSS offered Ms. Sikyang an employment contract, which she signed. Sikyang Decl.Para.9.

44. Sikyang later retired on December 31, 2005. Sikyang Decl. Para.10.

45. Mr. Brewer asked Sikyang to return to HOPWOOD as a working retiree. Sikyang Decl. Para.11.

46. Ms. Sikyang continues to work at Hopwood to this day. Sikyang Decl. Para.12.

47. On April 22, 2005, Plaintiff received a notice that her contract, which expired on July 30, 2005, would not be renewed. Exhibit M. p. 1768.

48. On April 20, 2005, Principal Brewer issued a memo to the Human Resources Office regarding his reasons for not renewing Plaintiff's contract. Kenty Decl. Para. 24. Exhibit S.

49. This letter and the supporting documents were not placed in Plaintiff's official personnel file maintained by PSS Human Resources Office. Kenty Decl. Para. 25.

50. On May 19, 2005 Plaintiff filed a formal grievance and complaint against Jim Brewer. Exhibit L. On July 15, 2005, the Commissioner of Education issued her decision regarding the grievance. Exhibit M. On August 15, 2005 Plaintiff filed her notice of appeal of the Commissioner's decision with the Board of Education. Exhibit M.

51. The appeal was heard by a panel of three Board of Education members on September 22-23, 2005 Plaintiff was represented by Eric Bozman of the O'Connor, Berman, Dotts and Banes office. The Commissioner's Office was represented by Heather Kennedy, PSS Legal Counsel.

Exhibit L.  Assistant Attorney General, Jeanne Rayphand, provided legal advice to the hearing panel.  Guerrero Decl. Para. 10.  On November 9, 2005, the Board issued a decision in the matter. Exhibit M.

52. The hearing was closed, both parties were afforded the opportunity to present evidence and cross-examine witnesses.  Guerrero Decl. Para.11.

53. Plaintiff declined to offer any testimony to support her appeal.  Exhibit M.  p.1672.

54. At the conclusion of the hearing, both Plaintiff and the Commissioner's Office were provided the opportunity to submit proposed findings and comment on the Board's Proposed findings and conclusions in accordance with the CNMI Administrative Procedures Act.  Exhibit M. p.1708-1724, p.1687-1692.

55. The Hearing Panel considered 11 issues raised by Plaintiff.  Exhibit M. p. 1672-1674. Under issue 4, the Hearing Panel specifically considered the letters of concern, the formal reprimands, the performance appraisal and the non-renewal of Plaintiff's teaching contract. Exhibit M p.1673.

56. The Panel found that the letters of reprimand, the letters of concern, and the performance appraisal were all justified and substantiated. Exhibit M.

57. In late July of 2005, the Human Resources Office began processing a transfer for Plaintiff to teach at Marianas High School.  Kenty Decl. Para. 27.

58. After Plaintiff visited the Human Resources Office on July 27, 2005 to obtain her separation notice from PSS, the Human Resources Officer issued a letter informing Plaintiff that PSS would process her separation paperwork as she requested.  Kenty Decl. Para. 28.  Exhibit T. Plaintiff admits that she told Human Resources staff that she did not wish to transfer.  Plaintiff Depo Transcript P 150-151.

59. Plaintiff claims that the non-renewal of her contract and alleged violation of her constitutional rights caused her emotional distress.

60. In response to Interrogatory No. 2 requesting information regarding the nature and extent of her injuries, Plaintiff claims "stress and emotional strain associated with being terminated from her teaching positions and the attendant damage to her personal and professional reputation in the community". In response to Interrogatory No. 12 regarding Plaintiff's alleged "severe anxiety", Plaintiff states: "the anxiety and stress that her unemployment caused were the typical sort that a person would experience when faced with the prospect of having no means by which to support themselves." Exhibit U.

By:

_____/s/_____
Heather L. Kennedy
Karen M. Klaver
Attorneys for the Public School System