In re Estate of Hillblom, Civ. No. 95-0626

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

In the Matter of the Estate of Larry Lee Hillblom, Deceased.
Civil Action No. 95-0626
Order Regarding Sealing of Claims
October 2, 1995

CASTRO, Presiding Judge:

This matter came before the court on September 25, 1995, in response to the court's order of September 8, 1995. Certain claimants to the estate had filed claims under seal, and the court requested a showing of further justification from these claimants to overcome the presumption of open court records. The court also authorized intervention on the part of Saipan Cable TV, which argues that the First Amendment and the public interest in this contested probate matter require the unsealing of the claims. The court, having examined the pleadings, considered the arguments of counsel and identified the applicable law, now renders its decision.

I. FACTS

The claims in question were filed on September 1 and September 5, 1995. Seven claims were filed by the firm of Eason & Halsell on behalf of various clients. The other claim was filed by Michael Dotts on behalf of a single client. In response to the court's September 8, 1995 order, these counsel have filed publicly-available memoranda and separate declarations under seal.

As to Mr. Dotts' client's claim, it is argued that the claimant is a "very private person" whose life has been "invaded by the parties and the press." Memorandum in Support of Maintaining Seal on Claim at 2 (Sep. 18, 1995). Mr. Dotts' sealed declaration provides greater detail as to the nature of these contentions. On the other hand, claimant Adonis Gotas argues in his memorandum that both the identity of this claimant and the general nature of her claim have been described in open court. See Memorandum on the Question of Sealed Claims at 5 (Sept. 18, 1995). At the September 25 hearing, various counsel made further statements as to the identity of this claimant. These statements were not disputed by counsel for the claimant, although he did dispute opposing counsel's speculation as to the precise nature of her claim.

As to the claimants represented by Ms. Eason and Ms. Halsell, their legal memorandum asserts both privacy and confidential business information claims, but does not reveal any fact about the claims themselves. See Memorandum of Law re: Sealing of Claims at 8-14 (Sept. 18, 1995). Additional declarations filed under seal detail the nature of these interests. Claimant Adonis Gotas, petitioner Kaelani Kinney and intervenor Saipan Cable TV have objected to the sealing of these declarations, pointing out that they

have no way of evaluating the interest to be protected if they cannot know what it is. At the hearing on this motion, counsel opposing sealing of these claims engaged in extended speculation as to the nature of the claims.

II. ANALYSIS

A. Common Law and First Amendment Access

As noted in the court's September 8, 1995 Order, legal criteria for the sealing of records and the closure of proceedings in criminal trials have already been established in the Commonwealth. See Commonwealth v. Evangelista, Crim. No. 93-0174 (N.M.I. Super. Ct. Oct. 11, 1994) (Decision and Order on Defendant's Motion to Close Courtroom and Seal Records). Evangelista adopted the Ninth Circuit's three-part test for balancing the First Amendment right of public access to criminal proceedings against other protected rights such as the right to a fair trial, requiring a party seeking closure to show a substantial probability that: (1) irreparable damage to a protected right will result from public access; (2) alternatives to closure will not protect adequately the right in question; and (3) that closure will be effective in preventing the perceived damage. Id. at 6 (citing United States v. Brooklier, 658 F.2d 1162, 1167 (9th Cir. 1982)). Where a defendant's privacy concerns are implicated, the threat of "mere embarrassment" resulting from media exposure is not sufficient to justify the sealing of criminal records. Id. at 11.

In civil proceedings, the U.S. Supreme Court and the Ninth Circuit have held that the common law right of access, rather than the First Amendment, governs the powers of courts to seal records and hold hearings in camera. See Hagestad v. Tragesser, 49 F.3d 1430, 1434 n.6 (9th Cir. 1995); E.E.O.C. v. Erection Co, Inc., 900 F.2d 168, 170 (9th Cir. 1990) (citing Valley Broad. Co. v. United States Dist. Ct., 798 F.2d 1289 (9th Cir. 1986)). However, a few lower courts within the circuit have adopted the analysis of the Third and Sixth Circuit that the First Amendment does apply to civil proceedings. See McCoy v. California Med. Review, 133 F.R.D. 143, 147 (N.D. Cal. 1990) (citing Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165 (6th Cir. 1983), and Publicker Industries, Inc. v. Cohen, 733 F.2d 1059 (3d. Cir. 1984)); Cable News v. Superior Ct. of Guam, Civ. No. 93-00082, slip op. at 3 (D. Guam App. Div. 1994). Likewise, this court finds the Third Circuit analysis in Publicker to be the most thoughtful and well-reasoned approach. While both the common law and the First Amendment create a presumption of openness,1 the First Amendment analysis imposes a stricter test for the sealing of records, requiring a demonstration that any closure order "serves an important government interest and that there is no less restrictive way to serve that government interest." Publicker, 733 F.2d at 1070.

Here, the court finds that the level of legitimate public concern aroused by this case implicates precisely the freedoms the First Amendment was enacted to protect. The decedent here was an important figure in the Commonwealth's political and economic life. This probate action has attracted media scrutiny, both because of the size of the assets at stake and because of the allegations of conflict of interest which have been leveled against the executor. These policy considerations bolster this court's decision to

apply a First Amendment analysis in balancing the competing interests presented by the claimants under seal.

B. Privacy Rights

N.M.I. Const. art. I, § 10 protects an individual's right to privacy, which "shall not be infringed except upon a showing of compelling interest." The Analysis of the Constitution makes clear that this right of privacy attaches to all persons present "within the jurisdiction of the Commonwealth," but does not apply to corporations. Northern Marianas Constitutional Convention, Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands at 24 (1976).

Claimants under seal have argued that this provision sets up a presumption of confidentiality of court records, which the other parties must rebut upon a showing of compelling interest. No Commonwealth precedent has so held. On the other hand, other jurisdictions have held that express constitutional rights to privacy do not alter traditional presumptions regarding disclosure of judicial records. See Florida Freedom Newspapers, Inc. v. Sirmons, 508 So. 2d 462, 463 (Fla. Dist. Ct. App. 1987) (right of privacy protects parties from government intrusion, but does not authorize conduct of private litigation). In more general terms, a party must have a legitimate expectation of privacy which society is willing to recognize in order for the right of privacy to attach. See Flesh v. Board of Trustees, 786 P.2d 4 (Mont. 1990); see also State v. Long, 544 So. 2d 219 (Fla. App. 1989). Here, the traditional openness of judicial records and proceedings weighs against any legitimate expectation of privacy.2

Even if such a right of privacy attaches, the balancing test is not substantially different from the traditional analysis under federal precedents. In Flesh, the Montana Supreme Court balanced the state constitutional guarantee of privacy against the public's "right to know" by determining whether "the demands of individual privacy clearly exceed the merits of public disclosure. Under this standard the right to know may outweigh the right to individual privacy, depending on the facts." 786 P.2d at 8. Thus, an asserted privacy interest may overcome the First Amendment right of access, but the court must identify specific facts upon which the need for closure is based and must find that the clash between the two interests cannot be resolved in a less restrictive fashion.

Here, the court would ordinarily be skeptical that the claimant represented by Mr. Dotts has a legitimate expectation of privacy in these proceedings, since civil records are generally open to the public. However, this claimant may have relied on the court's order granting her motion to seal the claim prior to filing it. Such reliance on the court's previous order arguably confers an expectation of privacy where none would otherwise exist. Thus, the court will accept in these limited circumstances that the Claimant is entitled to the privacy protections of N.M.I. Const. art. I, § 10.

Nevertheless, even under the balancing test enunciated in Flesh, her privacy interests do not clearly outweigh the First Amendment concerns presented here. First, the facts she relates do not demonstrate to the court that she is in a position substantially different from other parties connected to high-profile court cases. Second, the court is unconvinced that maintaining her claim under seal will protect the privacy interest she seeks to protect. As noted above, both the executor and other parties to this case have

disclosed the identity of the claimant in open court, as well as the general nature of her claim against the estate. Having viewed the documents she has filed under seal, the court finds nothing in them which would subject her to additional media scrutiny, beyond that which she has already experienced. See Cable News, slip op. at 6. Rather, the unsealing of her claim may lessen media attention to her personally, as it will provide a direct source of information about her claim other than herself.

The court also believes that less restrictive alternatives may be effective to protect this claimant's privacy. Her sealed affidavit relates primarily to emotional distress caused by unwanted intrusions on her solitude by other parties to this case and by the press. N.M.I. Const. art. I, § 10 protects "an individual's right to physical solitude free from intrusions such as another's eavesdropping on telephone calls, on conversations, harassing telephone calls, constant and manifest surveillance, and any other intrusions that a reasonable person would find offensive and objectionable." This claimant is free to apply to this court for an order restraining third parties from intruding on the privacy of her domicile.

As to the clients represented by Ms. Eason and Ms. Halsell, the court finds that no privacy interest as defined by the Commonwealth Constitution is presented in their papers. As noted above, N.M.I. Const. art. I, § 10 does not apply to corporations or to persons outside the Commonwealth. These claimants are either corporations or individuals outside the Commonwealth. Nor do the submissions of these claimants implicate the implied rights of privacy of the U.S. Constitution. Rather, the sealed declarations relating to these claims describe financial injury which may result from disclosure of the claims. Financial injury of this sort is considered a property interest, rather than a privacy interest.

C. Confidential Business Information

Courts have recognized that the common law and First Amendment rights of access to civil proceedings may be outweighed by property interests where the records contain "business information which might harm a litigant's competitive standing." Crain Communications, Inc. v. Hughes, 521 N.Y.S.2d 244 (N.Y. App. 1987); Publicker, 733 F.2d at 1071; Valley Communications, 798 F.2d at 1295. Once again, the court must base its decision on "articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture." Id. Likewise, the court must narrowly tailor any closure order to accomplish an important government interest and must make use of any less restrictive alternatives which will serve the interest at stake. Publicker, 733 F.2d at 1070. Courts often protect such information while at the same time allowing access by opposing parties under the terms of stipulated protective orders, whereby every lawyer becomes bound not to reveal confidential information, even to his or her client. See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 889 (E.D. Pa. 1981) (citing Manual for Complex Litigation § 2.50).

Here, the claimants represented by Ms. Eason and Ms. Halsell have filed affidavits alleging the threat of loss of competitive standing if their claims are made public. The court, having reviewed these affidavits in camera, agrees that the facts contained in these affidavit are sufficient to warrant some protection of the information

contained. However, the court is not at this stage convinced that these property interests warrant the suppression of all information relating to these claims. The public interest in disclosure of the details of these claims is relatively small. However, the public interest in knowing something about the general nature of these claims is much greater. This probate action has been subject to intense media scrutiny, prompted in part by charges of conflict of interest and other improprieties on the part of the executor. The public has an interest in knowing whether these claims are related in any way to those allegations. If the public is prevented from obtaining at least this general knowledge, legitimate concerns over the integrity of this court's processes may fester in the public. It is precisely to prevent this kind of damage to the court's integrity that the common law and First Amendment presumptions of access were designed to combat. Publicker, 733 F.2d at 1070.

The court therefore will order counsel to indicate whether any limited disclosure of some general information regarding these claims, short of unsealing the entire claim but beyond the present complete lack of public information, would still provide effective protection for these claimants' property interests. Counsel should consider which facts must remain private and which may be disclosed, and should transmit this information to the court for in camera review. Final decision as to the sealing of these claims is reserved pending that review.

Access to these claims by other parties to this litigation presents a related concern. Claimant Adonis Gotas and petitioner Kaelani Kinney both objected to the fact that they have heretofore been obliged to litigate this action without any knowledge about the nature of these claims. This court has already held that claimants are "interested persons" regarding the overall management of the estate. The same reasoning dictates that these parties must have access to other claims against the estate, especially when there is a possibility that these claims may be related in some way to the allegations of impropriety leveled against the executor. Likewise, the special master appointed by order of this court on September 28, 1995 needs access to these claims in order to evaluate those allegations of impropriety. The court believes that a stipulated protective order, preventing all persons beyond the counsel to this litigation and the master from disclosing the sealed information, may be the appropriate way to address these concerns.3 The parties are therefore ordered to meet and confer over the terms of such a stipulated protective order and report back to the court.

III. CONCLUSION

For the foregoing reasons, the court hereby ORDERS:
1. The claim filed by Mr. Dotts is hereby ordered unsealed.
2. Ms. Eason and Ms. Halsell shall file, by the close of business on October 4, 1995, a supplemental submission to the court for in camera review, indicating which general facts regarding their claim may be made public without sacrificing the claimants' property interests. Upon receiving this submission, the court will issue a ruling on their motion to keep their claims under seal.
3. Ms. Eason and Ms. Halsell will meet and confer with other interested parties over the terms of a stipulated protective order which would give opposing counsel and

the special master access to the claims but prevent them from disseminating this information to any person, including their clients. If these efforts fail, any party may move for the imposition of such an order by this court.