EXHIBIT "K"

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
PUBLIC SCHOOL SYSTEM
P.O. BOX 1370 CK, SAIPAN, MP 96950

# NOTIFICATION OF PERSONNEL ACTION

## CERTIFIED APPOINTMENT

PSPS-1000-B.2

| a. ( ) Mr. ( ) Mrs. ( ) Miss<br>BLACK LISA S<br>NAME: (CAPS) Last-First-Middle | b. CITIZENSHIP<br>US | c. BIRTH DATE<br>08/29/61<br>Month/Day/Year | d. SERV. COMP. DATE<br><br>Month/Day/Year |
|---|---|---|---|
| e. SOCIAL SECURITY NO.<br>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 2050 | f. GROUP LIFE INSURANCE<br>WAIVED | g. HEALTH INSURANCE:<br>Code No. WAIVED | |
| h. NATURE OF ACTION:<br>AMENDMENT-CERTIFIED EMPLOYMENT CONTRACT NO.E4716<br>(NTE: ~~06/04/2004~~ ) 07/30/2005 ) | | i. EFFECTIVE DATE<br>6/5/04<br>Month/Day/Year | |

| j. FROM:<br>CLASSROM TEACHER IV | k. PAY LEVEL/STEP<br>VIII/06 | l. SALARY : ~~$17.888/HOUR~~<br>BI-WEEKLY: $1,431.06<br>PER ANNUM: $37,207.51 |
|---|---|---|
| POSITION TITLE AND NUMBER<br>2330 | | |
| m. NAME AND LOCATION OF EMPLOYING OFFICE:<br>HOPWOOD JR. HIGH SCHOOL | n. DUTY STATION<br>SAIPAN | |

| o. TO:<br>CLASSROOM TEACHER IV | p. PAY LEVEL/STEP<br>VIII/06 | q. SALARY : ~~$17.888/HOUR~~<br>BI-WEEKLY: $1,431.06<br>PER ANNUM: $37,207.51 |
|---|---|---|
| POSITION TITLE AND NUMBER<br>2330 | | |
| r. NAME AND LOCATION OF EMPLOYING OFFICE:<br>HOPWOOD JR. HIGH SCHOOL | s. DUTY STATION<br>SAIPAN | |

t. LEAVE ACCRUAL ELIGIBILITY

ANNUAL [ ] SICK [ ]

NO. OF HOURS PER PAY PERIOD 03 HRS. NO. OF HOURS PER PAY PERIOD 01.5 HRS.

u. ACCOUNT CHARGEABLE: 41050-4110-900/HJH

v. SUBJECT TO: CNMI Income Tax (X) CNMI Retirement (X) Social Security ( ) Other ( )

w. REMARKS:

THIS AMEND ITEM H (EXPIRATION DATE OF CERTIFIED EMPLOYMENT CONTRACT NOE.4716 OF NOTIFICATION OF PERSONNEL ACTION DATED 03/03/2004 TO READ AS 07/30/2005 INSTEAD OF 06/04/2004.

ANNUAL/SICK LEAVE BALANCE WILL BE CARRIED ON TO THIS AMENDMENT.

REF: PER ATTACHED RECOMMENDATION MEMO DATED 06/01/2004.

(Signature) CHARLEY KENTY — Human Resources Officer — Date 6/22/04

(Signature) RICHARD WALDO — Finance and Budget Officer — Date 6/23/04

(Signature) RITA HOCOG INOS, Ed.D. — Commissioner of Education — Date 06.23.04

DISTRIBUTION:
1. Employee-White 2. Personnel-OPR-Green 3. Payroll-Pink 4. Program Manager-Goldenrod 5. Fiscal-Blue

3/05/04

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
PUBLIC SCHOOL SYSTEM
P.O. BOX 1370 CK, SAIPAN, MP 96950

# NOTIFICATION OF PERSONNEL ACTION

## CERTIFIED APPOINTMENT

PSPS-1000-B.2

a. ( ) Mr. ( ) Mrs. ( ) Miss
BLACK LISA
NAME: (CAPS) Last-First-Middle

b. CITIZENSHIP
US

c. BIRTH DATE
08/29/61
Month/Day/Year

d. SERV. COMP. DATE
Month/Day/Year

e. SOCIAL SECURITY NO.
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 2050

f. GROUP LIFE INSURANCE

g. HEALTH INSURANCE:
Code No.

h. NATURE OF ACTION:
CERTIFIED EMPLOYMENT CONTRACT NO.E4716
(NTE: 06/04/2004 )

i. EFFECTIVE DATE
Month/Day/Year 03/04/04

j. FROM:

k. PAY LEVEL/STEP

l. SALARY :
BI-WEEKLY:
PER ANNUM:

POSITION TITLE AND NUMBER

m. NAME AND LOCATION OF EMPLOYING OFFICE:

n. DUTY STATION

o. TO:
CLASSROOM TEACHER IV

p. PAY LEVEL/STEP
VIII/06

q. SALARY : $17.888/HOUR
BI-WEEKLY: $1,431.06
PER ANNUM: $37,207.51

POSITION TITLE AND NUMBER
2330

r. NAME AND LOCATION OF EMPLOYING OFFICE:
HOPWOOD JR. HIGH SCHOOL

s. DUTY STATION
SAIPAN

t. LEAVE ACCRUAL ELIGIBILITY

ANNUAL ☐

SICK ☐

NO. OF HOURS PER PAY PERIOD 02 HRS.

NO. OF HOURS PER PAY PERIOD 01.5 HRS.

u. ACCOUNT CHARGEABLE:
41050-4110 /HJH

v. SUBJECT TO:
CNMI Income Tax (X) CNMI Retirement (X)
Social Security ( ) Other ( )

w. REMARKS:

SEE ATTACHED CERTIFIED EMPLOYMENT CONTRACT NO.E4716.

MANDATORY RETIREMENT MEMBERSHIP PER PUBLIC LAW 6-17.

REF: RECOMMENDATION MEMO DATED 02/20/2004.

Vice: Gagaring P ✓

(Signature) CHARLEY KENTY
Human Resources Officer
3/02/04
Date

(Signature) RICHARD WALDO
Finance and Budget Officer
3/3/04
Date

(Signature) RITA HOCOG INOS, Ed.D.
Commissioner of Education
3/3/
Date

DISTRIBUTION:
1. Employee-White 2. Personnel-OPR-Green 3. Payroll-Pink 4. Program Manager-Goldenrod 5. Fiscal-Blue

# SPECIAL EMPLOYMENT CONTRACT FOR CERTIFIED PERSONNEL

THIS CONTRACT FOR SERVICES is made and entered into upon the execution of the last of all the required signatures to this contract, by and between the **PUBLIC SCHOOL SYSTEM OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**, P.O. Box 1370, Saipan, MP 96950, a non-profit corporation responsible as the state education agency for pre-school, elementary and secondary education at 1 CMC § 2251, hereinafter referred to as "PSS," and **LISA S. BLACK**, Address: **P.O.BOX 7983 SVRB, SAIPAN, MP 96950**, hereinafter referred to as "Employee," (sometimes collectively referred to as, "Parties").

## Preamble

The Parties hereto acknowledge that the Government of the Commonwealth of the Northern Mariana Islands (CNMI) of which Public School System is an autonomous part, is experiencing a severe financial emergency. PSS depends upon the CNMI for financial allotments to fund operations including, without limitation, payment of salaries to PSS personnel. The Parties are aware that PSS has no control or discretion over the amount paid or the timing of the payments of said allotments by the CNMI. Therefore, PSS is unable to enter into long term agreements and to make all of the contractual promises it ordinarily would under non-exigent circumstances.

PSS wishes to assure the continued rendering of educational services to PSS students with the least amount of disruption due to the economic crisis. PSS commits that it will undertake its best efforts to retain competent and valued employees; however, Employee understands that PSS is subject to financial decisions made solely by the CNMI.

Employee hereby acknowledges that this contract is intended to provide employment for the stated term of the contract in lieu of PSS adopting other austerity measures deemed less beneficial to students' continued education and retention of competent and valued PSS employees.

Employee recognizes that due to the unusual economic circumstances prevailing within the CNMI Government at this time, certain PSS provisions, regulations and policies may be suspended, curtailed, waived or abrogated, that would otherwise apply during normal economic periods.

## Terms and Conditions of Employment

1. **EMPLOYMENT**: PSS hereby employs the Employee to fulfill the duties of the following job classification: **CLASSROOM TEACHER IV**. The requirements of this position are described in the attached Position Description, which has been read and is understood by both parties.

a. Location: These services are to be performed primarily on the island of **SAIPAN** at **HOPWOOD JR. HIGH SCHOOL** school, but Employee may be assigned as needed in emergency situations pursuant to Section 1404a. (Citations are to the Regulations for the PSS Employment of Certified Personnel.)

b. Compensation Level: The Employee shall receive an annualized salary of $**37,207.51** subject to continued availability of funding, and shall be initially classified at Grade **VIII** Level **06**.

c. Term: Employment shall commence on the 04 day of March, 2004 and shall continue to the **04th** day of **JUNE**, **2004**, subject to continued availability of funding.

d. Retiree Limitation: The Employee ______ is **XX** **is not** a CNMI Government retiree who has received retirement benefits from the government. If the Employee is such a retiree, then the maximum number of calendar days of employment per fiscal year must be indicated here for this Contract to be valid: ________.

e. Grades/Subject matter(s) generally to be taught: ______________, subject to re-assignment in the discretion of PSS pursuant to Section 1404c.

**2. OBLIGATIONS**: Employee hereby agrees to be responsible for and perform all the acts and duties pertaining to the Employee's employment as a teacher or librarian during the assigned teaching period including, but not limited to, the following:

a. To teach on a full-time basis, in a faithful and efficient manner, those grades and subjects as are assigned from time to time by PSS through its Commissioner and its subordinates.

b. To conform to all lawful rules, regulations, and policies of the Board of Education.

c. To make such reports as may be required by the Commissioner of Education or other members of the administrative staff.

d. To initially qualify, and remain qualified throughout the contract term, for certification as a teacher or librarian, as applicable.

e. To perform such other and further duties as required by the Commissioner of Education and his/her subordinates as may be assigned from time to time consistent herewith.

f. To co-operate and assist the Board of Education and the Commissioner of Education in their efforts during the present financial crisis in allocating educational resources to best serve the needs of PSS students.

**3. EMPLOYEE'S RESUME AND APPLICATION**: Employee hereby represents that all the statements made in the Job Application and the Employee's Resume are truthful and accurate. PSS has relied on these statements in making the decision to offer employment and in certifying the Employee. Any material omissions or misstatements will be a ground for termination and for revoking the Employee's certification. If this is an initial contract as defined by §1302(a)(1)(I) of the Certified Regulations, the Job Application, Job Description, and Employee Resume are hereby attached and incorporated by this reference into this Contract. In the event that this Contract is for renewal, the Job Application and Employee Resume attached to the Employee's first Employment Contract for Certified Personnel are herein incorporated by reference as though attached hereto unless the Employee chooses to submit and attach either a new Job Application or a new Employee Resume, or both.

**4. WORK SCHEDULE**: The normal Work Schedule as defined by § 1403 of the Regulations for the PSS Employment of Certified Personnel, is one hundred and ninety days (190) of which one hundred and eighty (180) days are instructional days. Since the term of this contract is abbreviated, from the date of execution of this contract to the end of the term, the required number of work days shall be pro-rated at the same ratio of work days to off-track days in accordance with Section 1403. It is expected that these work days shall be performed on weekdays. For other non-work days to qualify, permission must be received in writing in advance from the Commissioner. PSS may, in its sole discretion, assign the Employee to a multi-track school year, a single-track school year, a conventional school year, or to two school years in immediate succession, of any of the three types, during the contract term.

**5. COMPENSATION**: As compensation for the services to be provided hereunder, Employee shall be paid a pro rata portion of the total sum stated in §1(b) per annum, as determined by the number of days to be worked multiplied by 1/190th of the annual salary listed in § 1(b) and subject to continued availability of funding. In the event that the Employee is discharged for sufficient and just cause in accordance with the PSS regulations, or shall have their Teacher's or Librarian's Certificate suspended or revoked, the Employee shall not be entitled to any compensation from and after such dismissal or certificate suspension.

The Employee shall not be eligible for overtime pay or compensatory time. Work done by PSS certified personnel is professional in nature and is paid for on a salary basis.

**6. RESTRICTION ON HIRING OF CNMI GOVERNMENT RETIREES, SUBSTITUTE TEACHERS AND SUBSTITUTE LIBRARIANS**: Pursuant to 1 CMC § 8392(c), any person who has retired and received retirement benefits from the Government of the Northern Mariana Islands who is hired by PSS cannot be employed for more than sixty (60) calendar days in any fiscal year without forfeiting any retirement benefits. The Employee understands that this Contract does not change that law.

a. The following Contract modifications apply to CNMI Government Retirees, Substitute Teachers, and Substitute Librarians:

(1) Section 1(a) &(e): Employee agrees to work at any location and to teach such grade(s) and/or subject matter(s) assigned by the PSS and agrees that these assignments may be changed on a day-to-day basis depending upon the needs of the PSS.

(2) Section 1(b): Compensation shall be paid on a daily basis for each calendar day, or portion of a calendar day in which the Employee is assigned to work. The compensation for one day's work shall be 1/190th of the annual salary listed in § 1(b), except work as a substitute teacher is compensated per separate agreement.

(3) Section 4: The number of days to be worked shall be determined by the Human Resources Officer up to a maximum number of days per fiscal year as written in § 1(d). Work is assigned on a daily basis.

(4) Section 5: Compensation shall be paid bi-weekly for any week in which work has been assigned and performed. No within grade increases shall be awarded because of the limited nature of this Contract. The Employee shall not be eligible to receive overtime pay or compensatory time leave.

(5) Section 9: No insurance benefits are granted under this Contract, nor are any existing rights to insurance coverage or benefits affected hereby.

(6) Section 10: No right to receive any leave is granted under this Contract.

(7) Section 11: There shall be no liquidated damages awarded to PSS in the event of a resignation.

7. **WORK ASSIGNMENT**: Employee may be assigned by PSS to teach at any school, to teach any grade, or to teach any subject matter, in accordance with the emergency and flexibility provisions set forth in §1404 of the Certified Regulations.

8. **CONTRACT TENURE**: There are no tenured employment positions offered by PSS. This contract is only for the term stated in § 1(c) and no right to renewal is granted, expressly or impliedly, by PSS to the Employee regardless of whether job performance during the contract term is satisfactory. An offer for continued employment is completely within the discretion of PSS.

9. **INSURANCE BENEFITS**: The Commonwealth government, not the PSS, makes available health insurance and life insurance coverage for its employees. These are group policies in which the Employee, at his or her discretion, may wish to participate. Participation is on a shared basis where the employer pays a portion of the insurance premium and the employee pays the remainder. The Commonwealth government permits PSS employees to participate in these group plans. If the Employee chooses to participate, then PSS will contribute to premiums on the same basis as the Commonwealth government contributes for its employees.

10. **LEAVE**: An employee who has been employed by PSS for six years or less shall accrue annual leave at the rate of two (2) hours per pay period. An employee who has been employed by PSS for more than six years shall accrue annual leave at the rate of three (3) hours per pay period. The use of annual leave is subject to the conditions set forth by regulation or executive order. One hour of unused annual leave will be paid for at the rate of 1/2,080th of Employee's annual salary upon the accumulation of 360 hours of annual leave or upon Employee's separation from PSS.

11. **RESIGNATION**: The Employee may resign during the term of this contract only if accepted or agreed to by PSS. It is the practice of PSS not to accept any resignation unless or until a satisfactory replacement assumes the Employee's duties.

a. If the Employee abandons or leaves employment during the contract term within the first two (2) years of employment with PSS without the concurrence of PSS, the Employee shall pay the recruitment costs incurred by PSS directly or indirectly involved in the recruitment of the Employee. Said recruitment costs shall include without limitation travel, hotel accommodations and meals. This amount may be withheld from any payments due to the Employee from PSS, including, but not limited to paychecks or lump sum annual leave payments.

12. **OTHER LAWS AND RULES**: This Contract is not intended to set forth all of the various duties and obligations of the parties hereto, but rather is made subject to the PSS rules and regulations, as amended from time to time. The Employee has been presented with a copy of the PSS's certified rules and regulations concerning standards of conduct for teachers.

13. **SEVERABILITY**: The clauses, sentences and parts of this Contract are severable to the extent found to be unlawful or ineffective, by a court of competent jurisdiction, but the illegality or ineffectiveness of any such clause, sentence or part shall not affect any other clause, sentence or part of this Contract. Rather, the remaining provisions hereof shall remain in full force and effect.

14. **ENTIRE AGREEMENT**: This Contract, together with any exhibits or documents identified or referred to herein, such as the job description and the off-island hire terms and conditions, if applicable, contains the entire agreement of the parties with respect to the matters covered herein as of the date of execution hereof, and no other agreement, statement, or promise made by any party, or to any agent of any party, prior to the date of this Contract shall be binding or valid.

15. **MODIFICATION**: This Contract is not subject to modification except in writing, duly signed by the parties to be charged thereunder.

16. **GOVERNING LAW:** The laws of the Commonwealth of the Northern Mariana Islands and the Regulations for the Public School System Employment of Certified Personnel shall govern the validity, construction, and effect of this Contract. Any action brought for the enforcement of this Contract shall be brought in the courts of the Commonwealth of the Northern Mariana Islands only.

17. **GRIEVANCE PRIOR TO LAWSUIT**: The Employee hereby agrees that prior to filing any legal or equitable claim in court, he or she will first file a grievance with PSS and prosecute it to a conclusion pursuant to Chapter 5 of the Certified Regulations. Furthermore, the Employee agrees to act in good faith in pursuing the grievance remedy. If upon conclusion of the grievance proceedings, the Employee is not satisfied with the determination, then an action at law

or equity may be filed in court to remedy the grievance. The Employee understands that this is a limitation on its right to sue and that a lawsuit cannot be filed until complying with this section of the Contract. These requirements do not preclude Employee from filing a complaint with a government agency charged with enforcing provisions of law (such as the EEOC), prior to completing the prosecution of a grievance through the PSS's grievance process.

**18. OFF-ISLAND HIRE**: If the Employee's point of hire was outside of the island which is the place of work assignment in § 1(a) and this is the first contract the employee is entering into with the PSS, then the Off-Island Hire Terms and Conditions of Employment, which must be attached hereto, apply to this Contract. Off-island terms and conditions carry over from contract to contract, regardless of whether they are attached to renewal contracts. Employee is not entitled to receive any housing benefits.

**19. FORMATION OF CONTRACT**: This contract form is not valid unless signed by all the parties indicated by the signature blanks. All PSS signatures must be executed first. At that time, the Contract form constitutes an offer of employment to the Employee. When the Employee signs the Contract without alteration, a contract of employment is established. Any alteration or modification of this Contract form by the Employee will constitute a rejection of the Contract, regardless of whether or not it is signed by the Employee.

**20. MEDICAL EXAMINATION**: If this contract is not for renewal of employment with the PSS this offer of employment is tentative. A medical examination will be required before the Employee starts work. If the examination discloses medical conditions that prevent the Employee from successfully performing the essential functions of the job, PSS will attempt to make accommodations to allow the Employee to work. If the examination discloses a medical condition that poses a significant risk of substantial harm to the health or safety of the employee or other people in the workplace, PSS will attempt to make accommodations to allow the Employee to work. In either case, if no reasonable accommodations can be found, or if they cause an undue hardship on PSS, the parties agree that this contract will be void.

21. **RENEWED CONTRACT**: Subject to the terms and conditions set forth herein, this contract is to be construed as a renewed contract in accordance with the Regulations for the Public School System Employment of Certified Personnel.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Contract on the dates noted by their respective signatures.

**HUMAN RESOURCES OFFICER**

I hereby certify that this Employee is qualified for a Temporary Teaching Certificate, that I have received verification of education and teaching experience, copy of the teaching certificate and the criminal conviction clearance, or their substitute as provided for in the regulations, and that I have correctly placed the Employee to the appropriate position classification and correctly assigned the Employee the appropriate grade level and step.

This Employee ________ is or **XX** is not an Off-Island Hire entitled to benefits under § 18.

Date: 3/02/04

**CHARLEY KENTY**
PSS Human Resources Officer

**FISCAL AND BUDGET OFFICER**

I hereby certify that this position is within the FTE requirement of PSS under the appropriation act of P.L. No. _______ and that there are sufficient funds available in Account No. 41050 **-4110-900/HJH** for a total annual obligation of $ **37,207.51** required for this contract.

Date: ____________

**RICHARD WALDO**
PSS Director of Finance

**LEGAL COUNSEL**

I hereby certify that this is the proper contract form for this employment position and that the Commissioner has the legal capacity to execute contracts to employ PSS personnel.

Date: 3-3-04

HEATHER L. KENNEDY
PSS Legal Counsel

**CONTRACTING PARTIES**

**FOR PSS:**

Date: 3/3/04

RITA HOCOG INOS, Ed.D
Commissioner of Education

**FOR THE EMPLOYEE:**

Date: 3/4/04

LISA S. BLACK
EMPLOYEE

I understand and agree that I will not be provided a housing allowance.

Revised 12/28/98




# *Concerned Hopwood Teachers and Staff*

*We the undersigned teachers and staff of Hopwood Junior High School hereby bring forth these concerns to your attention for your review and action.*

*October 6, 2004*

*To Whom It May Concern:*

*This is a letter from concerned teachers and staff of Hopwood Junior High School. We would like to bring to your attention several issues regarding vice Principal Beth Nepaial.*

*These concerns are focused in three main areas which are (1)her in-capabilities of being the vice principal for curriculum and counseling department, (2) the apparent lack of equity toward the staff she should aim to lead, and (3) and her lack of interpersonal skills.*

*In regards to the first concern, she is incapable of being the vice principal for curriculum and counseling at Hopwood for the following reasons;*

- *School year 2003-2004, she hardly did class observations.*
- *She rarely checks lesson plans.*
- *She doesn't provide consultation and training for teachers and counselors regarding new programs being implemented at Hopwood.*
- *She has asked students as well as department heads to review individual teacher portfolios that contain confidential information. This has left a feeling of violation of privacy on behalf of the staff as well as students. These portfolios contained confidential information like teacher resumes and student grades which should not be viewed by the public, but by authorized personnel like her, the vice principal.*
- *As a member of the school administration and supervisory team, she is responsible to follow rules set forth by PSS. It is a concern that she has allowed faculty surveys to be done at Hopwood without the approval of PSS. This information should not be collected or published without the proper approval. Yet it is done at Hopwood and allowed by her for an employee/friend as part of her master's degree work.*
- *As an administrator, she does not set forth a good example or practices rules by PSS regarding use of working hours. She is not*

consistent in clocking in or out during working hours. Log sheet records indicate about 2 hours worth of home visits which the counseling staffs are not aware of to begin with.

- This school year, Hopwood has adopted three kinds of school schedules since the school opened. Changing of schedules was not done ahead of time and it affected the students especially those with special needs. Kids were being shuffled from teacher to teacher as a result of these schedule changes, and increased confusion among students. As part of the administrative team, she should plan ahead and make sure that the school year goes smoothly as it should for the benefit of students.

In regards to the second concern, she shows a lack of equity towards the staff of Hopwood.

- It is apparent that there is favoritism towards Caucasian people like herself. She seems to communicate more with these people than that of locals or Filipino teachers.

In regards to the third concern, she lacks the interpersonal skills that her job description requires.

- She is quick to write up teachers before confronting them personally first to get all the facts straight. There seems to be no warning before a write up that stays on a permanent record. There should be communication to assess all facts and to allow room for improvement before writing up teachers.
- At her mistakes, she is not willing to admit wrong doing and expects the staff to clean up her mess. For example, last school year, her system of issuance of textbooks took a month and a half before the kids received their textbooks. Now that she knows that her system didn't work, she has dumped that responsibility back on the teachers.

The above legitimate concerns serve to testify that morale of many teachers and staff at Hopwood is extremely low. Miss Beth Nepaial should not continue her position as vice principal for curriculum and counseling department. The preceding facts show that Miss Nepaial is incapable of being an effective and productive administrator at Hopwood Junior High School. There is a collective feeling that the open door policy of communication at Hopwood Junior High School is not being practiced because teachers and staff are afraid to personally approach the administration to air out any concerns.

Sincerely,

Concerned teachers and staff