Eric D. Bozman, Esq.
O'CONNOR BERMAN DOTTS & BANES
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

*Attorneys for Plaintiff Lisa Black*

## BEFORE THE BOARD OF EDUCATION

| | |
|---|---|
| LISA BLACK, | CASE NO. _____ |
| Complainant, | |
| vs. | |
| JIM BREWER, individually and in his capacity as Acting Principal for Hopwood Junior High School, and COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS PUBLIC SCHOOL SYSTEM, | COMPLAINANT'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER |
| Respondents. | |

Complainant Lisa Black, by and through counsel, hereby submits her [Proposed] Findings of Fact and Conclusions of Law and Order.

Dated: October 7, 2005.

O'CONNOR BERMAN DOTTS & BANES
Attorneys for Plaintiff Lisa Black

By: *[signature]*
George L. Hasselback

001708

3221_01_051003_PL_COMPFindings

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

## I.

## INTRODUCTION

1. Complainant initiated a grievance pursuant to PSS Employment of Certified Handbook, Chapter 5 § 5401. The grievance was filed on May 19, 2005.

2. On July 15, 2005, Dr. Rita Hocog Inos made a determination to deny Complainant's grievance.

3. On August 12, 2005, Complainant appealed the denial to the Board.

4. On September 22 and 23, 2005, the Board conducted a hearing on Complainant's grievance. At the conclusion of that hearing, the Board directed that the parties file proposed findings of fact and conclusions of law.

## II.

## PARTIES INVOLVED

5. Complainant Lisa Black ("Ms. Black") is a citizen of the United States and, at all times relevant to this action, a resident of the CNMI.

001709

3221_01_051003_PL_COMPFindings

6. Respondent Jim Brewer ("Mr. Brewer"), upon information and belief, is a citizen of the United States and, at all times relevant to this action, a resident of the CNMI. At all times relevant to this action, Mr. Brewer acted as the principal of Hopwood Junior High School ("Hopwood").

7. Respondent Commonwealth of the Northern Mariana Islands Public School System ("PSS") is a non-profit corporation organized pursuant to CNMI statute with its principal place of business in the CNMI.

## III.

## FINDINGS OF FACT

8. In or about March of 2004, Ms. Black began working as a teacher at Hopwood.

9. During the initial portion of her tenure, Ms. Black received favorable evaluations and was regarded as a competent and effective teacher by her supervisors and peers. Specifically, her relationship with Mr. Brewer was both professional and congenial.

10. Between the beginning of her tenure at Hopwood and October 6, 2004, members of the Hopwood faculty and staff became concerned with the qualifications and competence of Hopwood's Vice Principal, a Ms. Beth Nepaial ("Ms. Nepaial"). Because of these concerns, several members of the staff and faculty participated in the drafting of a "letter of concern" ("the letter").

11. On October 6, 2004, the letter was delivered to the administration of PSS and the Commonwealth's Board of Education. Upon receipt of this letter, the aforementioned contacted Mr. Brewer and tasked him with investigating these concerns.

12. After being made aware of this letter, Mr. Brewer formulated the erroneous belief that Ms. Black was responsible for drafting it.

13. Acting upon this belief, Mr. Brewer began to single out Ms. Black for disparate treatment to include selective enforcement of policies, intimidation and harassment. Additionally, despite no change in her performance as a teacher, Ms. Black began to receive unfavorable evaluations in retaliation for her perceived involvement with the drafting and delivery of the letter.

14. Ms. Black was criticized for having several dolls that were given to her by her students, because one of them was a witch. However, Mr. Brewer himself has a voodoo doll in his office with pins stuck in it.

15. Ms. Black's students were given misleading and highly suggestive instructions to write down what they did not like about Ms. Black. These instructions were only given to Ms. Black's students and to no others. These instructions were structured in such a way that would garner only negative comments from Ms. Black's students.

16. A student was interviewed after school hours and off of school property regarding Ms. Black outdoors. After the interviewer bought him some food, she proceeded to

inquire into Ms. Black's flaws and question the student about the possibility of Ms. Black being a "mind reader" or a "witch".

17. Ms. Nepaial conducted Ms. Black's performance evaluation even though she had not viewed her class anytime that school year to comply with the policies governing such reviews. While the evaluation was within 12 months of a prior observation of Ms. Black's class by Ms. Nepaial, the procedure requires an observation to be conducted during that "school year."

18. Ms. Black was singled out for critique for interrupting other classes even though this was common practice among teachers at Hopwood. Ms. Black kept a list for several weeks and determined that her class was interrupted several times a day. In fact Mr. Brewer interrupted her class to request she meet with him about interrupting classes.

19. This retaliatory behavior culminated on April 25, 2005, when Ms. Black received notice that her contract of employment would not be renewed.

IV.

CONCLUSIONS OF LAW

A. **Violation of Civil Rights**

20. At all relevant times, Mr. Brewer was acting under color of law.

21. Mr. Brewer acted in reckless disregard as to the civil rights of Ms. Black by refusing to renew her employment contract in retaliation for actual and/or perceived exercises of her right to free speech and/or religion as guaranteed under the First Amendment to the United States Constitution.

22. Mr. Brewer acted in reckless disregard as to the civil rights of Ms. Black by establishing and/or implementing policies and/or procedures that resulted in a failure to renew her employment contract in retaliation for actual and/or perceived exercises of her right to free speech and/or religion as guaranteed under the First Amendment to the United States Constitution.

23. The conduct of Mr. Brewer as described herein resulted in the non-renewal of Ms. Black's employment contract for a Constitutionally impermissible reason and therefore deprived her of her right to due process under the Fourteenth Amendment of the United States Constitution.

24. The conduct of Mr. Brewer as described herein resulted in financial and emotional damage to Ms. Black, entitling her to damages pursuant to 42 U.S.C. § 1983 and § 1988, including back pay, punitive damages and attorneys' fees.

**B.   Wrongful Discharge**

25. The actions of Mr. Brewer and/or PSS were in direct contravention of the public policy of the Commonwealth of the Northern Mariana Islands including, but not limited to, the fact that they were performed in retaliation for the actual and/or perceived exercise of Ms.

1  Black's right to freedom of speech and/or religion as guaranteed under both the United States
2  and Commonwealth Constitutions.

### C.  Violation of Civil Rights Under the CNMI Constitution

26. The actions of Mr. Brewer and/or PSS deprived Ms. Black of rights guaranteed by the Constitution of the Northern Mariana Islands, including, but not limited to her right under Article I § 5 to due process of law, her right of individual privacy under Article 1 § 10 and her rights to freedom of speech and/or religion under Article 1.

27. The actions of Mr. Brewer and PSS caused Ms. Black to suffer injury and damages, and she is therefore entitled to damages.

### D.  Intentional Infliction of Emotional Distress

28. The acts of Mr. Brewer and/or PSS as described above, were done willfully, maliciously, outrageously, deliberately and purposefully with the intention to inflict emotional distress upon Ms. Black.

29. The acts of Mr. Brewer and/or PSS were also done in reckless disregard of the probability of causing Ms. Black emotional distress.

30. These acts did in fact result in severe and extreme emotional distress, and she is therefore entitled to damages for emotional distress.

E.   **Negligent Infliction of Emotional Distress**

31.   The conduct of Mr. Brewer and/or PSS caused Ms. Black severe anxiety that continues to this date and continues to make her constantly apprehensive and fearful that she will not be able to secure employment and consequently have no means by which to support herself and that her professional reputation has been irrevocably damaged.

32.   Having resulted in such severe and extreme emotional distress, the actions of Mr. Brewer and PSS have caused Ms. Black damages for which she entitled to compensation.

F.   **Breach of Contract**

33.   Ms. Black was initially hired by PSS at an international schools job fair that took place in Boston, Massachusetts in 1996. This arrangement was memorialized in a legally binding contract between PSS and Ms. Black.

34.   As part of her compensation package, Ms. Black's contract included a "housing allowance."

35.   Several months after her arrival and the commencement of her employment, PSS instituted new pay scales and demanded that Ms. Black sign a waiver so that they could cease paying her the "housing allowance."

36.   Ms. Black never signed any such waiver.

37. In spite of her refusal to agree to waive this portion of her compensation, PSS ceased paying Ms. Black the "housing allowance" which constituted a material breach of her employment contract.

38. Ms. Black complied with all terms and conditions of her employment contract.

39. This breach resulted in financial damage to Ms. Black and she is therefore entitled to damages for this breach.

## ORDER

WHEREFORE, the Board Orders as follows:

A. The unfavorable evaluation made of Complaint on April 18, 2005, is stricken from complainant's personnel record.

B. All negative comments made by Mr. Brewer and Ms. Nepali that appear in the Personnel File for the Complainant are stricken.

C. Complainant is ordered reinstated to a new contract at Hopwood High School.

D. It is further Ordered that Complainant shall not be retaliated against by anyone in the administration at Hopwood.

E.  PSS shall pay Complainant for all of her back wages during the time Complainant was unemployed. Payment shall be made to her within thirty (30) days of the entry of this Order.

F.  Complainant is also awarded a sum equal to the back wages she is owed to compensate her for the emotional distress she suffered.

G.  PSS shall pay Complainant's reasonable attorneys fees. Complainant shall submit the billing from her attorney within ten (10) days from the entry of this Order. Counsel for the Commissioner shall then have seven (7) days to comment on the attorneys fees submission. The Board shall then, based on the two submissions, determine the amount to award Complainant for her attorneys fees.

**IT IS SO ORDERED, ADJUDGED and DECREED,**

Date: _____, 2005

_____
Chairman of the Board

Ms. Heather L. Kennedy
C.N.M.I. Public School System
P.O. Box 1370 CK
Saipan, MP 96950
Telephone: (670) 664-3737
Fax: (670) 664-3713

Attorney for: Commissioner of Education

BEFORE THE BOARD OF EDUCATION HEARING PANEL

IN RE: LISA S. BLACK        )
GRIEVANCE                   )
                            )
                            )
                            )
                            )
                            )
                            )

## PROPOSED FINDINGS AND DECISION

This matter came before the Board of Education (Board) hearing panel at the request of Ms. Lisa Black (Black) who is appealing the Commissioner's decision dated July 15, 2005 regarding Black's grievance against Jim Brewer, HJHS Principal. The hearing began on September 22, 2005 and continued through September 23, 2005. The hearing panel consisted of Board Vice-Chairman Dino Jones, Board Member Herman Guerrero and Board Member Marja Lee Taitano. Vice-Chairman Jones acted as the chief hearing officer with Assistant Attorney General Jeanne Rayphand present to advise the panel. Black appeared represented by attorney Eric Bozman. The Hopwood Junior High School (HJHS) Principal against whom Black filed her grievance, Jim Brewer, was present. Heather Kennedy, Public School System (PSS) Legal Counsel, represented the Commissioner's Office.

After addressing preliminary matters, the hearing commenced with the offer to Black to present her grievance. Black did not wish to present any witness testimony. Rather, she

submitted her grievance as written along with the submission of one document labeled "Tape Recording Transcripts".

Essentially, Black's complaint is that Mr. Brewer made disciplinary and employment decisions based on Black's alleged involvement with a "Letter of Concern" complaining about HJHS Vice-Principal Beth Nepaial. Black claims that she became a target of harassment and unfair treatment. Black alleges that Mr. Brewer violated Public School System (PSS) regulations pertaining to dishonesty, discrimination, immoral conduct, and cruelty to students. Claiming she was singled out, Black contends that letters of concern and reprimand regarding her conduct were unjustified. She also challenges the appropriateness of her performance evaluation and Mr. Brewer's decision not to renew her contract.

Chapter 5 Section A of the PSS Regulations for Certified Personnel lists matters that are included and excluded from the grievance process. Section 5151 permits complaints regarding violations of regulations, discrimination, formal reprimands and performance evaluations. Section 5102 specifically excludes discretionary decisions of non-renewal. The Panel, therefore, will address the alleged regulation violations and harassment and the appropriateness of the letters of reprimand and the performance appraisal.

Section 5606 states "the employee shall have the burden of proving its grievance by a preponderance of the evidence." Accordingly, Black must prove each alleged violation by a preponderance of the evidence. Black claims that Mr. Brewer violated PSS Regulations for Certified Personnel. As an employee on a full year as opposed to a school year schedule, Mr. Brewer's conduct is governed by the PSS Regulations for Non-Certified Personnel. Nevertheless, the Panel will address Black's claims of violation one by one.

**Dishonesty Claim:** PSS Regulations for Certified Personnel §3507 provides:

> <u>Dishonesty</u>. No employee shall engage in any dishonest act while performing the duties of his or her employment. Examples of such conduct include, but are not limited to, misreporting sick leave, sign-in times or facts related in the application for employment or certification.

001719

Black's complaint makes blanket statements regarding Mr. Brewer's alleged dishonesty and claims that he withheld a copy of a performance evaluation. Black's complaint states that after she provided details regarding the evaluation that Mr. Brewer gave her a copy indicating that the "filing system is not what it could be." Black did not submit any other evidence regarding dishonesty. There is no reason, therefore, to believe that the evaluation was intentionally kept from Black or that Mr. Brewer engaged in dishonest conduct.

**Discrimination Claim**: PSS Regulations for Certified Personnel §6102 provides:

> <u>Discrimination and Harassment Prohibited</u>. No employee may discriminate or harass another person on account of that person's sex, sexual orientation, race, color, religion, national origin, age, disability, or in retaliation for the exercise of any rights protected by this chapter.

Black's complaint does not contain any evidence that she was discriminated against based on sex, sexual orientation, race, color, religion, national origin, age, or disability. Mr. Brewer questioning the truthfulness of Ms. Black is not discrimination or immoral conduct. Even if the alleged comments in her grievance about "little Manila" or jokes about Mexicans were true, the comments do not amount to discrimination and could not have been directed at Ms. Black, who is a Caucasian, middle-aged female.

**Immoral Conduct Claim**: PSS Regulations for Certified Personnel 3509(a) provides:

> Any employee who engages in immoral conduct which creates a significant danger of harm to students or co-workers, or which is known among his or her students and will impair the ability to teach those students is a ground for dismissal.

Black contends in her grievance that meetings initiated by the Hopwood Principal during her classroom time amounted to immoral conduct. Once again, the complaint contains broad statements without evidentiary support. There are no details regarding whether such interruptions even occurred. Moreover, it is not a violation of any regulation for an administrator to request the presence of a teacher during class time to discuss parent or co-worker complaints or teacher performance issues. Again, even if her allegations as written were true, the conduct

described in Black's complaint does not even approach the level of creating a significant danger of harm to students or staff required to prove immoral conduct.

Cruelty to Students Claim: PSS Regulations for Certified Personnel §3405 provides:

> a. A teacher has the right to exercise *in loco parentis* authority over students and may control, restrain and correct them to further educational purposes; however, such actions are subject to, but not limited to, the following limitations:
> (1) Corporal Punishment: Teachers are forbidden to use corporal punishment on any student.
> (2) Psychological Harm: Teachers are forbidden to engage in any act of psychological cruelty which inflicts emotional trauma on a student.

In her complaint, Black describes an incident where Mr. Brewer went to Black's classroom at the beginning of first period to give her a memo. Black claims that Mr. Brewer interrupted her class time and caused the students to become concerned and worried. Yet again, even if true, this does not amount to cruelty of students. In his testimony to the panel, Mr. Brewer related the incident in detail. He told the panel that he waited at Black's classroom for more than fifteen minutes before first period was scheduled to begin. Although teachers are required to report to class by 7:45 am, Black drove up to her classroom just at 8:00 when students were ready to enter her classroom. Because Black had been failing to report to the office for meetings with the Administration, Mr. Brewer took the opportunity to meet with Black for a few minutes before class. Class time would not have been interrupted and the students would not have had to wait if Black had reported to her class on time. Therefore, any disruption was actually caused by Black. Black failed to submit any evidence that Mr. Brewer was cruel and inflicted emotional trauma on any student.

**Letters of Reprimand:**

Black received a letter of reprimand on January 11, 2005 for failing to provide substitute teaching coverage and embarrassing a student. During the hearing, Black admitted that she entered another teacher's classroom to hand out her grades and that she teased Sam Nepaial in

front of other students. Sam is the son of Beth Nepaial, Vice-principal at Hopwood. As a new student transitioning to Hopwood, Sam was attending Hopwood classes at the end of the semester to ease the transition. Black admitted that she had problems with Ms. Nepaial, yet she chose to single Sam out and question him in front of other students. She admitted during the hearing that she questioned him about whether he was afraid of her. Singling out a new male student and asking him if he is afraid of her in front of other students, demonstrated, at a minimum, poor judgment. When considered in the context of Black's overall aggressive behavior and Black's ongoing dispute with the student's mother, her actions were unkind and inappropriate. She decided to take out her frustrations with the mom on the son. In doing so, she caused embarrassment to the student and pain to his mother.

The January letter also reprimanded Black for failing to report for substitution coverage. Her failure to report for substitution is clear. Black admitted that she did not provide substitute coverage. All teachers were informed about the substitution schedule. Black admitted that she received the schedule regarding substitutions in her box, but that she did not read it. Mr. Brewer testified that an employee looked for Black; however, she was not found on campus. Furthermore, Black refused to provide a reason for her missed substitution even though Vice-Principal Pastor Gagaring requested an explanation as evidenced by Mr. Gagaring's memo of January 11, 2005. Black failed to perform her teaching duties, which warranted a reprimand. The January letter of reprimand shall remain filed in Black's personnel file with the Human Resources Office.

Black received another letter of reprimand dated February 14, 2005. Ms. Grayer testified during the hearing that Black interrupted class to ask if Ms. Grayer had submitted a complaint to the administration against Black. Grayer related that Black was inquiring about an incident with another teacher, Rory Starkey, wherein Black was hostile and threatened to sue Starkey. After receiving the complaint from Ms. Grayer that Black had interrupted her class to discuss this personal issue, Mr. Brewer met with Black. Black submitted the "Tape Recording Transcript" which allegedly sets forth the conversation during this meeting of February 9. In the transcript, Black admits to interrupting Ms. Grayer's class. In fact when asked if she interrupted the class