despite Mr. Brewer's instructions not to do so, Black replied "Absolutely...". This is a clear instance of insubordination. The February 14th letter of reprimand issued by Mr. Brewer for Black's insubordinate conduct was warranted and shall be filed in Black's personnel file.

**Performance Appraisal:**

Finally, Ms. Black requested that the performance appraisal dated 4/14/05 be removed from all files. Black claims that Ms. Nepaial had no right to evaluate her since she had not observed Black previously. It is established PSS procedure that any administrator can conduct observations and complete evaluations. Black does not have her choice of which administrator shall conduct an evaluation. Ms. Nepaial testified that she did, in fact, observe Black in the fourth quarter of school year 2003-2004.

During her testimony, Ms. Nepaial told the panel about the process she followed to evaluate all Hopwood teachers, including Black. Black was reviewed using an instrument provided by the Human Resources Office which has a 6 point scale: 6 is superior; 5 is well above satisfactory; 4 is above satisfactory; 3 is satisfactory; 2 is marginal; and 1 is unsatisfactory. Black's overall performance rating was a 3.75. This is a satisfactory rating. Although Black claims that the performance appraisal was based on the alleged exercise of her first amendment rights rather than her actual performance, the evaluation includes some well above satisfactory marks.

In the performance evaluation, Black received two marginal ratings. The first marginal rating involves maintaining climates in the classroom. During Black's employment at HJHS, the administration testified that they had received complaints from students and teachers that Black used the students' cultural beliefs in spirits against them. In their testimony, teachers Katherine Barja and Christine Halloran confirmed that several students complained about Black claiming to read student's minds, using dolls to intimidate them and flicking their ears and pushing their heads. Based on the student complaints, Ms. Nepaial concluded that Black failed to maintain the dignity of the students in her classroom, which resulted in a marginal rating.

The second marginal rating addressed Black's ability to collaborate with colleagues, parents and others. Several teachers testified during the hearing regarding their conflicts with Black. Black was described as confrontational and aggressive. On one occasion, Black turned a team meeting about student issues into her personal agenda against a fellow cohort member. The evidence presented during the hearing clearly demonstrated that Black had problems interacting with several of her colleagues and her supervisors at Hopwood. Consequently, she received a marginal rating the category dealing with her relations with colleagues. The hearing panel finds that the two low marks on Black's performance evaluation are consistent with her performance at HJHS and the comments of her supervisors and colleagues. The evaluation will remain as is and become part of Black's permanent employment record.

In conclusion, Black failed to prove her grievance against Mr. Brewer. The evidence reviewed by the panel demonstrates that the disciplinary decisions and the performance evaluations were based on Black's conduct and performance at HJHS. Black's claim that she was discriminated against because of her First Amendment rights of "Freedom of Speech.... Or the right to petition the government for a redress of grievances" were not substantiated through the grievance process. Even if Black's first amendment rights included the speech in the "Letter of Concern", the panel finds no evidence that Black rights have been violated.

Accordingly, this panel finds Ms. Lisa Black's grievance without merit.

Respectfully submitted this 7th day of October 2005,

Heather L. Kennedy
PSS Legal Counsel

Case 1:05-cv-00038    Document 71-10    Filed 11/13/2006    Page 3 of 15



Lisa S. Black
P.O. Box 7983 SVRB ~ Saipan, MP 96950
Phone/Fax: (670) 322-5472
E-Mail: blaklisa@yahoo.com



Mr. Roman Benavente, CNMI Board of Education Chairman
CNMI Public School System
P.O. Box 501370 CK, Saipan, MP 96950
Phone: (670) 664-3727

Re.:  Notice of Appeal
      Decision by Dr. Inos received on July 19, 2005

Dear Mr. Benavente;                                              August 15, 2005

On May 19th, 2005, I filed a formal grievance against Mr. Jim Brewer, Acting Principal at Hopwood Junior High School. On July 19th, 2005, I was given Dr. Inos' decision in regards to my grievance. As I feel her decision is not acceptable, I have decided to file an appeal. In accordance with the Regulations for the Public School System Employment of Certified Personnel Chapter 5, Section F, please accept my notice of appeal of the Commissioner's decision.

My contact information has been provided above. Thank you for your time and attention in this matter!

Respectfully Submitted,

*Lisa S. Black*

Lisa S. Black

Attachments: Copy of grievance, copy of Commissioner's Decision

001725



# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## STATE BOARD OF EDUCATION
### PUBLIC SCHOOL SYSTEM
P.O. BOX 501370
SAIPAN, MP 96950

Roman C. Benavente
Chairman

Don M. Ames
Vice Chairman

Marja Lee C. Taitano
Secretary/Treasurer

*Members*
Frances H. Diaz
Herman T. Guerrero

Scott Norman
Non Public School Rep.

Ms. Aubry Manglona Hocog
Student Representative

Andrew Bennett
Teacher Representative

Commissioner of Education
Rita Hocog Inos, Ed.D

**MEMORANDUM**                                                July 15, 2005

**TO:**      Lisa Black, Classroom Teacher

**FROM:**    Commissioner of Education

**SUBJECT:** Decision regarding Grievance

### Introduction:

On May 19, 2005, Ms. Black submitted a lengthy grievance against Jim Brewer, Hopwood Junior High School (HJHS) Acting Principal, alleging a number of claims. Pursuant to the PSS Grievance procedure, appointed Equal Employment Opportunity (EEO) Counselor Karen Borja met separately with Mr. Jim Brewer and Ms. Lisa Black within 14 days. During her investigation, Mrs. Borja interviewed both vice principals from HJHS and as many teachers who would be interviewed.

Although Section 5405 of the PSS Regulations for Certified Personnel provides for mediation, it was determined that mediation was not an effective means to resolve this dispute. This determination was based on Mrs. Borja's meetings with the two parties and the content of Ms. Black's complaint that included comments that she felt uncomfortable, unsafe and harassed by him. Accordingly, Mrs. Borja prepared and directly submitted a report for the Commissioner's review. Pursuant to PSS regulations, the Commissioner must consider the report, meet with the grievant and issue a decision within 14 days.

On July 8, 2005, I met with Lisa Black and her attorney, Michael Dotts. PSS Legal Counsel, Heather Kennedy, also attended this meeting. Lisa Black and her attorney presented Ms. Black's grievance.

I have considered Ms. Black's grievance, the EEO counselor report and the comments of Ms. Black and her attorney. I now issue this decision within the appropriate time frame (58 days) pursuant to PSS regulations.

Board of Education
Telephone : (670) 664-3727
Fax       : (670) 664-3771

website: http://www.saipan.com/gov/branches/poe/index.htm

Commissioner of Education
Telephone : (670) 664-3700
Fax       : (670) 664-3798

L. Black Decision
July 15, 2005

Page 2

**Ms. Black's Allegations:**
Essentially, Ms. Black's complaint is that Mr. Brewer has continuously harassed her in numerous ways and treated her unfairly. Ms. Black's allegations against Mr. Brewer include allegations of limiting her First Amendment Rights, discrimination, harassment, retaliation, unfair treatment and the non-renewal of her contract. The three primary complaints are harassment for Ms. Black's alleged involvement in a "Letter of Concern" complaining about HJHS Vice-Principal Beth Nepaial, the appropriateness of letters of concern and reprimand issued to her and the accuracy of a recent performance evaluation completed by Beth Nepaial. Ms. Black contends that Mr. Brewer retaliated against her for the "Letter of Concern" even though Ms. Black was not a signatory. Ms. Black contends that Mr. Brewer believed her to be the author and that his conduct and decisions were affected by this belief.

Ms. Black claims that everything was professional and collegial between Mr. Brewer and herself until the "Letter of Concern" regarding Beth Nepaial was written in October 2004. She claims that things changed after the letter and that she became a target of harassment and unfair treatment. She further contends that she was singled out and given letters of concern and reprimand when other teachers were not. Ms. Black feels that Mr. Brewer yelled at her on more than one occasion and that the meeting environment became unsafe and threatening.

In her meeting with Mrs. Borja, Ms. Black described her classroom setting and students and expressed concerns regarding harassment she endured in front of the students. She complained that she received a formal reprimand for interrupting / disrupting other classes. She asserts that, on one occasion, Mr. Brewer interrupted her instructional time to deliver a letter to her forcing her students to wait outside the classroom. She claims that things escalated between the adults and that situation caused the students to feel confused and worried for her.

Ms. Black feels that she is a dedicated teacher who looks out for the well being of her students. She feels her treatment by Mr. Brewer was unjustified.

L. Black Decision
July 15, 2005

Page 3

**Mr. Brewer's Response:**
Mrs. Borja met with Mr. Brewer, Principal of HJHS, regarding Ms. Black's allegations. Mr. Brewer's position can be simply summarized. He asserts that his decisions and the performance evaluation were based on Ms. Black's conduct and performance, not on any alleged involvement with complaints against the Administration. Her performance evaluations were good overall except for matters outside the classroom. Mr. Brewer observed Ms. Lisa Black twice, and on each occasion, gave her a favorable evaluation. She is generally a competent teacher in the classroom, well organized, positive, and her students are involved in the learning process.

However, her main problem is her interaction with her colleagues and her supervisors. She becomes argumentative, pushy and insubordinate when she does not get her way. She refuses to accept the decisions of her supervisors, argues constantly and fails to follow rules. For these reasons, she was issued letters of concern and letters of reprimand. Mr. Brewer states that he has not treated Ms. Black any differently than any of the other teachers at HJHS.

Mr. Brewer stated that he had tried to work things out with Ms. Black, but to no avail. Mr. Brewer requested that Beth Nepaial be a witness at several of their meetings, but Ms. Black stated she wanted someone else. Towards the end of the school year, Mr. Gagaring was present.

Mr. Brewer feels that Ms. Black is not a team player, and continues to display insubordinate behavior. She does not get along well with many of her peers, as evidenced by several complaints against her by fellow teachers.

**Findings:**
As a preliminary matter, contract renewal decisions are specifically excluded from the PSS grievance process pursuant to Section 5102 of PSS Regulations for Certified Personnel. It must be noted that Ms. Black's grievance was filed after she received a notice from HJHS that her contract would not be renewed. It appears that the primary concern of Ms. Black is the renewal of her employment contract. PSS Legal Counsel and Ms. Black's attorney are currently negotiating the issue of her future employment with PSS. Nevertheless, the following is my decision regarding the primary issues in Ms. Black's complaint.

L. Black Decision
July 15, 2005

Page 4

As far as harassment, I find no evidence that Ms. Black has been discriminated against based on sex, sexual orientation, race, color, religion, national origin, age, or disability. The alleged comments about "little Manila" or jokes about Mexicans do not amount to discrimination and could not have been directed at Ms. Black, who is a Caucasian, middle-aged female.

On the issue of fairness, many of the teachers at HJHS assert that Mr. Brewer is the same with all teachers, consistent and firm. His management style can be interpreted as short and direct, but he is equal to all. His main concern is that the school is running efficiently and students are learning. Despite claims of retaliation, he renewed the contracts of several employees who were actually signatories to the "letter of concern". During his tenure as an administrator, he has issued many letters to his employees and made reasonable decisions regarding the renewal of employee contracts.

With respect to the letters of concern and reprimand issued to Ms. Black, HJHS staff confirms that Mr. Brewer sends letters to all teachers consistently. His leadership style includes documenting his concerns regarding staff conduct and performance issues. When teachers did not attend meetings or turn grades in on time, he often sent letters of concern – but he is fair to all. Several of the teachers interviewed by Mrs. Borja stated that they received letters of concern, but each admitted that the letter was justified. Ms. Black was not singled out.

PSS regulations specifically state that "formal" letters of reprimand are matters that may be considered in employee complaints. Ms. Black's complaint indicates that she received two formal letters of Reprimand dated January 11, 2005 and February 14, 2005. Therefore, I will only consider the legitimacy of these two letters. Letters of reprimand are placed in PSS personnel files in the Central Office. Ms. Black responded in writing to both of these reprimands. Her responses will be attached to the letters of reprimand so that her position is included in her personnel file. As part of this decision, I will direct that the second letter dated February 14 be withdrawn from Ms. Black's file. This is intended as a compromise and does not imply that the letter was unjustly issued.

L. Black Decision
July 15, 2005

Page 5

Moving to the meeting atmosphere, the consensus of the staff interviewed by Mrs. Borja indicates that Mr. Brewer's demeanor in staff meetings is firm, professional, and consistent. The staff admits that his leadership style may not always cater to a lot of discussion. However, HJHS teachers acknowledge that Ms. Black did not appear to be frightened about speaking up and often sought clarification on issues. Her actions in staff meetings did not indicate that she failed to express her opinions or in any way feared Mr. Brewer. In fact, several teachers mentioned that Ms. Black was augmentative in staff meetings. Questions would be asked and answered by the school administrators, but Ms. Black continued to press her issues.

Mrs. Borja interviewed Ms. Black's peers, some of who were members of the same cohort team. These teachers commented that Ms. Black is sometimes confrontational and fails to come up with solutions. She was described as dominating, always argumentative and just difficult to work with. One teacher described Ms. Black like "a salmon swimming against the stream".

On the First Amendment issue of "Freedom of Speech.... Or the right to petition the government for a redress of grievances," Even if first amendment rights included the speech in the "Letter of Concern", I find no evidence that her rights have been violated. She did not petition the government. She was not a signatory to the "Letter of Concern" in October, nor has she been unable to express herself. Mr. Brewer and PSS gave Ms. Black every opportunity to respond to the letters of concern and reprimand as evidenced by her letters to the Human Resources Office. The actions taken against Ms. Black were based on her conduct and were issued, as they would have been towards any other employee. She was not retaliated against for her alleged association with the "Letter of Concern".

Finally, Ms. Black requested that the performance appraisal dated 4/14/05 be removed from all files. She feels that Ms. Nepaial had no right to evaluate her since she had not observed her previously. Any administrator can conduct observations and complete evaluations. Moreover, Ms. Nepaial did observe her tessellation lesson in the fourth quarter of school year 2003-2004.

L. Black Decision
July 15, 2005

Page 6

The general conclusion is that Ms. Black is an effective teacher in the classroom. Mr. Gagaring observed Ms. Black informally twice (dates unknown) and stated that Ms. Black is very good with the students. Mr. Brewer observed Ms. Black twice on 8/31/04 and 10/12/04. Both performance evaluations were good. Ms. Beth Nepaial evaluated Ms. Black on 4/14/05 using the CNMI Public School System Performance Appraisal Instrument. Ms. Black received ratings of five on Items #1, 3, 4, and 5. However, she received the rating of two on #2 – Creates and Maintains Climates and #6 – Collaborates with Colleagues, Parents and Others. Although she has requested that someone other than Ms. Nepaial perform the evaluation, Ms. Nepaial rated Ms. Black highly on her teaching. However, Ms. Black fell short on those items primarily addressing conduct outside the classroom relating to peers, administrative duties, etc. The two low marks are consistent with Ms. Black's performance at HJHS and the comments of her supervisors and colleagues. The evaluation will remain as is and become part of her permanent employment record.

The foregoing is my decision regarding all complaints raised by you against HJHS administrator, Jim Brewer. If you are not satisfied with this decision, you should review Chapter 5, Section F of the Regulations for Certified Personnel.

Rita Hocog/Inos, Ed.D

Ms. Lisa S. Black
HJHS Teacher
P.O. Box 7983 SVRB
Saipan, MP 96950
670-322-5472



May 19, 2005

Ms. Heather Kennedy
CNMI PSS Equal Employment Officer
P.O. Box 1370 CK
Saipan, MP 96950

Dear Ms. Kennedy:

Please accept this letter as a formal grievance and complaint against Mr. Jim Brewer, Acting Principal at Hopwood Junior High School. I have attempted on many occasions to resolve issues directly with Mr. Brewer throughout this school year. In addition, I have shared my concerns and tried to resolve issues throughout the past six or seven months with Mr. Charley Kenty at PSS Human Resources and with Ms. Karen Klaver at PSS Legal Counsel.

The Regulations for the Public School System Employment of Certified Personnel Handbook, Chapter 5, §5401, states an employee may file a written grievance and complaint; "If the employee is unable to settle the grievance by consulting his or her supervisor..." As stated previously, I have made many attempts to resolve issues with my supervisor and a variety of PSS Personnel. As a result, I refer to §5402, the Contents of the Complaint;

**A. The identity of the aggrieved employee and the employee's work assignment**

I, Lisa Black, Life Skills Teacher at Hopwood Junior High School, am filing a formal grievance and complaint against Mr. Jim Brewer, Acting Principal at Hopwood Junior High School.

**B. The details of the grievance**

Throughout this school year, (2004-2005), I believe I have been continuously harassed by Mr. Brewer in a variety of ways and treated unequally by him. It is my contention he has retaliated against me for actions he believes I have taken and for actions I have a legal right to take. I have dozens of pages of documentation to verify my claims, as well as numerous witnesses to my claims and other forms of evidence. Please note the following references to clarify my grievance:

1. As my contract is with the CNMI Public School System, under the "umbrella" of the CNMI government, I assume the contract and Regulations Handbook subsumes my constitutional rights. The CNMI Constitution, Article I: Personal Rights, Section 2 states; "Freedom of Religion, Press and Assembly. No law shall be made respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances." I contend Mr. Brewer has intentionally retaliated against me for his perception of my involvement in a Letter of Concern or "petition" filed by many Hopwood staff members, which in actuality was their right.

   a. Early in the school year, the majority of the staff was having difficulties with Ms. Beth Nepaial, Hopwood's Vice Principal of Curriculum and Instruction. According to what some of these individuals have shared with me, they attempted to resolve their issues with Ms. Nepaial and Mr. Brewer, were unable to, and as a result, drafted a letter of concern and passed it on to administrators at PSS and the Board of Education. Twenty-six staff members from Hopwood signed the letter. I was not one of them, and I had no part in the writing or submitting of the

001732

May 19, 2005
Page 2

letter. (This may be verified by the parties involved in the writing and signing of the letter, some of whom have signed a statement to that effect. Attachment A).

Prior to the submission of the letter, Mr. Brewer's attitude toward me was typically professional and collegial. He and I had talked about several position possibilities he had in mind for me, including becoming the new head of the Physical Education department and building a new computer lab and teaching computer technology. (These possibilities were also discussed with PSS Legal Counsel). Having observed my teaching in my classroom in both August, 2004 and again in October, 2004, Mr. Brewer continuously complemented my teaching skills and gave me the highest scores possible on both evaluations. (Attachments B and C).

Following the submission of the letter of concern, I believe I became a "target" for retaliation by Mr. Brewer. In a meeting we had the first week back from Winter Vacation, (with Mr. Gagaring present), Mr. Brewer told me everything had changed for him on October 6th, 2004. I asked him what happened on October 6th, and he said that was when the "Petition" was sent, referring to the "Letter of Concern" noted previously. He told me both he and Ms. Nepaial believe I wrote the letter and solicited signatures. I explained to him that I had not written the letter, and that I hadn't even signed it. Mr. Brewer said he knew I hadn't signed it, because he looked for my name as soon as he received a copy of the signatories. The effect of his beliefs was that I became personally attacked. In numerous subsequent meetings with me, Mr. Brewer brought up the petition each time, even though each time I requested him not to, as I had no part of it.

b.  As a result of Mr. Brewer's perception that I wrote the petition and was involved in organizing the group of disgruntled staff members, I have gone through retaliation and harassment, which includes, but is not limited to:

   1. Undeserving and unsubstantiated Letters of Concern. (Attachments D through E).

   2. Undeserving and unsubstantiated Formal Reprimands (Attachments F through I including my responses).

   3. His initiation and support of a poor Performance Appraisal completed by Ms. Nepaial. (Attachments J and K including my response).

   4. The Non-renewal of my teaching contract (Attachment L).

The documentation provided for each of the previous items substantiates my claims.

c.  On April 18th, 2005, I was given another Performance Appraisal. This appraisal was for the School Year 2004 – 2005, and was completed by Ms. Nepaial. Unfortunately, Ms. Nepaial has never observed me in my classroom this year, nor has she come to review any professional documentation I have. Mr. Brewer insisted I write any response I had to my Performance Appraisal before the end of the day, which I did. (Attachment K). I also informed Mr. Brewer and Ms. Nepaial that I would be filing formal grievances against them for the various incidents continuing to occur and the lack of professionalism they continue to exhibit toward me. I sent a memorandum to PSS Legal Counsel stating I would be filing grievances against Mr. Brewer and Ms. Nepaial. Once again, I am exercising my rights as provided in the PSS Regulations, the CNMI Constitution, and the U.S. Constitution. As a result of my announcement and my response to the appraisal, Mr. Brewer responded through the following actions:

   1. Wrote a response to my response of my Performance Appraisal. (Attachment M). I am not aware of any regulation that allows a "response to a response". He chose to give me a copy of this letter in my classroom during instructional time.

May 19, 2005
Page 3

    2. Sent me a Non-renewal of my teaching contract. (Attachment L). He chose to send this letter to me via Mr. Gagaring during instructional time.

2. According to the PSS Employment of Certified Personnel Handbook, §5101 Included Matters; "All complaints regarding an employee's contract, violations of regulations by other than the employee, formal reprimands, performance evaluations, classification, within-grade increases and any form of discriminatory treatment in employment on the basis of sex, sexual orientation, race, color religion national origin, age, disability or for the exercise of any of these listed rights shall be brought as grievances pursuant to the procedures set forth in this chapter." I am exercising my right to file a grievance.

3. Many of the sections of the PSS Regulations for Certified Personnel refer to teachers. I believe this is not limited to teachers, but encompasses all "Certified Personnel". It is my strong belief that Mr. Brewer violated several PSS Regulations, which include, but are not limited to:

    a. Chapter 3: Standards of Conduct for Employees, §3405, Cruelty to Students ~ "Teachers are forbidden to engage in any act of psychological cruelty which inflicts emotional trauma on the students." On Friday, April 22nd, Mr. Brewer came to my classroom at the beginning of 1st Period to give me his response to my response of my Performance Appraisal. (Attachment M). Through his actions, mannerisms, facial expression, and voice toward me, Mr. Brewer subjected my students to fear and emotional trauma. The students were confused and worried about what was happening or what might happen in the future. (Attachment N). Mr. Brewer had walked past me only 15 minutes earlier, when I was talking with my colleagues, Ms. Brel and Ms. Sikyang. At that time, he did not ask me to meet with him. In my opinion, by coming to my classroom where my students were lined up outside to come in, it is evident he had lost sight of what is in the best interest of the students and showed a total lack of professionalism. (Attachment O).

    b. Chapter 3: Standards of Conduct for Employees, E, Personal Conduct, §3507, Dishonesty ~ "No employee shall engage in any dishonest act while performing the duties of his or her employment." Mr. Brewer misreported many of the facts related to my performance and related to my application of continued employment with PSS. This has been verified through the various documents I have provided and can further be verified through other documents and forms of evidence.

    In addition, on January 14th, 2005, I submitted a memo to Mr. Brewer requesting various documents, including copies of my two performance evaluations. (Attachment P). In his response, he provided me with a copy of my evaluation from August 31st, but stated he had documentation for only one formal evaluation for me, which was false. (Attachment Q). In a follow-up memo, I described the second evaluation in great detail, including the date it was done, where it was done, what we were doing in class, and the documents I had provided to him at the time. (Attachment R). Over a week later, I received a copy of my second evaluation with a post-it note from Mr. Brewer saying, "Filing system not what it could be – J". (Attachments C).

    c. Chapter 3: Standards of Conduct for Employees; E, Personal Conduct; §3509a, Immoral Conduct ~ "Any employee who engages in immoral conduct which creates a significant danger of harm to students or co-workers, or which is known among his or her students and will impair the ability to teach those students is grounds for dismissal."

        1. On more than one occasion, Mr. Brewer sent someone to interrupt me during instructional time to call me to the office. This was disruptive to my lesson, and also indicated to students that urgent problems existed, when they didn't.

        2. In the times I was called to the office, I was usually given minimal advance notice or no notice at all prior to being called in. Once there, I experienced situations that made me feel very uncomfortable and unsafe. I was seldom informed of why I was being called to the office, and was often called during my class. The reasons included, but were not

May 19, 2005
Page 4

limited to, the following occurrences: an unscheduled meeting with a parent, an unscheduled meeting with a teacher, and a few meetings for actions against me (i.e.: letters of concern, formal reprimands, etc.) I would typically ask if we could meet during a non-instructional time so I could focus on my students, and was usually denied my request.

3. I had made it clear to Mr. Brewer on several occasions, both verbally and through a letter, that I did not feel comfortable or safe meeting with him alone. (Attachment S). I have been the recipient of his anger on many occasions. In meetings with me, he would often yell at me, maintain a posture that felt threatening to me, and numerous other forms of communication that I consider to be intimidating and harassing.

As a result of these issues, I had asked that we not meet without Mr. Gagaring, VP of Administration and Discipline and my colleague, Ms. Brel, as a teacher representative. I asked PSS Legal Counsel if this request was within my rights, or if I was being "insubordinate", and she advised me that I was within my rights and was not being insubordinate. Mr. Brewer honored my request on only one occasion. After my requests, I had many meetings with him and Mr. Gagaring, him and Ms. Nepaial, and him and me alone with the door wide open for all to hear.

4. On the two Formal Reprimands I received, I wrote my responses to each of them to be placed in my personnel file. I sent copies to Mr. Brewer, addresses to "James Brewer". Every person I've known who was named "Jim" or "Jimmy" had a birthname of "James". I addressed the letters this way out of what I meant as respect and formality. His response was to return both letters back to me, with a slash across each of them and his handwriting stating, "My name is not James". (Attachments T and U). His response to me providing him with copies felt very unprofessional, hostile, and aggressive.

d. Chapter 3: Standards of Conduct for Employees; E, Personal Conduct; §3509b, Immoral Conduct ~ "…immoral conduct may involve sexual misconduct or the unjustified use of profanity or offensive language." Mr. Brewer often says things that are offensive in staff or individual meetings, including, but not limited to, the following comments;

1. In a staff meeting, Mr. Brewer made the comment that his steering wheel on his truck is really small ... kind of like the ones little old Mexican men use so they can drive with their handcuffs on when they escape from prison.

2. When Mr. Brewer interviewed me for a position at Hopwood, he warned me that I would be working in "Little Manila" because the team I would be working with was all Fillipino.

3. Mr. Brewer has told me on a few occasions, "Teachers tell me things about you and they have no reason to lie to me." Yet, when I told him the truth about issues he accused me of, he often said he didn't believe me. When I asked him why he continuously called me a liar at every meeting we had, he denied ever called me a liar, but pointed out that he doesn't believe many of the things I say to him.

e. Chapter 6: Equal Employment Opportunity, §6102, Discrimination and Harassment Prohibited ~ "No employee may discriminate or harass another person on account of that person's sex, sexual orientation, race, color, religion, national origin, age, disability, or in retaliation for the exercise of any rights protected by this chapter." Again, it is assumed this section subsumes my CNMI Constitutional rights. I feel he has discriminated against me and harassed me due to his erroneous perception of my involvement in the previously stated issues.

May 19, 2005
Page 5

    f. Chapter 6: Equal Employment Opportunity, §6103, Discrimination Defined – "Discrimination is the singling out of a person or persons for different treatment, regardless whether good or bad, based on the factors listed in §6102." I received treatment different from my colleagues throughout the year. A few examples include, but are not limited to:

1. Not being given equal treatment to all Hopwood staff members when receiving various directives, for example the issue of interrupting class. As a result, I received formal reprimands for interrupting a class. In a discussion on Wednesday, February 9th, 2005, Mr. Brewer asked why I had disregarded his instructions about not interrupting a class. I pointed out that many staff members interrupt classes on a regular basis. I said to him, "… I am a target. I don't understand why this rule applies to me and doesn't apply to the rest of the campus." His response was, "You know we have a rule about interrupting classes … The fact that this happens in other instances on the campus in my mind is neither here nor there. What is important is your disregard for my direct instruction that you not do this. Whether you think you are targeted or not, well that's a whole other issue that you might want to discuss with somebody else." Six days later, I was given a Formal Reprimand.

2. Not being given standard treatment as my colleagues when concerned parents contacted the school. On one occasion, a parent came to the school with concerns, and instead of Mr. Brewer referring the parent to me to schedule a meeting, he pulled me from my class to meet right then. On another occasion, a parent went into the office to set up a meeting with me. Ms. Nepaial found out he wanted to meet with me, and told him to write a letter to me, with a copy to Mr. Brewer. Mr. Brewer then did not allow me any time to contact the parent before he was making numerous demands of documentation from me. (Attachment V). Again, this is not standard protocol at Hopwood, or any school I've been in. I did handle and resolve the issue with the parent and student. The parent, (who is also a PSS teacher), expressed his frustration at having received the "run-around" from the administration.

3. Mr. Brewer sent out a note requesting experienced and qualified teachers to act as volunteer peer evaluators. I submitted a letter to volunteer but was never given the courtesy of a response. (Attachment W).

4. I filed two formal grievances against two of my colleagues, and they filed against me. When they filed their grievances, Mr. Brewer pulled me out of my classroom to discuss the issue. When I filed my grievances, Mr. Brewer did not give me the courtesy of meeting with him and the parties involved. (Documentation available).

C. The outcome of the employee's discussion with his or her supervisor

Again, throughout the past months, I have attempted to resolve so many issues with Mr. Brewer. I believe he has been unresponsive to my attempts to resolve issues. Throughout my discussions with Mr. Kenty and Ms. Klaver throughout the year, they have both recommended I maintain documentation of my claims and file them.

D. The corrective action desired

> Formal Reprimands and Letters of Concern written by Mr. Brewer be removed from all files

> The Performance Appraisal dated 04/14/05 and all related responses from Mr. Brewer be removed from all files

> A Performance Appraisal be completed by Mr. Pastor Gagaring, the Vice Principal for Discipline and Administration at Hopwood Jr. High School or another unbiased, qualified person from PSS

May 19, 2005
Page 6

- My contract renewed for two years

- Reinstated to the position at Hopwood I was hired for last year, which is teaching 7th Grade Math to the advanced team of students (currently Team C) in a classroom located with my team

- To work in an environment free from retaliation, harassment, verbal abuse, and inequity from Mr. Brewer

- The right to transfer to another school at the request of myself and an administrator from said school or another position in PSS if I am hired through the standard hiring process

- Legal expenses incurred throughout this process

My hope is we can resolve these issues without further difficulties in a fair and professional manner. If you would like me to provide you with anything else, or have questions for me, my contact information is written above. I look forward to your response.

Respectfully Submitted,

*L. S. Black*  05/19/05

Lisa S. Black
Hopwood Junior High School Teacher

Attachments: A through W

001737