**GEORGE L. HASSELBACK, ESQ. – (F0325-NMI)**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
**P.O. Box 501969**
**Saipan, MP 96950**
**Telephone No. (670) 234-56847**
**Facsimile No. (670) 234-5683**

*Attorneys for Plaintiff Lisa Black*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **LISA BLACK,** | **CIVIL ACTION NO. 05-0038** |
| **Plaintiff,** | |
| **vs.** | |
| **JIM BREWER, individually and in his official capacity as Acting Principal for Hopwood Junior High School, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS PUBLIC SCHOOL SYSTEM, and JOHN AND/OR JANE DOE,** | **COMBINED OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** **Date:  December 14, 2006** **Time:  8:00 a.m.** **Judge:  Munson** |
| **Defendants.** | |

## I.  INTRODUCTION

Plaintiff, by and through counsel, offers this Opposition to the respective Motions for Summary Judgment filed by Defendant CNMI Public School System's ("PSS") and Defendant Jim Brewer ("Mr. Brewer").  In so moving, Defendants misstate controlling law as it exists in the CNMI, apply factually inapplicable case law and selectively omit certain facts from their briefs.  Therefore, because genuine questions of material fact do exist, Defendants' Motions for Summary Judgment should be denied and this matter presented to a jury for adjudication.

As will be more closely examined below, Defendants have moved for summary judgment as to each and every cause of action of which Plaintiff complains. Despite several genuine issues of material fact that exist in each of Plaintiff's causes of action, Defendants maintain that Plaintiff's entire Complaint should be dismissed. In fact, there exist such an abundance of questions of material fact that to grant summary judgment would be clearly erroneous. This Court should submit each of Plaintiff's causes of action to a trial by jury where the facts can be rightfully determined. Defendants' Motions should be denied.

## II. STANDARD OF REVIEW

The Defendants have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., as such the facts and all reasonable inferences to be drawn from these facts must be viewed in a light most favorable to the party against whom judgment is made; summary judgment may be granted only when no material question of fact remains. *Atalig v. Camacho*, 1 CR 93 (D.N.M.I. 1980), *rev'd.sub nom. on other grounds*, *Taisacan v. Camacho*, 660 F.2d 411 (9th Cir. 1981); *Lizama v. Rios*, 2 CR 568 (D.N.M.I. 1986); *Hill v. CNMI*, 1 CR 981 (D.N.M.I. 1984). Furthermore, in the benchmark summary judgment case *Anderson v. Liberty Lobby, Inc.* the U.S. Supreme Court held that:

> [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

477 U.S. 242, 255 (1986). Therefore, the testimony presented in opposition to this Motion for Summary Judgment should not be examined as to credibility, but rather accepted as true and all fair inferences thereto drawn in favor of the Plaintiff.

Furthermore, Defendants have filed a document entitled "[Proposed] Findings of Uncontroverted Fact." Plaintiff objects to the characterization of events as presented in this document and disputes both the factual accuracy and the insinuations raised therein as is further supported below. Plaintiff's interpretation of the facts relevant to this Opposition is presented in detail below.

## III. ARGUMENT

Since Defendants have moved for summary judgment as to each and every cause of action contained in Plaintiff's Complaint, Plaintiff will respond to Defendants' arguments as they apply to each cause of action in turn.

**A.    Genuine Issues Of Material Fact Exist As To Plaintiff's First Cause Of Action**

Plaintiff's First Cause of Action alleges violations of her civil rights arising under the First and the Fourteenth Amendments to the United States Constitution. Genuine issues as to several material facts preclude summary judgment against Plaintiff as to this First Cause of Action.

**1.    Plaintiff Actively Participated In The "Letter Of Concern"**

First, Defendants argue that Plaintiff cannot pursue an action for violation of her First Amendment rights, because, according to Defendants, she has admitted to having never engaged in any constitutionally protected activity. This is incorrect. Ms. Black aligned herself with the Letter and associated with those persons who had concerns regarding Ms. Nepaial. Specifically, she assisted and advised persons who drafted and signed the letter.[1]

---

[1] *See Declaration of Lisa S. Black* attached hereto as Exhibit "A" at para. 1-4.

1

2      Ms. Black also attended and participated in meetings regarding the concerns raised in the

3    Letter after PSS took action to address these concerns:

4          Q      And as far as the petition [referring to the Letter]… was there a
5                 mediation involving that letter of concern or meeting?

6          A      Yes.

7          Q      Did you ever participate in any of those meetings?

8          A      Yes.[2]

9

10    She associated with the persons involved with the Letter because she too wished, and in fact did,

11    express her concerns regarding Ms. Nepaial:

12         A      I became involved with the group of teachers that were both involved
13                with the letter and those who were not involved with the letter that had
                  concerns with Beth and her performance at the school because I was
14                one of those that was concerned as well.

15         Q      And what did that group do?

16         A      When Mr. Kenty came to the school to talk to the staff, we were trying
17                to have conversations with him, but Mr. Brewer came in and kicked
                  out all of the teachers that had not signed the letter of concern.[3]
18

19    Ms. Black involved herself with the persons responsible for the Letter, stood with them, freely

20    associated with them and was punished for it.

21

22

23          There is contrary testimony from both of the parties as to Ms. Black's relative

24    involvement with the Letter and her association with the group responsible for it. A reasonable

25    finder of fact could just as easily believe one party over the other. Since credibility of witnesses

26

27    _____

28    [2]  Transcript of August 8, 2006 Deposition of Lisa Black at 102 and "Exhibit A" at para. 5-6.
      [3]  Transcript of August 8, 2006 Deposition of Lisa Black at 102 and "Exhibit A" at para. 6.

4

is an improper avenue of exploration in a summary judgment motion,[4] there then exists a genuine issue as to Ms. Black having expressed herself and summary judgment should be denied as to this issue.

## 2. The "Letter Of Concern" Implicated Matters Of Significant Public Concern.

Next, Defendants argue that even if Plaintiff engaged in some activity that would allow her to make a claim of a violation of her First Amendment rights, that the subject matter of the "letter of concern" was not related to a matter of public concern.[5] Therefore, they argue, that whatever speech or expression Plaintiff undertook is not constitutionally protected.[6] The Defendants characterize the subject matter of the "letter of concern" as "simply part of an internal dispute between … teachers and the … administration."[7] This mischaracterization of of the "letter of concern" ignores the significant public concerns implicated and the incredible interest taken in these matters by the community at large.

### a. Criticisms Of Educational Quality Implicate Matters Of Public Concern

Federal Circuit Courts of Appeal have recognized that expressions amounting to a criticism of the quality of education at a public school implicate matters of significant public concern. Specifically, "[a]n expression relating to any matter of political, social or any other concern to the community is protected." *Lytle v. Wondrash*, 182 F.3d 1083, 1088 (9th Cir. 1999)

---

[4]  *See* Section II, *supra.*

[5]  *See* PSS's Memorandum In Support of its Motion at 6-9 (to which Mr. Brewer joins).

[6]  *Id.*

[7]  *Id* at 6.

(holding that a school district's "education program was within the community's concerns, so [the teacher's] speech criticizing the program constituted protected speech"). In *Lytle*, the teacher in question had previously sued for wrongful transfer and discipline in retaliation for her criticism of a school education policy. *Id* at 1087.

Likewise, when a teacher's "speech directly affects the public's perception of the quality of education in a given academic system [they] find their speech protected." *Maples v. Martin*, 858 F.2d 1546, 1553 (11th Cir. 1988) (finding that, very similarly to the purpose of the Letter here, that "[a]t least part of the motivation for [the disputed speech] was to alert both the administration and other interested parties of the problems within the academic environment"). Furthermore, even a document that "touch[es] upon matters of public concern in only a most limited sense" will still receive protection under the First Amendment. *Connick v. Myers*, 461 U.S. 138, 154 (1983) (holding that even one question out of fourteen on a circulated questionnaire that related to a public concern was enough to bring the entire document under constitutional protection).

### b.  Defendants Ignore Portions Of The Letter Critical Of Education At Hopwood

Here, several portions of the Letter criticize the quality of education at Hopwood. First, the authors of the Letter list three "main areas" of which they are concerned with Ms. Nepaial.[8] The first of which is her "incapabilities (sic) of being the vice principal (sic) for curriculum an counseling department."[9]  Ms. Nepaial's own description of her position demonstrates that her function was one that implicated issues of great interest to the community.  She said:

---

[8] *See* a copy of the Letter of Concern attached hereto as "Exhibit B."

[9] *Id.*

I was responsible for helping the teachers with everything they needed from curriculum to strategies for teaching, to making sure things were safe in the classroom and that the curriculum for the public school system was being taught.[10]

And that the focus of her job was "[c]urriculum, as it relates to teachers, students, parents, the community."[11]   Criticism of a person with such as self-admitted impact on the community implicates matters of public concern.

Other portions of the Letter that criticize the quality of education at Hopwood under Ms. Nepaial include:

> -her failure to "provide consultation and training for teachers and counselors;"[12]

> -her dissemination of "confidential information like teacher resumes and student grades which should not be viewed by the public, but by authorized personnel like her;"[13]

> -her allowing "surveys to be done at Hopwood without the approval of PSS...allowed by her for an employee/friend as part of [that employee/friend's] master's degree (sic) work;"[14]

> -the effect that the adoption of "three kinds of school schedules since the school opened" and the deleterious effect that it had upon students with "special needs;"[15]

> -and her past practices that resulted in the "issuance of textbooks [taking] a month and a half before the kids received their textbooks."[16]

---

[10] *See* excerpts of Beth Napaial Deposition attached hereto as "Exhibit C."

[11] *Id.*

[12]   Exhibit B.

[13]   *Id.* Plaintiff raised this concern individually as well as with the group.

[14]   *Id.*

[15]   *Id* at 2.

[16]   *Id* at 2.

The Letter criticized the ability of one of the two second-tier administrators at Hopwood to perform her job and enable the teachers at Hopwood to perform theirs. The Letter criticizes the educational quality at Hopwood under Ms. Nepaial. The Letter, therefore, implicates matters of public concern.

### c. Furthermore, Education At Hopwood Potentially Affected Every Child In Saipan's Public School System

On October 6, 2004 (the date of the Letter), Hopwood Junior High School was the only junior high school on Saipan. Therefore, at that time, each and every child who was to progress from kindergarten through high school graduation *had to attend Hopwood.* It is difficult to imagine how criticism of the quality of education of each and every student in the CNMI Public School System was receiving could not be a matter of the gravest public concern.

### d. The Interest Taken In The "Letter Of Concern" By The Local Community Demonstrates The Public Nature Of The Concerns Raised Therein

Additionally, and perhaps the most telling evidence that the Letter implicated public concerns, is the focused and extensive media coverage of the events surrounding it. Articles reporting the delivery of the Letter, PSS's reaction to the Letter and the final disposition of the Letter's concerns are attached for the Court's review as Exhibit "I." These are only a sampling of the attention that the Letter received in the print media and do not reflect the coverage that our local broadcast news (both television and radio) gave to this story. Such media attention indicates that there was a market for this news because the public was concerned about it. In other words, the concerns raised in the Letter were "public concerns."

As demonstrated, it cannot be held that as a matter of law, that this Letter did not involve matters of grave public concern, and summary judgment would therefore be improper on this issue.

### 3. If The "Letter Of Concern" Was So Disruptive, Where Are The Other Terminations?

The next step Defendants take is to allege that if Ms. Black did engage in expression, that did involve matters of public concern, they were justified in their actions because the expression in question fails the *Pickering* balancing test in that it was unduly disruptive.[17] To prove this, they offer the declaration of Ms. Nepaial that spins a tale of woe as to the extra work that PSS staff and administrators had to undertake because of the Letter.[18]  The conclusion that Defendants reach is that "even if the letter represents protected speech, the disruption caused at the school outweighs Plaintiff's right to exercise" her First Amendment Rights.[19]

So then, if we are to believe that the Letter so "significantly disrupted the working environment"[20] at Hopwood Junior High School, as to remove it from protection under the First Amendment, *why then, did PSS administration not fire, non-renew or censure the other teachers involved?* PSS admits in their brief that "[i]t was well known that a school counselor, Nariani Sikyang, was the leader of the group with the concerns about Ms. Nepaial" and that

---

[17]  PSS's Memorandum at 10.
[18]  *Id* at 11.
[19]  *Id* at 11.
[20]  *Id* at 11.

"Ms. Sikyang continues to work at [Hopwood] to this day."[21]  If this argument is credible, surely the ringleader of such an event would have been fired.  If this event were of such a magnitude, surely all the teachers involved would receive some sort of censure.

A reasonable finder of fact could consider the evidence in its entirety and determine that the relative "disruptiveness" is a contrived pretext used only to retroactively satisfy *Pickering*. Therefore, summary judgment is improper.

### 4.    What PSS Would Or Would Not Have Done Is Not Proper For Summary Judgment

Finally, Defendants ask this Court to summarily adjudicate in their favor Plaintiff's First Cause of Action because Hopwood "would not have renewed Plaintiff's employment contract" regardless of her participation with the Letter.  There not only exists genuine issues as to this question, but this question is one reserved specifically for the jury.

### a.    This Is A Question Strictly For The Jury

If a defendant in a case like ours is able to convince a finder of fact by a preponderance of evidence that the negative employment action would have been taken regardless of any First Amendment expression, that defendant may triumph.  *See Settlegoode v. Portland Public Schools*, 371 F.3d 503, 510-512 (C.A.9 2004) (where a magistrate judge's grant of a judgment as a matter of law usurping a jury verdict was overturned).  In *Settlegoode* the 9th Circuit recognized the vital role that a jury plays in the weighing of evidence as to whether or not a school district would take a certain action regardless of protected conduct or not.  *Id.*  The

---

[21]  *Id* at 12.  Plaintiff believes the evidence will show that Ms. Sikyang retired and left Hopwood in 2005 and was only "brought back" because of this lawsuit.

parties in that case were permitted to present all of their evidence before a trier of fact and have

that evidence weighed appropriately. *Id.* Additionally, Dr. Edward Dragen, Plaintiff's liability

expert has examined all of the "justifications" for Plaintiff's nonrenewal and suspects that they

are in fact pretexts designed simply to avoid liability for a wrongful discharge.[22] A reasonable

finder of fact could believe Plaintiff and her expert and find that her protected activity was, in

fact, a substantial reason for her non-renewal.


Here, the proximity of the notice of non-renewal, the testimony of Plaintiff as to certain

things she was told and the opinion of the expert witness could all allow a reasonable finder of

fact to determine that her protected activity was a substantial reason for her non-renewal.

Therefore summary judgment is improper and should not be granted as to this issue.


### b.      This Argument Cannot Be Reconciled With Defendants' Allegation That The Letter Was Unduly Disruptive

Previously in their brief, Defendants decry the Letter as an inordinately disruptive

expression that would justify termination of Plaintiff. *See* above. With their next breath, they

say that "there is no evidence that Plaintiff or any other teacher suffered employment

consequences for the exercise of [constitutional] rights."[23] Which one is it? Was the letter so

disruptive as to justify non-renewal, termination and/or censure? Or, was the Letter of such a

character that Hopwood would gladly continue the employment of its ringleader? Apparently

there is a dispute as to this material fact even in Defendants' own minds.

---

[22] *See* Dragen Report attached hereto as Exhibit "D."

[23]    PSS's Memorandum at 12.

A reasonable finder of fact could easily see through all of the excuses and find that Defendants are looking for any pretext available so as to avoid liability for a constitutionally impermissible non-renewal. Therefore, there exists genuine issues as to what course PSS would have taken and summary judgment is improper as to this issue as well.

## B.    Genuine Issues Of Material Fact Exist As To Plaintiff's Second Cause Of Action

Plaintiff's Second Cause of Action alleges damages arising out of the tortious discharge of Plaintiff in violation of clearly established public policy within the CNMI.    Defendants urge this Court to adopt California state law despite previous interpretations of CNMI law to the contrary and the vast differences between the CNMI and California that make such an adoption ill-advised. Even if this Court should decide to apply California law, genuine issues as to several material facts preclude summary judgment against Plaintiff as to this Second Cause of Action.

### 1.    CNMI Law Equates Non-Renewal With Termination

Defendants urge the adoption of California case law as controlling within the CNMI in order to achieve summary judgment because, as they say, non-renewal of a contract is distinct from termination. This Court, however, has addressed this question, in the past. In *Equal Employment Opportunity Commission v. Sako Corp.*, Civil Action # 04-0025, this Court granted default judgment in favor of former Sako employees "when their annual employment contract was not renewed solely because of their national origin."[24]    There, this Court considered, and recognized that the non-renewal of a contract worker on Saipan is tantamount to termination.

---

[24]    Memorandum of Points and Authorities In Support of Motion for Default Judgment at 3.

### 2. In Any Event, The CNMI's Unique Environment Demands That Non-Renewal Equal Termination

As this Court has recognized in EEOC cases (*see* above), in the CNMI a non-renewal of a contract is tantamount to termination. The majority of persons employed within the CNMI are on fixed-term contracts that are non-renewable at the discretion of their employer. If Defendants' position were adopted, an employer in the CNMI could simply decided to "non-renew" employees for any reason violative of public policy and get off scot-free. For instance, an employer could non-renew race, gender, political affiliation, familial relation, pregnancy or age (all in violation of established public policy). Here, where the majority workers are on fixed term contract, for this tort to have any meaning, non-renewal *must* equal termination.

### C.   *Genuine Issues Of Material Fact Exist As To Plaintiff's Third Cause Of Action.*

Plaintiff's Third Cause of Action alleges violations of her civil rights arising under the CNMI Constitution. Defendants urge this Court to grant summary judgment because, they contend, Plaintiff had no continued employment interest and did not have any liberty interest implicated by her discharge. However, genuine issues as to several material facts preclude summary judgment against Plaintiff as to this Cause of Action.

### 1.   A Finder Of Fact Could Conclude Plaintiff Had An Expectation Of Continued Employment

Defendants go to great lengths to detail how the terms of Plaintiff's contracts and the terms of PSS regulations demonstrate that she had no interest in continued employment with

PSS past the terms of her one-year contract. This is facially correct.[25]  However, the reality is that PSS is and was desperate for teachers. As a result of the retirement benefit that was given in late 2005, teachers left PSS in droves.  PSS is in great need of teachers who have passed the PRAXIS tests.  Plaintiff has passed the PRAXIS tests.[26]  Presumably, PSS would desire to hire and retain teachers with Masters Degrees.  Plaintiff was one of only a few teachers (17%) who have Masters Degrees.[27]  The practice at PSS was to retain teachers, and in-fact, according to statistics provided by PSS, classroom teachers could expect better than a 99% chance of renewal of their contracts over the last ten years.[28]

The question for this Court now is, is there evidence that would support a verdict that Plaintiff had a reasonable expectation to a renewal of her contract?  Teachers with positive appraisals were normally renewed.  Plaintiff would have had a positive appraisal but for Mr. Brewer's retaliation.  Statistics from PSS show that teachers are normally renewed better than 99% of the time.  Therefore, since there is evidence this claim should go to the jury. Defendants' motion should be denied.

### 2.  Plaintiff's Liberty Interests Were Implicated By Defendants Actions After Her Non-Renewal

In an attempt to forestall this argument, Defendants rely upon *Board of Regents v. Roth*, 408 U.S. 573 (1972).  While Defendants' contention that *Roth* is controlling in this situation

---

[25]  Plaintiff does not concede, however, that this in any way effects her contention that non-renewal equals termination under CNMI law for the purposes of wrongful discharge in violation of public policy. *See* section B, *supra.*

[26]  Exhibit "A" at para. 9.

[27]  Exhibit "A" at para. 10 and Declaration of Counsel attached hereto as Exhibit "E" at para. 4.

[28] Exhibit "E" at para 3.

1  may be correct, they again ignore salient facts in this case that result in a very different

2  application of that case law to our dispute.

3

4

5    a.    ***Roth* Demands Due Process In Certain Circumstances**

6    The Supreme Court held in *Roth* that "to be deprived not only of present government

7  employment but of future opportunity for it certainly is no small injury."  *Roth* at 574.  There it

8  intimated that if a government entity took steps "to bar the [former employee] from all other

9  public employment in state universities" that this would implicate due process and demand that

10  the former employee have a full hearing on the matter.  *Id.*

11

12

13    b.    **Defendants Attempted To Blacklist Plaintiff From Teaching In The CNMI**

14    The *Roth* circumstances that would implicate a person's liberty interest in being able to

15  find gainful employment are especially applicable here.  According to PSS, it is their policy to

16  allow each individual principal to make their own decisions regarding whom they hire and fire

17  for teaching positions.  Relying, in part, on this general policy, Plaintiff attempted to secure a

18  teaching position at other schools within the PSS system.[29]  Principals at several schools

19

20  indicated a willingness to hire Plaintiff as a classroom teacher and assured her of a position as

21  soon as PSS Human resources were notified.[30]  These same principals, however, upon

22  contacting PSS Human resources, suddenly, reneged on their offer of employment with no

23  explanation as to why.[31]

24

25

26

27  [29]  Exhibit "A" at para. 8.

28  [30]  *Id.* at para. 8.

    [31]  *Id.* at para. 8.

Furthermore, when Plaintiff secured a position at a private school, that school's principal, Mr. Roland Brown ("Mr. Brown") was contacted and "warned" that he should not renew Plaintiff's contract because of "problems" with Plaintiff at Hopwood that stemmed from her non-renewal and the subsequent grievance process.[32]    Mr. Brown understood this information to have been disseminated by Hopwood staff and administration.[33]    Furthermore, Mr. Brown was contacted and informed that Plaintiff currently had a warrant issued for her arrest and told that he should terminate her immediately.[34]

Furthermore, in an attempt to gather more ammunition for the blacklisting of Plaintiff, Mr. Brewer contacted the Governor's Office.[35]    Mr. Brewer singled out the Plaintiff and asked about her compliance with a Grant Program.[36] He expressed frustration that the Grant was hers and not Hopwood's (and under his control as principal).[37]    He never checked up on any other teachers at Hopwood who also received the same Grant.[38]    A reasonable jury could see this for what it was -- an attempt to justify his wrongful actions and have further ammunition to prevent Plaintiff from working at PSS or anywhere else.

Taken together in the light most favorable to the Plaintiff, the aforementioned facts could lead a reasonable jury to determine that not only did Defendants decline to renew Plaintiff's employment contract, but they also took concerted steps to ensure that Plaintiff

---

[32]  Declaration of Roland Brown attached hereto as Exhibit "F" at para. 3.

[33]  *Id.* at para. 3.

[34]  *Id.* at para. 4.

[35]  Declaration of Robert J. Schwalbach attached hereto as Exhibit "G" at para. 3-4

[36]  *Id.* at para. 4-5.

[37]  *Id.* at para. 6.

[38]  *Id.* at para. 6.

could not work at any public or private school within the CNMI. A reasonable finder of fact could determine that these actions, unlike the actions taken by the Board of Regents in *Roth* could very well so stigmatize Plaintiff as to implicate her liberty interests and demand due process under the law. Genuine issues of material fact then exist so that summary judgment as to Plaintiff's Third Cause of Action is improper.


### 3.    Plaintiff's Grievance Hearing Did Not Contemplate This "Blacklisting"

Furthermore, Defendants argue that *even if* some sort of due process right has been implicated with regard to Plaintiff that she received and such process due during her grievance hearing before the Board of Education.[39] This procedure may have allowed for administrative review of "the letters of concern [in Plaintiff's file], the formal reprimands, the performance appraisal and the non-renewal of Plaintiff's teaching contract" as Defendants contend.[40]


This proceeding did not, however, in any way shape or form address the subsequent steps taken by Defendants to prevent Plaintiff from ever securing another job within the Public School system. In fact, the Board of Education specifically held that their decision "does not preclude the hiring of Lisa S. Black for another position in PSS through the standard hiring process."[41] How then could Plaintiff have received any process due because of Defendants' blacklisting attempts? Since the only hearing that Plaintiff has received never contemplated the damage to Plaintiff's liberty interest in being able to seek gainful employment, a reasonable finder of fact could determine that her due process rights were violated. Summary judgment should, therefore, be denied as to this issue.

---

[39]   PSS's Memorandum at 19.

[40]   *Id* at 20.

[41]   Final Decision of Board of Education at 14.

### 4.    Plaintiff's Privacy Interests Were Implicated By This "Blacklisting"

Finally, the Defendants move for summary judgment as to Plaintiff's complaint that her right to privacy under the CNMI Constitution was violated. Defendants quote Article 1 § 10 of the CNMI Constitution, selectively present a portion of the Analysis of the Constitution of the CNMI[42] and conclusively state that CNMI case law has only focused this constitutional protection upon searches and seizures and confidentiality of court records.[43] In sum, a reader is left with the impression that the framers of the CNMI Constitution meant the protection of privacy to be a very limited right with the presumption in favor of the community's duty to promote health and safety. This is a highly misleading interpretation.

### a.    Our Right To Privacy Under The CNMI Constitution Is Very Broad

The Framers of the CNMI Constitution included amongst the general "right to privacy" several specific examples that could implicate such "blacklisting" as constitutionally prohibited activity. The right to privacy in the CNMI:

> -[includes the right] that each individual person has a zone of privacy that should be free from government . . . intrusion;
>
> -[allows that e]ach person has a right to be let alone;
>
> -protects a person's thoughts, ideas and beliefs from …attempted coercion by the government;
>
> -allows a person to associate with whomever the individual chooses;
>
> -[and] prevents public disclosure of private facts relating to an individual.

---

[42]   PSS' Memorandum at 20-21.

[43]   PSS's Memorandum at 21.  Mr. Brewer individually lists common law privacy torts and distinguishes this case, but fails to mention why common law privacy torts have any application to a direct action under the CNMI Constitution.

Analysis of the CNMI Constitution at 24-25. The Framer's intended a much broader scope to the CNMI's right to privacy than just the focus "on unreasonable search and seizure [and] confidentiality of court records" as Defendants would suggest.[44]    Defendants' position otherwise is either the result of unintentional legal myopia or an intentional attempt to mislead this Court.

### b.    There Is No Presumption Against Individual Privacy

More egregious than their narrow interpretation of the right to individual privacy under the CNMI Constitution, is Defendants' insinuation (again by selectively quoting the Framers) that there exists a presumption in favor of communal compromise.[45]  This could not be further from the truth.  The Defendants get it right to a point that there is a "necessary balance between the individual's right to privacy and the public's right to protect and promote the health and safety of the community," but they ignore the next line where the Framers unequivocally state that *the CNMI Constitution "sets the balance in favor of the individual by making the individual's right to privacy a constitutionally protected fundamental right."*[46]  There are no penumbras.  There is no presumption in favor of the community.  There is a broad fundamental right to privacy that could easily be implicated by the attempted "blacklisting" of a person from continued employment as an educator within the CNMI.

With the facts presented thus far, a reasonable finder of fact could conclude that Plaintiff's fundamental right to privacy under the CNMI Constitution has been violated and therefore, summary judgment would be improper as to this cause of action.

---

[44]  PSS's Memorandum at 21.

[45]  *Id* at 20.

[46]  Analysis at 25.

**D.    Genuine Issues Of Material Fact Exist As To Plaintiff's Fourth Cause Of Action**

Plaintiff's Fourth Cause of Action alleges damages arising from the tortious intentional infliction of emotional distress ("IIED") upon her by the Defendants.  Defendants argue that their conduct was not so outrageous, and Plaintiff's suffering not so severe, so as to permit this cause of action to go to the jury.  Defendants conveniently ignore that they did not want to just fail to renew Plaintiff's contract, they also harassed her, initiated an investigation against her, and attempted to "blacklist" her in the small educational community of the Commonwealth.  This conduct does justify this matter being submitted to the jury.


**1.    Reasonable Jury Could Find Defendants' Actions Outrageous**

Defendants begin by asserting that Plaintiff has failed to plead any specific facts that show that their actions taken with regard to Plaintiff are sufficiently outrageous as a matter of law so as to support a claim for IIED.[47]  Defendants cite to numerous cases that stand for the proposition that generally speaking, IIED claims are not proper for employment termination cases.[48]  While this may be true with regard to the run-of-the-mill termination of an employee, when an employer wrongfully terminates and employee, attempts to prevent that former employee from securing future employment and actively and wrongfully attempts to gather pretextual excuses for the wrongful discharge, an IIED claim may be proper.


Defendants' actions went far beyond simply deciding to not renew Plaintiff's contract and allowing her to go on her way.  As demonstrated above, Plaintiff has been able to offer

---

[47] PSS's Memorandum at 21-23 and Mr. Brewer's Memorandum at 10-11.

[48] *Id.*

evidence indicating a concerted effort on the part of Defendants to ensure that Plaintiff was unable to continue her vocation as a teacher either at PSS or any private school in the CNMI. This type of "blacklisting" has been held to support presentation to a jury of a cause of action for IIED. *See Valenza v. Emmelle Coutier, Inc. et al.*, 227 A.D.2d 133 (N.Y. App. 1st Div. 1996) (holding that "repeated and intentionally false post termination representations to … prospective employers… evinc[ed] an intent on defendants' part to ruin plaintiff's chances at future employment…was atrocious and intolerable and should not be countenanced in civilized society"). With the evidence presented above, a reasonable finder of fact could conclude that the Defendants had "evinc[ed] an intent…to ruin" Plaintiff's "chances at future employment." *Id.* Therefore, this cause of action should be submitted to the jury for a factual determination and not summarily adjudicated.

### 2.    Plaintiff Has Suffered Severe Distress Because Of Defendants' Actions

Defendants also pray for summary judgment because they contend that Plaintiff has not sufficiently plead that she has suffered from any "severe" emotional distress.[49]    Both Defendants seized upon an answer to an interrogatory by Plaintiff stating that she has experienced "the typical sort" of stress that one would experience in her situation.[50] Neither of the Defendants, however, explains nor offers any case law explaining why "severe" and "the typical sort" are mutually exclusive terms. They are not.

Because of the loss of her job at Hopwood, and Defendants' efforts to ensure she did not teach anywhere else within the CNMI, Plaintiff:

---

[49]    PSS's Memorandum at 24 and Mr. Brewer's Memorandum at 11.

[50]    *Id.*

21

-lost her home;

-suffered irreparable damage to her professional reputation;

-was unable to afford medication;

-was unable to sleep;

-suffered a worsening of a disfiguring medical condition;

-had her private life involving childhood molestation publicly exposed; and

-was forced to leave the CNMI in search of work as a teacher.[51]

Therefore, while Plaintiff may have characterized her suffering as "typical" of a person in her situation, the point is that the situation into which she was placed was one of severe distress. A reasonable finder of fact could conclude that anyone (typical or not) subjected to the type of stress Plaintiff was subjected to, could characterize that stress as "severe." Therefore, summary judgment as to the issue of whether or not Plaintiff suffered from severe emotional distress should be denied and this cause of actions submitted to a jury.

**E.      Genuine Issues Of Material Fact Exist As To Plaintiff's Fifth Cause Of Action**

Plaintiff's Fifth Cause of Action alleges damages arising from the tortious negligent infliction of emotional distress ("NIED") upon her by the Defendants.      Defendants mischaracterize the holding in *Lee Bok Yurl v. Young Byung*, 99-0085 (N.M.I. Super.Ct. 2000) as determining that the CNMI would never award recovery for the tort of negligent infliction of emotional distress.[52]   What Judge Lizama says is that the Restatement of Torts (Second):[53]

---

[51]   Exhibit "A" at para. 7.

[52]   PSS's Memorandum at 25 (Defendants also contend that Ms. Black did not suffer from any traumatic event. Plaintiff has, however, demonstrated already how a reasonable finder of fact could determine that her discharge and the Defendants' following actions could constitute an extremely traumatic experience. *See* section C *supra*).

[53] The CNMI's common-law under 7 CMC §3401.

only allows for recovery of damages resulting from unintended emotional distress in situations where the actor's negligent conduct results in bodily harm or the risk of bodily harm.

(§313).  The specific requirements to sustain a cause of action for NIED in the CNMI are unsettled.  However, even if Judge Lizama's Superior Court ruling is controlling, Plaintiff *can* demonstrate physical harm arising from the mental disturbance. *See* Expert Report of Dr. Larry Hocog ("Dr. Hocog").  Summary judgment is precluded.

Defendants claim allege Plaintiff did not suffer any physical harm from their negligent actions.[54]  Defendants not only ignore the opinion of, Dr. Hocog ("Dr. Hocog").  Defendants' also ignore Plaintiff's deposition testimony that the stress caused her vitiligo to spread.[55]  Dr. Hocog then ascribes a worsening of Plaintiff's skin condition to the severe stress that she has experienced as a result of the actions of Defendants.[56]  Therefore, a reasonable jury could credit Plaintiff's testimony and agree with Dr. Hocog's findings and determine that Plaintiff did indeed suffer a physical harm as a result of the negligent actions of Defendants.  Therefore, summary judgment as to this cause of action should be denied.

**F.    Genuine Issues Of Material Fact Exist As To Plaintiff's Sixth Cause Of Action**

Plaintiff's Fifth Cause of Action alleges damages arising from the breach of several employment contracts Plaintiff entered into with Defendant PSS.    PSS moves for summary judgment on this cause of action for two reasons.

---

[54]  PSS's Memorandum at 25.

[55]  Dr. Hocog's Report attached hereto as Exhibit "H."

[56]  *Id.*

First, they argue that Plaintiff waived enforcement of the contractual rights she sues under.[57] This argument however raises issues of fact as to what was said to whom and when and questions of sufficiency of evidence; all inappropriate for summary judgment. Again, what was said to whom and when, are questions of fact and preclude summary judgment on this issue.

Secondly, Defendants contend that none of Plaintiff's contractual claims survive the CNMI statute of limitations. While this may be true as to some of Plaintiff's contracts, more recent contracts, a reasonable finder of fact could hold, contain "off island hire" provisions. These more recent contracts fall within the statute of limitations. Additionally, the breaches were of a continuing nature and with each violation the time to file was renewed. A reasonable jury could find that Plaintiff's more recent contracts have been breached and/or that a continuing breach of contract existed with each renewal. In any event, genuine issues of fact remain, making summary judgment improper.

## IV. CONCLUSION

For all of the above stated reasons, Defendants Motion for Summary Judgment should be denied.

---

[57] PSS's Memorandum at 26-29 and Mr. Brewer's at 13. (Since this cause of action was only pled as against PSS, Mr. Brewer has no standing to move for summary judgment and his argument and authority on this matter should be stricken.

Respectfully submitted this 30th day of November, 2006.


O'CONNOR BERMAN DOTTS & BANES
Attorneys for Plaintiff Lisa Black



By: _____/s/_____
GEORGE L. HASSELBACK (F0325)




K:\3200\3221-01 Lisa Black\PL\draft\OmnibusOppMSJ-061130-jom.doc