IN THE UNITED STATES DISTRICT COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LISA S. BLACK, ) | CIVIL ACTION NO. 05-0038 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | DECLARATION OF LISA BLACK |
| JIM BREWER, individually and in his ) | |
| official capacity as Acting Principal for ) | |
| Hopwood Junior High School, ) | |
| COMMONWEALTH OF THE NORTHERN ) | |
| MARIANA ISLANDS PUBLIC SCHOOL ) | |
| SYSTEM, and JOHN AND/OR JANE DOE, ) | |
| ) | |
| Defendants. ) | |

I, Lisa S. Black, declare under the penalty of perjury according to the laws of the Commonwealth of the Northern Mariana Islands and the United States of America, that the following is true and based upon my personal knowledge, except where noted otherwise, and if called to testify, I could do so competently:

1. While employed as a classroom teacher at Hopwood Junior High School ("Hopwood"), I became aware of a group of teachers and staff who were growing increasingly dissatisfied and troubled by the administration of Hopwood generally, and the performance and habits of then Acting Vice Principal Beth Nepaial specifically. I too shared some of the concerns that these teachers and staff had with the administration of Hopwood generally and Ms. Nepaial specifically.

**Exhibit "A"**

2. I spoke to several of the teachers and staff regarding these concerns, expressed my own opinions to them regarding these concerns and associated myself with them on numerous occasions. During this association, we grew increasingly concerned that the problems in administration at Hopwood would have a deleterious effect upon the education of Hopwood's students.

3. Over the course of this association, I learned that some of the teachers and staff at Hopwood were planning to draft a "Letter of Concern" ("the Letter") outlining their concerns. I learned of the Letter from Ms. Sikyang. I also learned that they planned to deliver this letter to the CNMI Board of Education because they felt, as did I, that these concerns would not be sufficiently addressed by the then Acting Principal of Hopwood, Mr. Jim Brewer, because of his personal affinity for Ms. Nepaial.

4. I did not write the Letter, but I did consult with Ms. Sikyang as to its form and content prior to its delivery to the Board of Education. I did not sign the letter of concern because I did not agree with all of its contents, but I did agree with some of the concerns that it raised.

5. After the Letter was delivered to the Board of Education, meetings were held to address the concerns it raised. I attempted to attend some of these meetings so that I could express those concerns that shared, but was denied admission to these meetings by Mr. Jim Brewer. I was able to attend some mediation sessions regarding the concerns raised in the Letter. Mr. Brewer was aware of my attempts to attend some meetings and my attendance at others. At

those meetings that I was able to attend, I expressed my concern with the administration of education at Hopwood.

6. As an example, John Joyner attempted to attend one meeting in the hope he could act as a mediator. Both Dr. Joyner and I were refused entry to the meeting by Mr. Brewer.

7. Because of the loss of my teaching position at Hopwood and my prevention from securing another teaching position with another school within PSS, I lost my entire income and was forced to seek alternate employment. Because of this loss in income and employment prospects, I suffered from a great deal of emotional stress. Among other things, I was unable to afford medication (because of my loss of health-insurance coverage), my patterns of sleep were affected (I began to suffer from repeated bouts on insomnia), I was unable to continue to pay rent and was forced to leave my home and live in the homes of friends by their charity and a disfiguring skin condition from which I suffer grew noticeably worse.

8. During my attempts to secure another position with PSS as a classroom teacher, I was initially met with great enthusiasm by several principals who indicated an immediate willingness to hire me because of my qualifications and their personal and professional knowledge of me. However, upon speaking to PSS Human Resources, they stopped returning my calls and emails. My professional reputation as a classroom teacher on Saipan had been irreparably tarnished within the Public School System. Eventually, I was forced to leave Saipan to seek employment as a schoolteacher elsewhere.

9.     I have passed both the PRAXIS I and PRAXIS II tests.

10.     I have a Masters of Arts Degree in Curriculum and Teaching.

Signed electronically, by my permission, on Saipan, Commonwealth of the Northern Mariana Islands, this 30th day of November, 2006.

                                                                       _____/s/_____
                                                                         Lisa S. Black