Ms. Heather L. Kennedy F0246
Ms. Karen M. Klaver F0241
C.N.M.I. Public School System
P.O. Box 1370 CK
Saipan, MP  96950
Telephone: (670) 237-3046
Fax:(670) 664-3713
Attorneys for Defendant CNMI Public School System

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **LISA S. BLACK** | ) Civil Case No. 05-0038 ) ) |
| Plaintiff | ) **REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **JIM BREWER, individually and in his official capacity as Acting Principal of Hopwood Junior High School, CNMI Public School System and JOHN and/or JANE DOE,** | Date: December 14, 2006 Time: 9:00 a.m. Judge: Munson |
| Defendants. | |

### I.  Introduction

Defendant, the CNMI Public School System, through counsel submits the Reply to Plaintiff's Combined Opposition to Defendants' Motions for Summary Judgment.  Whether Plaintiff exercised any free speech right and, if so, whether the free speech is a matter of public concern is a question of law.  *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S. Ct 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983), *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977).

### II.  Plaintiff Did Not Exercise Any Speech

In the Opposition, Plaintiff claims that she actively participated in the "letter of concern". This claim is contrary to her complaint (Plaintiff's Complaint p. 4. § 12). Plaintiff now claims ownership to the Letter of Concern to manufacture a First Amendment claim. However, Plaintiff cannot create a genuine issue of material fact by making statements in conflict with the allegations in her complaint. The Court should disregard Plaintiff's attempt to rehabilitate the not actionable perceived free speech claim.

In any event, the allegations as now presented by Plaintiff do not amount to an exercise of free speech. Simply reading the Letter of Concern does not amount to exercising speech. None of the press releases produced by Plaintiff identify Lisa Black as a speaker or even a participant. Her attempt to attend a private work meeting, not even a public meeting, with Mr. Kenty and the participants in the Letter of Concern does not amount to free speech.

### III.  The Speech, If Any, Did Not Address a Matter of Public Concern

Regardless of her baseless claim to perceived free speech, the Letter of Concern does not implicate a matter of public concern. To determine whether Plaintiff's speech involved a matter of public concern, the court must examine the content, form and context of the statement as revealed by the whole record. *Connick*, 461 U.S. at 147-48, 103 S. Ct. 1684. The U.S. Supreme Court has rejected the premise that all issues relating to public education are intrinsically matters of vital public concern. Such an argument is overbroad: to presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case. *Connick v. Myers,* 461 U.S. at 149, 103 S. Ct at 1691.

In *Connick v. Myers*, the U.S. Supreme Court clarified what is speech related to private matters:

> We hold that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 1690.

Thus "internal personnel disputes or complaints about an employer's performance" do not touch upon a matter of public concern and therefore fall outside the scope of First Amendment protected speech. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The entire contents of the Letter of Concern focus on internal personnel disputes with a school administrator.

Notably absent from the Opposition is case law supporting Plaintiff's various claims. The primary case relied on by Plaintiff, *Lytle v. Wondrash,* 182 F.3d 1083 (9th Cir. 1999), to support a free speech claim is easily distinguished- the speech concerned the school's education program.[1] In this case, the Letter raises petty complaints about an administrator and does not criticize the quality of education at the public school, the programs at the school, the performance of the school, or even services to the students. Additionally, the *Lytle* Plaintiff was the actual person who made the speech, not someone attempting to piggyback on the speech of another employee. In *Kirkland v. Northside Independent School District*, 890 F. 2d 794 (5th Cir. 1989), a teacher claimed that his First Amendment rights had been violated due to his termination for failure to use the approved reading list and substituting his own reading list without permission. The court concluded that if the nature of the speech is purely private, such as a dispute over one's job performance, a teacher enjoys no First Amendment protection as to that speech. *Kirkland*, 890

---

[1] Lytle's original lawsuit alleged (and the jury found) that she was transferred and disciplined for publicly criticizing a school education program. *Lytle,* 182 F.3d 1088.

F.2d 794, 799.  Like Plaintiff, the teacher in *Kirkland,* raised the free speech issue only after school officials decided not to renew the employment contract. The Court concluded the teacher attempted to cloak his substandard job performance in First Amendment protection. *Kirkland* at 800.  Likewise, in this case, Plaintiff is attempting to cloak her repeated insubordination in First Amendment protection.  It is undisputed that Plaintiff received a letter of reprimand on January 11, 2005. Black received another letter of reprimand and a letter of concern on February 14, 2005. Yet, she does not challenge these letters as retaliation for free speech until May 2005, which is the month after she received notice that her contract at HJHS would not be renewed.

    Another case illustrative of speech considered private in the educational setting is *Brown v. Reg'l Sch. Dist. 13,* 328 F.Supp. 2d 289 (D. Conn. 2004). In *Brown*, a non-tenured middle school special education teacher filed suit alleging that the school board's decision not to renew her contract violated constitutional rights.  In granting the defendants' motion for summary judgment, the court held that the school district did not violate the teacher's First Amendment rights, where the teacher's speech related to a dispute with her supervisors regarding her classroom performance and inability to respond to constructive criticism, and her association with her lawyer related solely to that dispute; her speech and association involved only matters of private concern. The school district's decision not to renew the teacher's employment contract was rationally based on her supervisor's well-documented concerns regarding her performance, and therefore did not violate her equal protection rights.  The same is true in this case.  Mr. Brewer recommended that Plaintiff's contract not be renewed after Plaintiff received four reprimand letters for insubordination (two while employed at Koblerville Elementary and two while at HJHS).

Plaintiff relies on media coverage to categorize the letter as a matter of public concern. Yet, not once in a single press release is Black mentioned, quoted or implicated. Not once did Black go to the press regarding the Letter. Even so, media exposure is not the determining factor for a finding of public concern. The determination of whether the letter of concern or Ms. Sikyang's statements to the press address matters of public concern must be based on the content, form, and context of the statement. *Connick*, 461 U.S. at 146, 148, 103 S. Ct. at 1689-91.

In *Kokkinis v. Ivkovich*, 10 F. Supp 2d 995 (U.S. Dist Ct. N.D. Ill.1998) a patrol officer brought suit against the village and police chief under 42 U.S.C. § 1983 asserting a First Amendment retaliation claim. The court found that even when speaking in a televised statement that the plaintiff was speaking as an employee about his personal feelings toward the chief, not in his role as citizen on a matter of public concern. *Kokkinis*, 10 F. Supp at 1001. Just because a statement might be of public "interest" does not make the statement of public "concern." As the Seventh Circuit has stated: "The facts which determine whether a story is newsworthy are hardly coterminous with the factors which determine whether the communication has societal ramifications, and in any event, newspaper [or television] editors cannot decide the question for us." *Kokkinis*, 10 F. Supp2d 995, 1002 (citing *Egger v. Phillips*, 710 F.2d 292, 317 (7th Cir. 1983)(en banc) *cert. denied*, 464 U.S. 918, 104 S. Ct. 284, 78 L.Ed.2d 262 (1983) (overruled for other reasons)).

In *Vukadinovich v. Bartels*, 852 F.2d 1387, 1391 (7th Cir. 1988), a dismissed high school teacher brought suit under 42 U.S.C. § 1983 alleging that the defendants (school board members and others) violated his rights by allegedly dismissing him for statements made to the local paper. The court held the plaintiff could not argue that the mere fact that newspaper contacted

him and published his comments indicates that his statement regards a matter of public concern. *Id.* at 1391. It is important not to equate the public's curiosity about a matter with the matter having societal ramifications. *Id*. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matters have societal ramifications. *Id.*

Plaintiff mischaracterizes the letter of concern as criticizing the educational quality and curriculum at HJHS. But, even if the letter vaguely referred to educational quality for students, it is not enough to become a matter of public concern. In *Rahn v. Drake Center, Inc.* 31 F.3d 407 (6th Cir. 1994) a nurse brought action against a hospital claiming she was discharged in violation of her First Amendment rights because she issued a press release challenging hospital president's proposed spending of money. The court held since matters involving public monies and government efficiency may be raised in connection with virtually any public employment matter, the court must not be used to convert an issue into one of public concern within the structure of *Connick*. *Rahn,* at 412 (citations omitted). The court found that the focus on the employee's discontent was with the new *work* rules, which the plaintiff felt *might* lead to a patient endangerment situation. *Rahn*, at 413 (emphasis in original). This is "nothing more than [an]example [] of the quintessential employee beef: management has acted incompetently." *Rahn* at 413, citing *Barnes v. McDowell*, 848 F.2d at 735. The issues surrounding the HJHS letter of concern are just that, employees complaining about management, which is not a matter of public concern.

The context in which the dispute arose is also significant. *Connick,* at 153, 1693. When employee speech concerning office policy arises from an employment dispute concerning the

very application of that policy to the speaker, additional weight must be given to the supervisor's view that that employee has threatened the authority of the employer to run the office. *Connick*, at 154, 1693. The intention of the letter of concern was not to inform the public about a problem with any educational policy, curriculum, instruction, program or service to students. The author and group speaker (Ms. Sikyang) stated: "The intent of the letter was for the Commissioner of Education to get involved and determine whether Beth Nepaial was a good administrator because of perceived problems with Ms. Nepaial's management of staff and her communication with the staff". Sikyang Dec. Para. 5. Clearly, this intent relates to the employees' private concerns.

As stated in PSS's Motion for Summary Judgment, the Letter of Concern and media exposure disrupted the work environment at HJHS. PSS's Motion for Summary Judgment argues that even if Plaintiff or others were terminated based on the petition that such termination would not have violated the law. The point is that PSS could have terminated employees, such as Ms. Sikyang, for creating the divisive work environments, even though PSS did not.

Finally, Plaintiff is incorrect that education at Hopwood potentially affected every child in Saipan's Public School System. Without any supporting reference, Plaintiff asserts that HJHS was the only Junior High School on Saipan during school year 2004-2005. This is simply false. Cha Cha Ocean View Junior High School located in Kagman opened in August of 2002. Ex. A.

The recent U.S. Supreme Court case of *Garcetti v. Ceballos,* 126 S.Ct. 1951, 1958 (2006) illustrates the trend toward limiting the free speech rights of public employees to matters of public concern when the public employee is speaking in their role as a citizen and not as a public employee carrying out their official duties. *Garcetti* has brought clarity to at least one aspect of

employee speech- public employees making statement pursuant to their official duties do not have a First Amendment right to say or do whatever they please.

**IV.  A Wrongful Discharge Claim Does Not Exist Under CNMI Law**

Plaintiff asks this court to create a wrongful discharge claim in the CNMI based on the "CNMI's Unique Environment".  Plaintiff argues that non-renewal in the CNMI equals termination.  Arguing that non-renewal equals termination is not only ridiculous it is not supported by case law and is not a unique situation to the CNMI.  This is not an Equal Opportunity case, nor is Plaintiff a non-resident contract worker.  Plaintiff is a teacher who had a short-term contract that was recommended not to be renewed.  Plaintiff's reliance on a default judgment is at best misplaced[1].  The Court's default judgment in *EEOC v. Sako* dated April 19, 2005 does not create CNMI law that non-renewal is tantamount to termination.

**V.  Plaintiff Does Not Have Any Due Process Rights.**

As stated in the Motion for Summary Judgment, the law simply does not support that a cause of action based on Plaintiff's expectation that she her contract would be renewed.  In order for a property interest to exist in public employment, a person must have a legitimate claim of entitlement to the position not just a desire or unilateral expectation of it. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972).  A public employee does not have a property interest in employment unless a statute, rule, regulation or contract provides the employee with tenure or permanency in her employment.  *Id.*   "Only civil service employees have a property right to continued employment." *Dyack v. Commonwealth of the Northern*

---

[1] Plaintiff failed to provide proper identifying information, including the date, to allow the court or PSS to locate the reference to Sako.

Page 8

*Mariana Islands,* 317 F.3d 1030, 1034 (9th Cir. 2003). Finally, even if the standard was Plaintiff's expectation of renewal, it is not reasonable for an employee with four letters of reprimand for insubordination who admits to flicking the ears of students and pushing their heads to expect to continue to work for PSS.

As with the wrongful discharge claim, Plaintiff attempts to create new CNMI law regarding blacklisting. Blacklisting is a creature of state law.[1] The Fourteenth Amendment gives the federal court no power to impose upon states their views of what constitutes wise economic or social policy. *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S. Ct. 1153, 1162 (1970). Moreover, the blacklisting alleged by Plaintiff does not meet the standard necessary to establish a violation of a liberty interest. To establish a liberty interest violation, there must be some public disclosure of a stigmatizing reason made in connection with the termination. 408 U.S. at 573, 92 S.Ct. 2701; *Matthews v. Harney County,* 819 F.2d 889, 891 (9th Cir.1987). Plaintiff was not terminated. She received notice that her contract at HJHS would not be renewed. The vague references in the Brown affidavit do not raise a stigmatizing reason or represent public disclosure. Again, the alleged comments to Brown do not even identify Brewer or any PSS representative as the speaker.

**VI. Plaintiff Does Not State Claims for Violation of Privacy or Emotional Distress.**

It appears that Plaintiff relies on the Brown affidavit to show a violation of due process, invasion of privacy and outrageous actions. This affidavit provides no specific factual allegation that Brewer or PSS representatives said anything to Brown about Plaintiff. The affidavit vaguely

asserts "…I was informed by persons other than Ms. Black regarding certain issues she had with the administration of Hopwood." There is no allegation in Brown's affidavit that Brewer or anyone from PSS talked to Brown. Moreover, the affidavit has no allegation that it had any effect on Plaintiff's employment with Northern Marianas Academy. Quite simply, Plaintiff fails to make any specific allegation that demonstrates that Jim Brewer or a representative of PSS invaded Plaintiff's privacy or engaged in outrageous conduct that inflicted emotional distress.

### VII.     Plaintiff's Sixth Cause of Action

Plaintiff's sixth cause of action is beyond the statute of limitations. Any argument that she has a continuing contract when she left in 2002$^2$ and returned in 2004 is without merit.

### VIII.    Conclusion

In the Opposition, Plaintiff has failed to offer specific factual allegations that establish any of her claims. Plaintiff claims the reason for the non-renewal notice from HJHS is that she is implicated with others who spoke out about matters of "public concern". She is trying to interject First Amendment issues into a personnel dispute. The U.S. Supreme Court's ruling in *Garcetti* stops this argument.

Respectfully submitted by:

_____/s/_____
Heather L. Kennedy    F0246
Karen M. Klaver       F0241
Attorneys for the Public School System

---

[1] For example, see Montana, MCA 39-2-803 and Oregon 659.230, 659.990.
[2] PSS's Proposed Findings of Uncontroverted Fact paragraph 16 contains a typo. Plaintiff resigned from PSS in April 2002, not 2004.