F I L E D
Clerk
District Court

JAN - 5 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LISA S. BLACK,<br><br>    Plaintiff,<br><br>vs.<br><br>JIM BREWER, et. al.,<br><br>    Defendants. | Case No. CV-05-0038<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |

**THIS MATTER** came before the court on Thursday, December 14, 2006, for hearing of defendants' motions for summary judgment. *See* Memorandum in Support of Motion for Summary Judgment, No. 66 (Nov. 9, 2006); Memorandum in Support of Defendant Brewer's Motion for Summary Judgment, No. 70 (Nov. 13, 2006). Plaintiff appeared by and through her attorney, George L. Hasselback; and defendant Brewer appeared by and through his attorney, Gregory Baka.[1]

**THE COURT**, having considered the arguments of the parties, **GRANTS** partial summary judgment on claim 1, claim 2, claim 5, claim 6 and part of claim 3.

**I. STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), the court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[S]ummary judgment will not lie if the dispute about a

---

[1] Despite requesting and setting a hearing date, defendant Public School System did not appear.

material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that there is no genuine issue of material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Once the moving party has met this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## II. BACKGROUND

Defendants' motions for summary judgment are based on the following facts with all justifiable inferences drawn in plaintiff's favor:

Plaintiff was initially hired by defendant Commonwealth of the Northern Mariana Islands Public School System ("defendant PSS") at an international schools job fair in 1996. The employment contract included housing allowance compensation. In March 2004, plaintiff began working as a teacher at Hopwood Junior High School ("Hopwood"), which is a school run by PSS.

On October 6, 2004, a "Letter of Concern" regarding Ms. Beth Nepaial, the Vice Principal of Hopwood, was delivered to the administration of PSS and the Commonwealth's Board of Education. Members of the staff and faculty at Hopwood participated in the drafting of the Letter of Concern. Plaintiff, however, was not responsible for drafting, circulating and / or encouraging other parties to sign the Letter of Concern.

Defendant Brewer was tasked with investigating the concerns. During his investigation, defendant Brewer formulated an erroneous belief that plaintiff was responsible for drafting, circulating, and / or encouraging other parties to sign the Letter of Concern. Acting upon this belief, defendant Brewer allegedly began to single out plaintiff by selectively enforcing policies on plaintiff,

2

and intimidating and harassing plaintiff. In addition, despite no change in her performance as a teacher, plaintiff began to receive less favorable teacher evaluations. On April 25, 2005, plaintiff received a notice that her employment contract would not be renewed. Her contract terminated on July 30, 2005.

While defendant Brewer rarely investigated into his teachers compliance with grant requirements, around May 2005, the Governor's Office of Saipan ("the Office") was contacted by defendant Brewer. At that time, defendant Brewer informed the Office that he believed that plaintiff was not complying with the grant requirements and that plaintiff may have "hoodwinked" the government with respect to the grant.

On May 19, 2005, plaintiff filed a formal grievance and complaint against defendant Brewer. The grievance process concerned the letters of concern regarding plaintiff, formal reprimands, performance appraisals, and the non-renewal of plaintiff's teaching contract.

Following the non-renewal of plaintiff's employment contract, defendant Brewer actively interfered with plaintiff's efforts to secure employment at other schools within PSS. Several principals of various schools within PSS indicated an immediate willingness to hire plaintiff because of her qualifications and their personal and professional knowledge of plaintiff. However, the principals were no longer interested in hiring plaintiff after they spoke with the PSS Human Resources personnel. Circumstances also suggest that defendant(s) were involved in an attempt to have plaintiff fired from Northern Marianas Academy, a private school in Saipan.

## II. ANALYSIS

Defendants claim that as a matter of law, there is no genuine issue of material fact as to any of plaintiff's claims. Accordingly, the court will consider each claim.

//
//
//

**A. Claim One: Violation of Right to Free Speech under 42 U.S.C. § 1983**

In her first claim, plaintiff alleges that defendant Brewer retaliated against her in violation of her First Amendment right to free speech by giving her less favorable teacher evaluations, selectively enforcing policies upon plaintiff, and harassing plaintiff. Plaintiff asserts that such action was taken against her by defendant Brewer because defendant Brewer had an erroneous belief that plaintiff was responsible for drafting, circulating, and / or encouraging other parties to sign the "Letter of Concern."

To establish a First Amendment claim against a public employer, plaintiff, as employee, must show that: "(1) [she] engaged in constitutionally protected speech[;] (2) [defendant Brewer] took adverse employment action against [plaintiff;] and (3) [plaintiff's] speech was a 'substantial or motivating' factor in the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006). Plaintiff as an employee engaged in constitutionally protected speech if "[plaintiff] spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006). Plaintiff asserts that her First Amendment right to free speech was violated because defendant Brewer's alleged retaliation was on the erroneous belief that she drafted, circulated, and / or encouraged other parties to sign the Letter of Concern. However, because the right to free speech is personal, "there can be no First Amendment claim when an employee is falsely accused of making statements uttered by someone else." *Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659, 663 (9th Cir. 2000).

Plaintiff rebuts this argument by asserting that plaintiff actively participated in the Letter of Concern. She claims that she "aligned herself with the Letter [of Concern] and associated with those persons who had concerns regarding Ms. Nepaial. Specifically, she assisted and advised persons who drafted and signed the letter." Combined Opposition to Defendants' Motions for Summary Judgment 3, No. 75 (Nov. 30, 2006). However, plaintiff is judicially estopped from claiming that she took part in the Letter of Concern when she denied any connection to the Letter of Concern in the complaint.

Thus, as a matter of law, plaintiff has no cognizable remedy for her claim of violation of her first amendment right to free speech. Accordingly, defendant Brewer's motion for summary

4

judgment on this issue is **GRANTED**.

### B. Claim Two: Wrongful Discharge

Plaintiff asserts in her second claim that the underlying reason why her employment contract was not renewed was because she exercised her First Amendment right to free speech. She further asserts that such non-renewal is tantamount to a discharge because practically all teachers for PSS are employed through term contracts and over 99 % of term contracts are renewed.

As explained above, however, plaintiff did not engage in constitutionally protected speech. Thus, as a matter of law, plaintiff has no cognizable remedy for her claim for wrongful discharge. Accordingly, defendants' motion for summary judgment on this issue is **GRANTED**..

### C. Claim Three: Civil Right Violation Under the Commonwealth Constitution

In her third claim, plaintiff alleges that her right to due process and individual privacy under the Commonwealth Constitution was violated by defendants Brewer and PSS when defendants failed to renew her contract and when defendants attempted to blacklist plaintiff from teaching at any school within PSS.

### I. Due Process Violation For Non-Renewal of Contract

In regards to the non-renewal of plaintiff's contract, it is settled law that an employee hired on a term basis has no property interest under the U.S. Constitution in continued employment beyond that term. Furthermore, because the "due process provision [of the Commonwealth Constitution] affords the same protection as does the due process clause of the U.S. Constitution," plaintiff has no property interest under the Commonwealth Constitution in continued employment beyond the limited term. *Office of Attorney General v. Rivera*, 3 N. Mar. I. 438, 445 n. 3 (1993). Thus, as a matter of law, plaintiff has no cognizable remedy for defendants' decision to not renew her

//

employment contract. Accordingly, defendants' motion for summary judgment on this issue is **GRANTED**.

**2. Due Process / Liberty Interest Violation For Blacklisting**

As to plaintiff's allegation of blacklisting, plaintiff claims that her liberty interest under Article I, section 5, of the Commonwealth Constitution was violated when defendants took actions beyond the non-renewal of her contract. Specifically, she claims that defendants have prevented her from securing other employment as a public school teacher in Saipan. Defendant PSS cites to *Board of Regents v. Roth*, 408 U.S. 564 (1972), for the proposition that the alleged blacklisting does not violate plaintiff's constitutional rights because plaintiff was not terminated. Like plaintiff, Roth was hired for a fixed term and had no tenure rights to continued employment. Accordingly, the U.S. Supreme Court held that Roth's due process rights as expressed in the U.S. Constitution were not infringed by the state's decision not to rehire him after the first academic year. However, the U.S. Supreme Court clearly distinguished the non-renewal of the term employment contract in *Roth* from a non-renewal accompanied by either accusations "that might seriously damage his standing and associations in his community" or "impos[itions of] a stigma or other disability that foreclosed [one's] freedom to take advantage of other employment opportunities." *Id.* at 573. As such, *Roth* is not a barrier to plaintiff's claim that her due process rights have been violated.

Defendant PSS further argues that plaintiff's liberty interest was not violated because there was no disclosure of stigmatizing conduct. However, plaintiff has alleged and has provided supporting affidavits that suggest that such disclosure was made. For example, principals at several public schools indicated a willingness to hire plaintiff as a classroom teacher and assured plaintiff of a position as soon as PSS human resources was notified. However, upon contacting PSS human resources, those principals chose not to make a formal offer of employment without explanation. Thus, a reasonable inference can me made that defendants disclosed stigmatizing conduct.

//

Accordingly, there is a genuine issue of material fact as to whether defendants disclosed stigmatizing conduct.

Defendant PSS also asserts that even if plaintiff's civil rights were implicated, plaintiff was afforded due process administratively through a formal grievance process. This grievance process, however, only concerned the letters of concern, formal reprimands, performance appraisals, and the non-renewal of plaintiff's teaching contract; it did not deal with plaintiff's claim that defendants have actively prevented plaintiff from securing other employment as a public or private school teacher in Saipan. Accordingly, defendants motion for summary judgment on this issue is **DENIED**.

**3. Privacy Interest Violation For Blacklisting**

Plaintiff claims that defendants' attempt to prevent her from working as a school teacher in the Commonwealth implicates her fundamental right to privacy. Plaintiff, however, does not suggest how defendants violated her privacy interest. Thus, as a matter of law, plaintiff has no legal recourse for her claim that her privacy interest was compromised due to the alleged blacklisting by defendants. Accordingly, defendant's motion for summary judgment on this issue is **GRANTED**.

**D. Claim Four: Intentional Infliction of Emotional Distress**

In plaintiff's fourth claim, she alleges that defendants intentionally inflicted emotional distress on her by harassing her, by initiating an investigation against her, and by blacklisting her from any available school teacher position in the Commonwealth. "To maintain a cause of action for the intentional infliction of emotion distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Charfauros v. Bd. of Ed.*, 1998 MP 16 ¶ 62.

Defendant PSS claims that plaintiff has not alleged any outrageous conduct on the part of the defendants. Conduct is outrageous when it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* ¶ 68 (quoting

7

Restatement (Second) Torts § 46 cmt. d. Plaintiff asserts that defendants' efforts to prevent plaintiff from obtaining employment in the Commonwealth as a school teacher is outrageous and should not be tolerated in a civilized society. *See Valenza v. Emmelle Coutier, Inc.*, 641 N.Y.S.2d 305 (1996) (holding that defendant's attempt to ruin plaintiff's chances at future employment is outrageous). In this situation, the extreme and outrageous character of the conduct arises from defendant's alleged abuse of his position as the principal of Hopwood. Here, plaintiff asserts that defendant used his position as the principal and her former employer to ruin plaintiff's chances to gain employment as a school teacher in the Commonwealth. Such action is outrageous and should not be tolerated in a civilized community.

Defendant PSS also claims that any distress that plaintiff may have suffered was not severe. Plaintiff claims she suffered distress due to the loss of her home, the irreparable damage to her professional reputation, her inability to afford medication, her inability to sleep, the worsening of her disfiguring medical condition, and her need to relocate off the island of Saipan to gain employment as a school teacher. In drawing all justifiable inferences in favor of plaintiff, the jury could find that plaintiff suffered severe emotional distress. Accordingly, defendants' motion to dismiss claim four is **DENIED**.

**E. Claim Five: Negligent Infliction of Emotional Distress**

Commonwealth law provides:

> If [defendant] unintentionally causes emotional distress to another, [defendant] is subject to liability to [plaintiff] for resulting illness or bodily harm if [defendant] (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

Restatement (Second) Torts § 313(1); *see* 7 N. Mar. I. Code § 3401 (2004) (In the absence of local law, the Restatement governs.). Here, however, plaintiff fails to suggest how defendants would have known that such emotional distress might cause illness or bodily harm to plaintiff. Specifically,

plaintiff does not indicate that defendants knew that plaintiff's vitiligo would be affected by stress. Thus, as a matter of law, plaintiff has no legal recourse for her claim of negligent infliction of emotional distress. Accordingly, defendants' motion for summary judgment on this issue is **GRANTED**.

### F. Claim Six: Breach of Contract

In her sixth claim, plaintiff alleges that defendant PSS breached her employment contract by failing to compensate her with housing allowance, which is only provided to off-island hires. While plaintiff claims that several employment contracts were breached because she was not provided with housing allowance, the only contract mentioned in the complaint was the one that was formed in 1996. Because this case was filed on November 18, 2005, the six year statute of limitations has extinguished and plaintiff's claim for breach of the 1996 contract has expired. *See* 7 CMC § 2505 (2004). While defendant PSS provided the court with two other contracts that were formed between defendant PSS and plaintiff, neither contract provided for housing allowance. *See* Declaration of Heather L. Kennedy, exh. D, at 6 ¶ 18, No. 71 (Nov. 13, 2006) (Employment contract commencing March 2, 1997, and continuing to July 28, 1998, states that Off-Island Hire Terms and Conditions of Employment apply if attached to the contract but the contract contains no such attachment.); Declaration of Heather L. Kennedy, exh. F, at 8 ¶ 18, No. 71 (Nov. 13, 2006) (Employment contract commencing July 29, 1998, and continuing to July 28, 2000, states that "[e]mployee is not entitled to receive housing benefits."). Accordingly, defendants' motion for summary judgment on this issue is **GRANTED**.

//
//
//
//
//

### III. CONCLUSION

For the forgoing reasons, the court **GRANTS** summary judgment in favor of defendants on claim 1, claim 2, claim 5, claim 6 and partial summary judgment on claim 3.

**IT IS SO ORDERED.**

**DATED** this 5TH day of January, 2007.

---
ALEX R. MUNSON
Chief Judge