GEORGE L. HASSELBACK, ESQ.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

*Attorneys for Plaintiff Lisa S. Black*

IN THE UNITED STATES DISTRICT COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LISA S. BLACK, ) | CIVIL ACTION NO. 05-0038 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM IN SUPPORT |
| JIM BREWER, individually and in his ) | OF MOTION TO AMEND |
| official capacity as Acting Principal for ) | COMPLAINT |
| Hopwood Junior High School, ) | |
| COMMONWEALTH OF THE NORTHERN ) | Date : |
| MARIANA ISLANDS PUBLIC SCHOOL ) | Time: |
| SYSTEM, and JOHN AND/OR JANE DOE, ) | Judge: |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

On November 18, 2005, Plaintiff filed her Complaint that alleged, *inter alia*, that Defendants had violated civil rights protected under both the CNMI and United States Constitutions. In particular, the Complaint alleged in the first cause of action that Defendant Jim Brewer ("Mr. Brewer") took various actions under color of law "in retaliation for actual and/or perceived exercises" of her First Amendment rights.[1] Additionally, the Complaint alleged in the second cause of action that both Mr. Brewer and Defendant CNMI Public School System ("PSS") had committed the tort of wrongful discharge in violation of public policy (that

---

[1] *See* Plaintiff's Complaint at paragraphs 19-25.

1

K:\3200\3221-01 Lisa Black\PL\draft\3221-01-010907-MemoMotAmndComp-glh.doc

public policy favoring "the free expression of ideas through speech and other expressive conduct by all persons").[2]

The particular civil rights implicated by this Complaint involved Plaintiff's "actual and/or perceived" participation in a letter of concern that was delivered to the CNMI Board of Education and which concerned a certain administrator employed at Hopwood Junior High School.[3] When Defendants moved for summary judgment on or about the deadline set by this Court for the filing of dispositive motions, both PSS and Mr. Brewer presented an unjustifiably narrow interpretation of Plaintiff's claims.[4] Both Defendants argued that since Plaintiff's Complaint stated "Mr. Brewer formulated the erroneous belief that Ms. Black was responsible for drafting, circulating and/or encouraging others to sign" the letter of concern[5], she was entirely precluded from asserting that she had ever engaged in any activity protected under the United States or CNMI Constitutions. Additionally, in their Memoranda In Support of their Motions For Summary Judgment, the Defendants provided deposition testimony that they contend buttress the argument that Plaintiff never engaged in any constitutionally protected activity.[6]

Plaintiff countered this argument by clarifying that her Complaint contemplated that Plaitniff's protected conduct went beyond simply writing or signing the letter of concern.[7] There, she argued that her conduct in associating with and advising the signators and authors of the letter and her attendance (and attempted attendance) and speech at meetings regarding the letter constituted constitutionally protected action.[8] Plaintiff clarified that "drafting, circulating

---

[2] *Id* at paragraphs 26-31.

[3] The particulars of that letter of concern are not relevant for the purposes of this Motion and Plaintiff will not go into any more detail regarding them at this time.

[4] *See generally* Mr. Brewer's and PSS's Motions For Summary Judgment.

[5] Plaintiff's Complaint at paragraph 12.

[6] *See generally* Mr. Brewer's and PSS's Motions For Summary Judgment.

[7] *See generally* Plaintiff's Opposition to Defendants' Motions For Summary Judgmetn.

[8] *Id.*

2

K:\3200\3221-01 Lisa Black\PL\draft\3221-01-010907-MemoMotAmndComp-glh.doc

1  and/or encouraging other to sign" the letter were only some of the actions one could have taken
2  associated with the letter that would be constitutionally protected.[9]  Plaintiff presented
3  deposition testimony and affidavit testimony supporting this argument.[10]  Defendants
4  predictably opposed this argument and insisted that because of the ambiguity in Plaintiff's
5  Complaint, all she could possibly claim constitutional protection for was "drafting, circulating
6  and/or encouraging other to sign" the letter.

8  Subsequently, this Court heard oral argument on Defendants' Motions on December 14,
9  2006.  There, the Defendants rested on their pleadings.  Plaintiff's attorney rested on the
10 pleadings with the exception of one discreet issue.  Pliantiff's attorney attempted to clarify the
11 very subject at issue in this Motion, that Defendants' interpretation of what is and is not
12 protected activity was overly narrow.  Plaintiff's attorney described to this Court that Plaintiff
13 was not claiming that she wrote the letter, signed the letter or encouraged others to sign it, but
14 rather that she associated with the drafters of the letter, attended (or attempted to attend)
15 meetings and advised the drafters of the letter about what to say.  This, and not directly signing
16 the letter, was what Plaintiff's attorney explained was the basis for her suit.

18 When this Court rendered its decision regarding Defendants Motions For Summary
19 Judgment in an Order dated January 5, 2007 ("the Order").  There, it granted summary judgment
20 as to Plaintiff's first two causes of action stating that the Plaintiff was "judicially estopped from
21 claiming that she took part in the Letter of Concern when she denied any connection to the
22 Letter of Concern in the [C]omplaint."[11]  As will be demonstrated below, this Court had, in
23 essence, granted a judgment on the pleadings and should have allowed Plaintiff to amend her
24 Complaint.  In the alternative, this Court should have considered all applicable information

---

[9] *Id.*

[10] *Id.*  Furthermore, Plaintiff presents more affidavit testimony by Dr. John Joyner and Felisa Brel attached respectively as "exhibits A & B."

[11] The Order at 4.

3

including deposition testimony, interrogatory answers and affidavit testimony and not ruled solely upon the pleadings.

## II. ARGUMENT

Since this Court summarily dismissed Plaintiff's first two causes of action based solely upon the language of her Complaint, that action was, in essence, a judgment on the pleadings. For that reason, Plaintiff should have been granted leave to amend her Complaint before such judgment was rendered. In the alternative, this Court should reconsider its decision granting summary judgment on Plaintiff's first two causes of action in order to give full consideration to the information gathered during discovery and contained in depositions, answers to interrogatories and affidavits.

### A. *Plaintiff Should Be Granted Leave To Amend Her Complaint.*

This Court should grant Plaintiff leave to amend her complaint. As a general rule, such leave is only denied when certain circumstances (none of which are present here) arise.

#### *1. The Standard For Amendment Of Pleadings Is Extremely Liberal.*

Rule 15(a) of the Federal Rules of Civil Procedure, particularly the second sentence, sets forth a liberal standard for amendment of pleadings as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and ***leave shall be freely given when justice so requires.*** A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders (emphasis added).

As Defendants have already filed a responsive pleading, leave of court is required to file an amended pleading without written consent of the adverse party.

4

In *Foman v. Davis* the U.S. Supreme Court established that leave to amend should be presumptively granted unless one or more of several criteria to the contrary could be established. 371 U.S. 178, 182 (1962)[12]. These criteria include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Id.* Since no other amendments to the complaint have been proposed, and the other criteria all favor the Plaintiff, this motion should be granted.

Furthermore, the Ninth Circuit requires that district courts grant leave to amend with "*extreme liberality* (emphasis added)." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990).

### 2. There Has Been No Undue Delay On The Part Of Plaintiff.

Plaintiff has not unduly delayed in requesting leave to amend her Complaint. Plaintiff was not aware that her Complaint was in need of amendment until the Order was issued on January 5, 2007.[13] Defendants never filed a motion for judgment on the pleadings. Plaintiff presented deposition testimony, affidavit testimony and interrogatory answers that could be used to illustrate a genuine issue of material fact thus precluding summary judgment. However, this Court did not comment on any of these but rather adjudicated Defendants' Motions For Summary Judgment strictly based on the language of Plaintiff's Complaint, saying that "[P]laintiff is judicially estopped from claiming that she took part in the Letter of Concern when she denied any connection to the Letter of Concern in the [C]omplaint."[14] In effect, this Court

---

[12] *See also* Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,1051 (9th Cir. 2003).

[13] Less than a week prior to the filing of this Motion.

[14] The Order at 4.

granted a judgment on the pleadings. Therefore, until this *de facto* judgment on the pleadings was rendered, Plaintiff was unaware that any need existed for amendment to her Complaint.

Had Plaintiff known that she was facing judgment on the pleadings with regard to the first two causes of action, she would have moved for amendment earlier. Instead, Plaintiff presumed that all proper information would have been considered on Defendants' Motions and not just the language of her Complaint. Within a week of learning of this, Plaintiff moves for leave to amend.

### 3. There Will Be No Prejudice To The Defendants.

Defendants have prepared their case to this point anticipating that they would face Plaintiff's first two causes of action. They have conducted discovery with an eye towards facing these claims and will not be prejudiced by their trial in front of the jury.

### 4. Plaintiff Is Not Acting In Bad Faith, Nor Does She Have Any Dilatory Motive.

Plaintiff has no bad faith or dilatory motive in moving the Court to amend her Complaint. Each of the allegations contained in the Proposed First Amended Complaint has both firm factual and legal bases for its inclusion. Furthermore, Plaintiff has already provided affidavit and deposition testimony that supports her contention that she took an active role in the development of the letter of concern and also engaged in discourse with PSS administration regarding the concerns it raised. Additionally, Plaintiff provides more affidavit testimony through Dr. Joyner and Ms. Brel. See Exhibits A & B.

### B. Alternatively, This Court Should Reconsider Its Decision.

If this Court is disinclined to grant Plaintiff leave to amend her Complaint, it

6

should reconsider its decision in granting summary judgment as to Plaintiff's first two causes of action. In doing so, this Court should consider all of the information gathered during discovery and presented in Plaintiff's Opposition to Defendant's Motion, and not limit its analysis to a single sentence of Plaintiff's Complaint.

## CONCLUSION

For the above stated reasons, Plaintiff Elenita A. Santos requests that this Honorable Court enter an order allowing said Plaintiff to file the attached First Amended Complaint in the above-entitled action.

Respectfully submitted January 10, 2007:

O'CONNOR BERMAN DOTTS & BANES
Attorneys for Plaintiff Lisa Black

By: /s/_____
GEORGE L. HASSELBACK

K:\3200\3221-01 Lisa Black\PL\draft\3221-01-010907-MemoMotAmndComp-glh.doc

Declaration

I, Dr. John B. Joyner, declare and state, under the penalty of perjury and based on my personal knowledge and memory unless otherwise stated, as follows:

1. I am a citizen of the United States and a resident of the Commonwealth of the Northern Mariana Islands. I am the Director of the CNMI Office of Costal Resources Management.

2. At a time when I was director of The Pacific Way Mediation Center, I was requested by the proponents of a letter of concern to help mediate a dispute between the proponents, a group of teachers at Hopwood Junior High School, and Hopwood Administration. I agreed to try to assist.

3. I had several telephone conversations and meetings with the group of Hopwood teachers to discuss how to proceed. Lisa Black attended and participated in the meetings.

4. I was asked by the teachers to go to Hopwood to meet with them. I went to Hopwood and met the group in a classroom with a number of teachers. Lisa Black was one of the teachers in the group I met with. We discussed the concern and during the conversation someone mentioned that Commissioner Rita Inos and Principal Jim Brewer were also meeting at

1

2

the same time with individuals who had signed the letter of concern. I suggested that we should go try to talk directly to them. Several teachers and myself then went across the campus to the classroom where the others were meeting. I went in and sat in a chair offered to me.

5. Inside the room I was told the meeting was just for "special people". I explained that the teachers I was with shared in the concerns of the persons present. Despite this, we were asked to not stay, to leave and we did leave.

6. Soon after, at a latter date, I spoke privately with the Administration of PSS about the situation. I was informed that the teachers who were complaining were "trouble makers" and their behavior was disruptive and should not be tolerated. I was told that I should not continue to involve myself in the matter, that there was no point to attempting mediation further, a sentiment of futility voiced by some of the teachers. During the course of the private conversation at least two teachers were singled out as especially responsible for "misleading" the other teachers. Nancy Sikiang and Lisa Black. It was clear to me that PSS did not desire to mediate the matter. Given the strong feelings of PSS in this regard, and my obligation as a mediator, it was apparent to me my services would not facilitate a resolution, so I withdrew from the process.

I, Dr. John B. Joyner, declare and state, under penalty of perjury, that the above is true and correct, to the best of my knowledge, memory and belief, and if called upon to testify, I could and would competently testify thereto.

Executed on the Island of Saipan, Commonwealth of the Northern Mariana Islands.

Dated: January __11__, 2007                 _____
                                            John B. Joyner, PhD

K:\3200\3221-01 Lisa Black\declaration of John Joyner-070111-miu.doc

3

Declaration

I, Felisa Brel, declare and state, under the penalty of perjury and based on my personal knowledge unless otherwise stated, as follows:

1. I am a citizen of the Republic of Palau and a resident of the Commonwealth of the Northern Mariana Islands. I am a teacher at Hopwood Junior High School. I have taught at Hopwood since 1990.

2. I was very much involved with a letter of concern circulated about Beth Nepaial, Vice Principal at Hopwood. I helped obtain signatures on it.

3. Lisa Black also had concerns about Ms. Nepaial. I met with Lisa Black and other individuals in a group to discuss the letter. Ms. Black did not agree with some of the contents of the letter of concern, and therefore did not sign the letter.

4. Following submission of the letter to the Administration, I attended several meetings with Hopwood teachers to discuss how we should proceed. Meetings were held amongst the teachers at Hopwood during break time and after school until the Administration told us we could no longer hold our meetings there. We then held meetings at private

1

residences in the evenings. Lisa Black attended and participated in these meetings.

5. Meetings were held between the proponents of the letter and the Administration. The first such meeting was attended by Charley Kenty from PSS. Many teachers wanted to attend. The meeting was held at the library at the School. Before Mr. Kenty arrived, Mr. Brewer appeared and ordered that everyone who had not signed the letter must leave. Teachers objected but Mr. Brewer refused to allow them to attend. Lisa Black attempted to attend this meetings but was required by Mr. Brewer to leave.

6. A subsequent meeting was held and everyone interested was allowed to attend. Lisa Black attended this subsequent meeting.

7. Jim Brewer, the Principal of Hopwood, repeatedly indicated that he believed Lisa Black was behind the letter of concern. Brewer treated all the teachers involved with the letter differently than those not involved with letter. Mr. Brewer referred to the letter of concern as a "petition". At the first staff meeting held in 2005, Mr. Brewer announced that "for you who signed the petition, do not forget we know who you are". Teachers associated with the letter were targeted for harassment by Mr. Brewer. Mr. Brewer in particular harassed Lisa Black.

8.  I was familiar with Lisa Black's teaching abilities. I believe she was a good teacher. I believed she was harassed and her contract not renewed because of her involvement with the letter of concern and her association with myself and other teachers who were attempting to force the School Administration to address our concerns.

9.  When Lisa Black filed her lawsuit against PSS and Mr Brewer, she asked if I would agree to testify in her case. I told her I was afraid to testify because I was afraid my contract would not be renewed. Then in about December, 2006, when I learned that Mr. Brewer had left and was not coming back, I agreed to testify.

I, Felisa Brel, declare and state, under penalty of perjury, that the above is true and correct, to the best of my knowledge and belief, and if called upon to testify, I could and would competently testify thereto.

Executed on the Island of Saipan, Commonwealth of the Northern Mariana Islands.

Dated: January 10, 2007

_____
Felisa Brel