Joseph HILL vs. THE
GOVERNMENT OF THE
COMMONWEALTH OF THE
NORTHERN MARIANA
ISLANDS; Carlos S. Camacho,
individually and as Governor of
the Commonwealth, Herman Q.
Guerrero, individually and in his
capacity as Chief Administrative
Officer of the Commonwealth;
Richard I. Lassman, individually
and as Attorney General of the
Commonwealth, and Does 1, 2
and 3

Civil Action No. 82-0077
District Court NMI

Decided February 21, 1984

**1.  Civil Procedure - Summary
Judgment**
Summary judgment is appropriate only if
it is demonstrated that there exists no
genuine dispute as to any material fact and
movant is entitled to judgment as a matter
of law. Fed. R. Civ. P. 56.

**2.  Civil Procedure - Summary
Judgment**
On a motion for summary judgment, the
Court must construe the pleadings and
other record evidence and its attendant
inferences most favorably to the non-
moving party. Fed. R. Civ. P. 56.

**3.  Civil Procedure - Summary
Judgment**
On a motion for summary judgment a
genuine factual issue may exist only if a
viable legal theory would entitle plaintiffs
to judgment if they prove their asserted
versions of the facts. Fed. R. Civ. P. 56.

**4.  Defamation & Slander - Public
Officials**

The Chief Administrative Officer who
oversees day-to-day operations of the
executive branch and exercises broad
discretion in daily government matters is
properly considered a "superior officer" to
whom the defense of absolute privilege
should apply in an action brought against
him for defamation. Rest. Torts 2d, §591.

**5.  Public Officers & Employees -
Immunity**
The absolute privilege defense to a
defamation claim and official immunity
are separate and distinct doctrines.

**6.  Public Officers & Employees -
Immunity**
For executive officials in general qualified
immunity represents the norm and
absolute immunity is the exception;
within the executive branch, absolute
immunity has been recognized only for
prosecutors and officers exercising
adjudicative functions.

**7.  Public Officers & Employees -
Immunity - Absolute**
The burden of justifying absolute
immunity rests on the official asserting
the claim.

**8.  Public Officers & Employees -
Immunity - Qualified**
The CNMI Chief Administrative Officer is
entitled to a qualified immunity only for
actions taken within the scope of his
official authority.

**9.  Public Officers & Employees -
Immunity - Qualified**
Government officials performing
discretionary functions are shielded from
liability for civil damages insofar as their
conduct does not violate clearly established
legal rights of which a reasonable person
would have known.

905

**10. Public Officers & Employees - Immunity - Qualified**

Summary judgment based upon a qualified immunity defense would be denied government official where the law of interference with contract was well established and clearly set forth in the Restatement and a reasonable person would have known that the CNMI Chief Administrative Officer's alleged actions with regard to plaintiff's employment contract would violate plaintiff's rights to contract.

**11. Civil Procedure - Pleadings**

In an action under the federal civil rights act, the failure to specifically cite the statutory provision conferring jurisdiction is not fatal. 42 U.S.C. §1983.

**12. Constitutional Law - Due Process**

A successful assertion of a due process claim under the federal civil rights statute requires a showing that the government deprived plaintiff of a constitutionally protected liberty or property interest without notice and an opportunity to be heard. 42 U.S.C. §1983.

**13. Constitutional Law - Due Process - Property Interests**

Whether the plaintiff had a valid claim of entitlement sufficient to rise to a protectible property interest under the constitution depends on the existing rules and the understanding with which he entered into the contract.

**14. Public Officers & Employees - Immunity - Qualified**

The CNMI Chief Administrative Officer is entitled to a qualified immunity on constitutional claims brought under the Civil Rights Act. 42 U.S.C. §1983.

**15. Constitutional Law - Due Process - Liberty Interests**

A person's liberty interest in the employment context is an independently protected interest, separate from one's property right to continued employment.

**16. Constitutional Law - Due Process**

When a termination or a decision not to rehire a government employee is accompanied by public charges which affects one's reputation or standing in the community so as to foreclose the employee from taking advantage of available job opportunities, due process interests are implicated which require that a person be given notice and an opportunity to clear his or her name. U.S. Const., Amend. 14.

**17. Constitutional Law - Due Process**

To trigger due process protection when a decision not to rehire a government employee is accompanied by a public charge, the allegation must seriously damage the employee's standing in the community or impose a stigma or other disability foreclosing his or her freedom to take advantage of other employment opportunity.

**18. Constitutional Law - Due Process**

To trigger due process protection when a decision not to rehire a government employee is accompanied by a public charge, the charge must be so serious that it belittles his worth and dignity as an individual and, as a consequence, is likely to have severe repercussions outside of professional life. U.S. Const., Amend. 14.

**19. Constitutional Law - Due Process**

906

Chief Administrative Officer's statement to the press in connection with the veto of plaintiff's contract that plaintiff's "handling of labor cases in general had been poor," was insufficient to implicate constitutional interests.   U.S. Const., Amend. 14.

**20.   Constitutional Law - Due Process - Liberty Interests**
Charges of incompetence alone do not rise to constitutional infringement of liberty interests.  U.S. Const., Amend. 14.

907

F I L E D
Clerk
District Court

FEB 2 1 1984

For The Northern Mariana Islands
By _____


IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

JOSEPH HILL,                              CIVIL ACTION NO. 82-0077

        Plaintiff,

        vs.

THE GOVERNMENT OF THE                     DECISION
COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS; CARLOS S.
CAMACHO, individually and as
GOVERNOR OF THE COMMONWEALTH;
HERMAN Q. GUERRERO, individu-
ually and in his capacity as
CHIEF ADMINISTRATIVE OFFICER
OF THE COMMONWEALTH; RICHARD
I. LASSMAN, individually and
as ATTORNEY GENERAL OF THE
COMMONWEALTH; and DOES 1, 2
and 3,

        Defendants.

## FACTS

For the purposes of this motion, plaintiff Joseph
Hill's allegations are considered undisputed.  Hill was employed
by the Commonwealth of the Northern Mariana Islands (CNMI) as an
Assistant Attorney General from March 4, 1980 until March 3,
1981.  On or about March 5, 1981, the Attorney General, Richard
I. Lassman, entered into an oral employment agreement with Hill
whereby Hill would continue in his capacity as Assistant Attorney
General for an additional period of one year.  On or about May 4,
1981, Hill and Lassman signed a written contract formalizing the
oral agreement extending Hill's employment through March 3, 1982.

AO 72
(Rev. 8/82)

908

For all times relevant to this action, the defendant Herman Q. Guerrero was the CNMI Chief Administrative Officer (CAO). As such, his duties included advising and assisting the Governor and exercising supervisory authority over personnel matters.

Sometime before May, 1981, Hill, pursuant to his duties, acted as legal counsel to the Chief of Labor. In one particular labor hearing, at which the Chief of Labor sat as the hearing officer, Guerrero represented his sister-in-law, an employer accused of underpaying her domestic help. The Chief of Labor ruled against Guerrero's sister-in-law and entered an order requiring that she pay back wages due the employee. When the order was not complied with, Hill filed an enforcement petition in the Commonwealth Trial Court. On May 1, 1981, upon learning of the petition, Guerrero met with Hill and the Chief of Labor and demanded that the petition be withdrawn and the order set aside. Should this not be done, Guerrero threatened to "review and reconsider" the employment contracts of Hill and the Chief of Labor. The petition was not withdrawn. On May 4, 1981, on the advice of Guerrero, Governor Camacho disapproved Hill's contract extension.

///
///
///
///
///

1    On February 4, 1982, Hill filed this action against the
2    CNMI, Governor Camacho, the Attorney General and Guerrero; the
3    defendants were named both in their official and individual
4    capacities.  Relevant to this motion are Count III, wherein Hill
5    alleges interference with contract and violation of consitutional
6    rights, and Count IV, wherein he alleges defamation.
7    Guerrero now moves this Court for summary judgment on
8    the basis of an asserted absolute immunity from liability.
9
10                          STANDARD OF REVIEW
11   [1-3]   Summary judgment is appropriate only if it is
12   demonstrated that there exists no genuine dispute as to any
13   material fact and movant is entitled to judgment as a matter of
14   law.  U.S. v. First National Bank of Circle, 652 F.2d 882, 887
15   (9th Cir. 1981).  The Court must construe the pleadings, other
16   record evidence and its attendant inferences most favorably to
17   plaintiffs.  Harlow v. Fitzgerald, ____ U.S. ____, ____, n.26,
18   102 S.Ct. 2727, 2737, n.26, 73 L.Ed.2d 396 (1982).  A genuine
19   factual issue may exist only if a viable legal theory would
20   entitle plaintiffs to judgment if they prove their asserted
21   version of the facts.  Ron Tonkin Gran Turismo v. Fiat Distri-
22   butors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert.denied, ____
23   U.S. ____, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).
24   ///
25   ///
26   ///

910

## IMMUNITY

In his motion for summary judgment, Guerrero asserts that under the doctrine of absolute privilege, he is "immune from suit on account of acts or official communications made... in the line of duty." Memorandum in Support of Summary Judgment, p. 4. He relies on Section 591 of the Restatement of the Law, Torts 2d (Restatement), Izuka v. Camacho, Civil No. 81-0036 (D.N.M.I. Sept. 6, 1983) and Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) in support of his position.

Section 591 of the Restatement reads:

> An absolute privilege to publish de-
> famatory matter concerning another in
> communications made in the perform-
> ance of his official duties exists for:
>
> . . .
>
> (b)  a governor or other superior
> executive officer of a state.

In Izuka v. Camacho, the plaintiff brought a libel action against the governor for damages allegedly resulting from a letter of discharge published by the Governor. On the Governor's motion for summary judgment, this Court, applying § 591 of the Restatement, held that the Governor possessed an absolute privilege to publish the defamatory remark. Guerrero now asks this Court to hold that the § 591 privilege applies to the CAO.

///

///

///

911

1    Comment c to § 591 reads:

2        c.   All of the state courts that have
      considered the question have agreed that
3      the absolute privilege stated in Clause (b)
      protects the superior officers of the state
4      governments, including at least the governor,
      the attorney-general or the heads of state
5      departments whose rank is the equivalent of
      cabinet rank in the Federal Government.  A
6      good number of the States have gone further,
      and have extended the absolute privilege to
7      state officers of various ranks below that
      of cabinet level.

8

9    The absolute privilege doctrine has been given broad application

10   by the courts of many jurisdiction.  See e.g. Barr v. Mateo,

11   supra (privilege extended to Acting Director of Office of Rent

12   Stabilization); Saroyan v. Burkett, 371 P.2d 293, 21 Cal.Rptr.

13   557 (Cal. 1962) (privilege extended to Superintendent of Banks);

14   Verna v. Kleinbach, 427 P.2d 403 (Alaska 1967) (privilege

15   extended to civilian personnel officer of United States Army);

16   Grande v. State, 115 Ariz. 394, 565 P.2d 900 (1977) (privilege

17   extended to officials of state Tax Commission); Shearer v.

18   Lambert, 274 Ore. 449, 547 P.2d 98 (1976) (privilege extended to

19   head of department of university); Sidor v. Public Disclosure

20   Commission, 25 Wash.App. 127, 607 P.2d 859 (1980) (privilege

21   extended to members of election commission).

22   ///

23   ///

24   ///

25   ///

26   ///

AO 72
(Rev.8/82)

912

[4]    The CAO oversees "day-to-day operations of the Executive Branch."[1] He provides "consultative, advisory and various administrative services to the Governor... and at the direction of the Governor will direct immediate execution of programs and performs other duties as may be delegated by... the Governor."[2] In addition the CAO has had, from time to time, extensive authority over personnel matters.[3] It is readily apparent that the CAO exercises broad discretion in daily government matters and is properly considered a "superior officer" to whom the absolute privilege defense should apply. Accordingly, Guerrero's summary judgment as to Count IV is granted.

Count III of Hill's complaint requires more in-depth consideration. Paragraph 36 reads in pertinent part:

> "Commencing on or about May 4, 1981,
> Defendant Guerrero individually and
> in conspiracy with others, maliciously,
> and with wilful intent to injure Plain-
> tiff, conspired with the other defendants...
> to cause Plaintiff's discharge from his
> employment... by corruptly and without
> legal cause or justification, using his
> official position as CAO, to interfere
> with and to cause Defendant Governor to
> unjustly and unlawfully interfere with
> Plaintiff's employment relationship and
> contract...."

- - - - - - - - - -

[1] Executive Order No. 2, 1 Commonwealth Register 2 (1980)

[2] Exhibit D attached to Guerrero's Declaration in Support of Summary Judgment.

[3] Memorandum of Attorney General concerning Personnel Services Contracts, Exhibit E attached to Guerrero's Declaration in Support of Summary Judgment.

1   Thus, Hill's complaint states a claim of interference with
2   contract and interference with prospective contractual rela-
3   tions.[4]

4           Guerrero asks this Court to read Izuka, Barr and § 591
5   of the Restatement as extending to him an absolute immunity from
6   civil liability for official acts performed within the outer
7   perimeters of his authority. Guerrero confuses the "absolute
8   privilege" defense to defamation with the doctrine of "official
9   immunity."

10  [5]     Absolute privilege and official immunity are so inter-
11  woven, the distinction between the two is often blurred if not
12  wholly unseen. Traditionally, absolute privilege has been avail-
13  able as an affirmative defense to allegations of defamation. W.
14  Prosser, Law of Torts, § 114 (1971) (Prosser). Like other
15  privilege defenses, such as self-defense and protection of
16  property, absolute privilege in defamation law rests on the
17  theory that conduct, otherwise actionable, escapes liability
18  because the defendant is acting in furtherance of some interest
19  of social importance. Such interests are so valuable that they
20  are entitled to protection even at the expense of uncompensated
21  harm to plaintiff's reputation. The privilege, however, has been
22  limited to those few situations where there is an obvious policy

23
24  – – – – – – – – – –
25
26  [4] See Restatement § 766 and § 766 B.

AO 72
(Rev.8/82)

in favor of permitting complete freedom of expression. Execu-
tive communication is recognized as one such interest. The need
for free-flowing dialogue, comment and criticism, unhampered by
frivolous lawsuits is considered so essential to an open govern-
ment as to be paramount to the interest in compensating resulting
defamations.

The doctrine of official immunity on the other hand
protects an official from liability for <u>actions</u> taken within the
scope of his or her official authority. <u>Civil Actions Against
State Government</u> § 6.3 (Shepard's-McGraw/Hill 1982)("Shepard's").
The doctrine acts as a substantive limitation on an official's
personal liability for damages. While the absolute privilege
doctrine has been developing in this country for nearly a
century, the doctrine of official immunity, in its present form,
has only been in existence for twenty-five years.[5] Like
absolute privilege, the official immunity doctrine attempts to
balance important competing interests. The balances are struck
between compensating the injury of the plaintiff and free-flow of
dialogue (absolute privilege) and between compensation and the

- - - - - - - - - -

[5]A similar doctrine was developed under English jurisprudence
which shielded officials from personal liability as they were
acting pursuant to royal command and the King was incapable of
authorizing an illegal act. In 19th century American jurispru-
dence public employees generally had been held amenable to suit
and liable for injuries caused by their acts or omissions. It
is only during the last quarter century that the developing law
has moved toward increased immunity for public officials. <u>See</u>
Shepard's, § 6.2; <u>K. Davis</u>, <u>Administrative Law Text</u> § 26.01
(3rd ed. 1972).

AO 72
(Rev. 8/82)

915

1   need to protect the public officials from undue interference with
2   their duties (official immunity).  The major difference between
3   the two doctrines, and of critical importance here, is the degree
4   of the privilege or immunity afforded executive officials.

5           The privilege in defamation is absolute.  So long as
6   the official is acting within the outer perimeter of his or her
7   authority, the defense will bar liability, notwithstanding the
8   existence of improper motive or malice.  Barr v. Mateo, supra.
9   For officials seeking immunity for their alleged wrongful
10  actions, a qualified or good-faith immunity represents the norm.
11  Harlow v. Fitzgerald, ____ U.S. ____, 102 S.Ct. 2727, 2733, 73
12  L.Ed.2d 396, 403 (1982).  The Supreme Court therein stated its
13  belief that a qualified immunity allows the requisite protection
14  while recognizing the importance of an available damage remedy to
15  protect the rights of citizens.  While the difference between the
16  two doctrines appears contradictory, the Court notes two bases on
17  which it can be supported.
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///

AO 72
(Rev.8/82)

916

First, it must be remembered that each doctrine has developed under independent branches of the common law. It is possible that there has not been a case (of precedential weight to this Court) which addressed the differences.[6]  Alternatively, the difference can be attributed to basic principles of the American democratic system.  Our system generally affords greater protection to speech than it does to action.  Speech and the free-flow of information has consistently been accorded great weight.  Conduct, on the other hand, although often extensions of speech have been more readily circumscribed because of their inherent potential for interference with the rights of others.  See e.g. United States v. O'Brien, 391 U.S. 367, 98 S.Ct. 1673, 20 L.Ed.2d 672 (1968)(court more willing to balance "symbolic speech" with other government interests while very hesistant to do so with "pure speech").  See also W. Lockhart, Y. Kamisar, J. Choper, Constitutional Law, p. 1108 (5th Ed. 1980), quoting Emerson, The System of Freedom of Expression 84-90 (1970).  Similarly, the law is more willing to afford greater protection

_ _ _ _ _ _ _ _ _ _

[6]One authority has expressed his displeasure with the absolute privilege approach and feels that a qualified privilege strikes the better balance.  Prosser, § 114, p. 784.  This Court agrees with that approach and would reconcile any conflict by disallowing an absolute privilege defense in favor of qualified privilege in defamation cases.  However, the CNMI has adopted the Restatement as the rule of decision in its courts (1 TTC § 103) and this Court will defer to the Legislature for any changes perceived as necessary.

AO 72
(Rev.8/82)

917

1    to free-flow of speech between government officials and allow

2    absolute protection[7] whereas the balance is struck more in favor

3    of compensation where actions create the injury.   Thus, the

4    difference, although appearing contradictory, and possibly

5    undesirable, is not irrational.[8]

6    [6]      What immunity then may Guerrero assert in this action?

7    As noted above, for executive officials in general, "qualified

8    immunity represents the norm."  Harlow v. Fitzgerald, supra, 102

9    S.Ct. 2733.  Absolute immunity is the exception and, within the

10   Executive Branch, has been recognized only for prosecutors and

11   officers exercising adjudicative functions.  Id.  In Nixon v.

12   Fitzgerald, _____ U.S. _____, 102 S.Ct. 2690, 73 L.Ed.2d 349, the

13   Supreme Court extended, for the first time, absolute immunity to

14   _ _ _ _ _ _ _ _ _ _

15

16   [7]Members of Congress, for example, are granted the privilege
     under the Constitution.  Article I, Section 6.

17
     [8]Guerrero would have this Court read Barr, Izuka and § 591 as
18   extending the absolute privilege to conduct as well as state-
     ments.  This position is not persuasive.  Harlow v.
19   Fitzgerald, supra, specifically sets forth the applicable
     standard for alleged statutory and Constitution violations as
20   one of qualified immunity.  As for common law actions, the
     cited cases concern alleged defamatory statements and speak in
21   terms of absolute privilege, not immunity.  Barr states its
     holding in the following manner:
22
                [W]e hold that petitioner's plea of absolute
23              privilege in defense of the alleged libel
                published at his direction must be sustained.
24
     (emphasis added).  79 S.Ct. at 1341.  Izuka also concerns
25   defamation and bases its holding on Barr and § 591.  Accord-
     ingly, those two cases are considered by this Court to be
26   limited to their facts.

AO 72
(Rev. 8/82)

918

1   the President of the United States, relying on a separation of
2   powers analysis. However, in the companion case, Harlow v.
3   Fitzgerald, supra, decided on the same day on the same facts, the
4   Court rejected the argument that the absolute immunity afforded
5   the President extended to his closest aides and advisors; such
6   individuals, the Court held, were only entitled to a qualified
7   immunity.

8   [7-8]    In reviewing Guerrero's claim of absolute immunity, the
9   Court notes two general pronouncements of the Supreme Court. The
10  burden of justifying absolute immunity rests on the official
11  asserting the claim. Harlow, 102 S.Ct. at 2736. Guerrero
12  asserts absolute immunity as necessary to protect his unhampered
13  action as a high-ranking official. However, the Supreme Court
14  has cautioned that "the greater power of [high] officials affords
15  a greater potential for a regime of lawless conduct." Butz v.
16  Economou, 98 S.Ct. at 2910. Guerrero has not convinced this
17  Court that an absolute immunity is necessary to ensure the
18  efficient and effective operations of the Commonwealth govern-
19  ment. The Court believes that a qualified immunity sufficiently
20  protects the CAO while adequately preserving the rights of the
21  citizens.

22  ///
23  ///
24  ///
25  ///
26  ///

AO 72
(Rev.8/82)

919

[9]    The final point to address regarding immunity is the standard of review on a motion for summary judgment. The original standard for qualified immunity was developed in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) wherein a two-part test was established. A claim of qualified immunity would be rejected if either the official knew or should have known that his or her actions were unlawful or if the official took the action with malicious intent. This test gave the Supreme Court some trouble however in that any allegation of malice which had only minimal support would survive a summary judgment motion and subject officials to potentially lengthy trials thus bringing about the evils sought to be prevented by the immunity doctrine. Therefore, in Harlow v. Fitzgerald, supra, the Court established a modified test eliminating the subjective part of the Scheuer test. Under the modified test, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established legal rights of which a reasonable person would have known. 102 S.Ct. at 2738. In other words, if the actions are objectively reasonable, immunity attaches. If the law was clearly established, the immunity defense should fail since a reasonably competent public official should know the law governing his conduct. Id. at 2739.

///

///

///

AO 72
(Rev.8/82)

1   [10]      Here, the law of interference with contract is well

2   established and clearly set forth in the Restatement which has

3   been adopted by the CNMI. The Court is of the opinion that a

4   reasonable person would have known that Guerrero's alleged

5   actions would violate Hill's rights to contract. Therefore,

6   Guerrero's immunity defense fails and his motion for summary

7   judgment on this issue is denied.

8

9                        DUE PROCESS CLAIM

10   [11]      Paragrah 38 of Hill's complaint reads:

11                As a result of said malicious
                  and wrongful acts of Defendants,
12                Plaintiff was forced from employment
                  with the Attorney General's Office
13                and lost his title and position of
                  Assistant Attorney General and Regis-
14                trar of Corporations and subjected
                  to a deprivation of his civil right
15                to contract as secured by the United
                  States Constitution and laws, and
16                Plaintiff was unable to procure
                  other employment in his usual voca-
17                tion at a salary level or with the
                  prestige of his employment with the
18                Attorney Generals [sic] Office, and
                  Plaintiff was forced to accept
19                employment during the period in
                  question at a lower salary.
20

21   Liberally reading these allegations, it is apparent that Hill is

22   seeking monetary damages for alleged deprivations, without due

23   process, of constitutionally protected interests. The appro-

24   ///

25   ///

26   ///

AO 72
(Rev. 8/82)

921

priate claim, therefore, lies in an action pursuant to 42 U.S.C.

§ 1983.[9]      Although the pleadings are inartful, the failure

to specifically cite § 1983 is not fatal.  In Aguirre v.

Automotive Teamsters, 663 F.2d 108 (9th Cir. 1980), the Ninth

Circuit panel stated:

> The rule in this circuit is clear:
> "If facts giving the court juris-
> diction are set forth in the com-
> plaint, the provision conferring
> jurisdiction need not be specifi-
> cally pleaded." [citing Williams
> v. U.S., 405 F.2d 951 (9th Cir.
> 1969), and Bowers v. Campbell,
> 505 F.2d 1155, 1157 n.2 (9th Cir.
> 1974]

In the cited opinion of Bowers it was held that where plaintiff

alleged all the facts required to state a claim under section

1981, "[s]he was not required specifically to plead the statutory

provision conferring jurisdiction."  505 F.2d 1157, n.2.  This

- - - - - - - - - -

[9]The Supreme Court has held that a direct cause of action under
the Fourth Amendment, in appropriate circumstances, may be
implied.  Bivens v. Six Unknown Named Agents of Federal Bureau
of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971).  While the Ninth Circuit has expressed a willingness
to extend the Bivens rationale to other Amendments, Jacobson
v. Tahoe Regional Planning Agency, supra; Bennett v. Campbell,
564 F.2d 329 (9th Cir. 1974), it has expressly refused to
apply Bivens to the Fourteenth Amendment where § 1983 is
applicable.  Molina v. Richardson, 578 F.2d 846 (9th Cir.
1978); Ward v. Caulk, 650 F.2d 1144 (9th Cir. 1981).

AO 72
(Rev 8/82)

Court, then, will address Hill's claims as if properly brought
under § 1983.[10]

[12]    A successful assertion of a due process claim under
§ 1983[11] requires a showing that the government deprived plain-
tiff of a constitutionally protected liberty or property interest
without notice and an opportunity to be heard. The Court ad-
dresses first the property claim.

– – – – – – – – – –

[10] The Court feels it important to make note of the inartfulness
of Hill's pleadings on his constitutional claim. The allega-
tions are mere conclusory statements demonstrating a "shot-
gun" approach to pleading wherein the plaintiff leaves the
Court with the task of precipitating out specific claims of
constitutional magnitude. However, the federal rules require
only a short and plain statement of the facts putting the
defendant on notice as to plaintiff's claim and the ground on
which it rests. Conley v. Gibson, 355 U.S. 41, 47-48, 78
S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957). In his reply memo-
randum in support of his motion, Guerrero addresses Hill's
constitutional claim evidencing an awareness of the claim and
a willingness to defend on the merits. Guerrero has made no
motion to dismiss, rather he has moved for summary judgment.
Therefore, the Court feels that the pleading requirements
have been met or, at a minimum, have been conceded to by
Guerrero.

[11] § 1983 reads:

"Every person who, under color of any statute, ordi-
nance, regulation, custom, or usage, of any State or Terri-
tory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitu-
tion and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding
for redress. For the purposes of this section, any Act of
Congress applicable exclusively to the District of Columbia
shall be considered to be a statute of the District of
Columbia."

AO 72
(Rev.8/82)

1         Hill asserts that Guerrero's actions unconstitutionally

2 deprived him of his employment rights under the second year

3 contract. Guerrero cites Board of Regents v. Roth, 408 U.S. 564,

4 92 S.Ct. 2701, 22 L.Ed.2d 548 (1972) to support his position that

5 Hill held no property interest recognized or protected by the

6 Constitution.

7         Guerrero correctly cites Roth as a leading statement by

8 the Supreme Court on the property interests protected by due

9 process. The Court discussed the parameters of such interests:

10         The Fourteenth Amendment's pro-
cedural protection of property is

11         a safeguard of the security of
interests that a person has already

12         acquired in specific benefits.
These interests--property inter-

13         ests--may take many forms.

14         . . .

15         To have a property interest in a
benefit, a person clearly must have

16         more than an abstract need or desire
for it. He must have more than a

17         unilateral expectation of it. He
must, instead, have a legitimate

18         claim of entitlement to it.

19         . . .

20         Property interests, of course, are
not created by the Constitution.

21         Rather they are created and their
dimensions are defined by existing

22         rules or understandings that stem
from an independent source such as

23         state law--rules or understandings
that secure certain benefits and

24         that support claims of entitlement
to those benefits.

25

26 92 S.Ct. at 2708-2709.

AO 72
(Rev.8/82)

924

[3]    Hill signed a contract which was also endorsed by the
Attorney General, the Personnel Officer and the Finance Officer
but was subsequently disapproved by the Governor.  Whether Hill
had a valid claim of entitlement depends on "the existing rules
and understandings" under which he entered into the contract.
For example, did Lassman have authority to bind the CNMI?  Did
the Governor have the authority to disapprove the contract?  If
so, was Hill aware of this or should he have been so aware?  The
record on this issue is lean, leaving many questions of fact un-
answered.   The Court is unable at this time to conclusively
determine that Guerrero must prevail as a matter of law and
accordingly denies the motion on this issue.[12]

Hill also raises a claim based on infringement of his
liberty interests.  Guerrero relies on Paul v. Davis, 424 U.S.
693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) to support his conten-
tion that any defamation under the facts as alleged would not
constitute an infringement of any recognized liberty interest;
however, Guerrero is mistaken in his interpretation.  While Paul
does hold that a defamation alone does not implicate due process
liberty interests, it does not erode the Court's position stated
in Roth that a defamatory charge coupled with a tangible loss may
infringe upon due process interests.   Stretten v. Wadsworth
Hospital, 537 F.2d 361 (9th Cir. 1976).

- - - - - - - - - -

[4]  [12]Guerrero is entitled to a qualified immunity on the constitu-
tional claims as well.  Scheuer v. Rhodes, supra; Harlow v.
Fitzgerald, supra.  However, because of the state of the
record, the Court is unable to analyze the immunity claim and
accordingly denies the motion on this ground.

AO 72
(Rev.8/82)

925

[15,16]  A person's liberty interest in the employment context
is an independently protected interest, separate from one's
property rights in continued employment.  When a termination or a
decision not to rehire a government employee is accompanied by
charges which affects one's reputation or standing in the com-
munity so as to foreclose the employee from taking advantage of
available job opportunities, due process interests are impli-
cated.  Roth, supra; Orloff v. Cleland, 708 F.2d 372 (9th Cir.
1983); Vanelli v. Reynolds School District No. 7, 667 F.2d 773
(9th Cir. 1982).  When a person's reputation, honor and integrity
are at stake because of a government action, due process comes
into play.  Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct.
507, 27 L.Ed.2d 515 (19 ___).  When such charges are made, due
process requires that a person be given notice and an opportunity
to clear his or her name.  Codd v. Velger, ____ U.S. ____, 97
S.Ct. 882, ____ L.Ed.2d ____ (1977); Ong v. Tovey, 552 F.2d 305
(9th Cir. 1977); Quinn v. Syracuse Model Neighborhood Corpo-
ration, 613 F.2d 438 (2nd Cir. 1980).

[17,18]    Not every statement which accompanies an adverse
employment decision infringes upon liberty interests, however;
the Constitution does not stand as a guarantee against ill-
advised employment decisions.  Bishop v. Wood, supra; Gray v.
Union County Intermediate Education District, 520 F.2d 803 (9th
Cir. 1975).  The charge must be made public.  Bishop, supra;
Orloff v. Quinn, supra; Quinn v. Syracuse, supra.  The allegation
must seriously damage the employee's standing in the community or

AO 72
(Rev 8/82)

926

impose a stigma or other disability that forecloses his or her
freedom to take advantage of other employment opportunities. The
allegation must be so serious that it "belittles his worth and
dignity as an individual and, as a consequence is likely to have
severe repercussions _outside_ of professional life." Stretten v.
Wadsworth Hospital, 537 F.2d at 366 (emphasis in original).
Accord, Bullow v. Federal Reserve Bank of San Francisco, 650 F.2d
1093 (9th Cir. 1981); Debose v. U.S.D.A., 700 F.2d 1262 (9th Cir.
1983).

[9.20] Hill alleges that Guerrero stated to the press in
connection with the contract veto, that "Hill's handling of labor
cases in general had been poor." This allegation alone is insuf-
ficient to implicate constitutional interests. The panel in
Stretten, _supra_, analyzed a similar fact pattern:

> Liberty is not infringed by a
> label of incompetence, the reper-
> cussions of which primarily affect
> professional life, and which may
> well force the individual down one
> or more notches in the professional
> hierarchy. The distinction is not
> perfect; our utility affects our
> dignity and worth whether viewed
> from within or without. However,
> implicit in such a distinction is
> the notion that the consitutional
> need for procedural protection is
> not strong when the charge (_e.g._,
> incompetence) involves a matter
> which is peculiarly within the scope
> of employer-employee relations and
> when the likely results of even a
> false charge are reduced economic
> returns and diminished prestige, but
> not permanent exclusion from, or pro-
> tracted interruption of gainful employ-
> ment within the trade or profession.

AO 72
(Rev.8/82)

927

537 F.2d at 366. Thus, charges of incompetence alone do not rise to constitutional infringement. Debose v. U.S.D.A., supra; Ong v. Tovey, supra; Mazelski v. Truesdell, 562 F.2d 701 (D.C.Cir. 1977); Mervin v. FTC, 591 F.2d 821 (D.C.Cir. 1978); Paige v. Harris, 584 F.2d 178 (7th Cir. 1978). It is clear then that under the facts alleged, Hill suffered no infringement upon his liberty interests. Summary judgment on this issue is accordingly granted.

## CONCLUSION

For the reasons stated herein; Guerrero's motion for summary judgment is:

    (1) GRANTED as to Count IV on the basis of absolute privilege;

    (2) GRANTED as to Hill's due process liberty claim under Count III;

    (3) DENIED as to Hill's due process property claim under Count III; and

    (4) DENIED as to Hill's interference with contract under Count III.

DATED this 21st day of February, 1984.

JUDGE ALFRED LAURETA

AO 72
(Rev. 8/82)

928