Heather L Kennedy F0246
Karen M. Klaver F0241
C.N.M.I. Public School System
P.O. Box 501370 CK
Saipan, MP  96950

Telephone: (670) 237-3046
Fax:(670) 664-3713

Attorneys for: CNMI Public School System

**IN THE UNITED STATES DISTRICT COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| LISA S. BLACK, | CIVIL ACTION NO.  05-0038 |
| Plaintiff, | |
| vs. | |
| JIM BREWER, individually and in his official capacity as Acting Principal for Hopwood Junior High School, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS PUBLIC SCHOOL SYSTEM, and JOHN AND/OR JANE DOE, | DEFENDANT CNMI PUBLIC SCHOOL SYSTEM'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS |
| Defendants. | |

### DEFENDANT CNMI PUBLIC SCHOOL SYSTEM MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

Defendant CNMI Public School System requests that the Court exclude the testimony of Plaintiff's experts based on Federal Rules of Evidence 402, 403, and 702.  It is well established in U.S. jurisprudence that the trial court is obligated to exercise its gate-keeping function with respect to examining the relevancy and reliability of expert witness testimony.  See, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993) ("*Daubert I* "); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). The trial court

1

maintains a "gatekeeping responsibility" to determine, as a preliminary matter, whether expert scientific testimony is both relevant and reliable. *Daubert I,* 509 U.S. at 589. The proponent of the expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594, 598 (9th Cir.1996). According to these standards, the expert testimony and reports of Edward F. Dragan Ed.D., Larry B. Hocog MD and Roger D. Slater[1] must be excluded.

**The testimony of Plaintiff's Experts is not relevant.**

The proffered testimony of all three of Plaintiff's experts are not relevant because the reports of all three experts are based on a claim of wrongful termination for the alleged exercise of free speech of the plaintiff. This Court dismissed the free speech and wrongful termination claims in its Order Granting Partial Summary Judgment. The court stated:

> [P]laintiff did not engage in constitutionally protected speech. Thus, as a matter of law, plaintiff has no cognizable remedy for her claim for wrongful discharge. Order Granting Partial Summary Judgment, January 5, 2007 p. 5.

Similarly, the court found that Plaintiff had no property interest in continued employment and the non-renewal of Plaintiff's contract did not violate due process. Order Granting Partial Summary Judgment, January 5, 2007 p. 5. Accordingly, the testimony from Plaintiff's experts who have formed their opinions based on wrongful discharge are irrelevant, misleading and prejudicial.

Termination and non-renewal are not the same as evidenced by this Court's January 5, 2007 Order. Yet, Plaintiff's expert reports are filled with numerous references regarding termination and wrongful discharge. The conclusions reached

---

[1] The exclusion of Slater's testimony is discussed in detail in Defendant PSS's Motion to exclude expert testimony regarding financial damages.

2

by the experts are based on the assumption of wrongful discharge/termination.  The only claims remaining for trial are whether Defendants intentionally inflicted emotional distress on Plaintiff and whether Defendants violated due process by allegedly blacklisting Plaintiff.  Order Granting Partial Summary Judgment, January 5, 2007 p. 6-8.  Expert testimony is not relevant or necessary to determine whether Defendants' conduct was extreme and outrageous or whether Defendants blacklisted Plaintiff.  These are simple factual conclusions that jurors can make based on the own experiences.  The assertions and assumptions by these experts are not based on fact and are contrary to the law of this case.  There simply was no wrongful discharge and no such claim by Plaintiff still exists.

Even if the court finds that such testimony is relevant, any probative value is outweighed by its prejudicial and confusing nature pursuant to Fed.Evid.Rule 403.  References and conclusions based on wrongful termination lead to assumptions that will unduly prejudice the Defendants' case.  The U.S. Supreme Court has recognized that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it" and "because of this risk, the judge in weighing the possible prejudice against the probative force under 403 of the present rules exercises more control over experts than other witnesses." *Daubert I*, 509 U.S. at 595.  In this case, the education levels and the designation of "expert" will create undue influence on the jurors that may prevent them from recognizing the faulty assumptions and conclusions by the experts based on wrongful discharge.  The court must properly exercise its discretion to guard against the jury being mesmerized by and expert.

3

*Rogers v. Raymark Industries, Inc*., 922 F.2d 1426, 1431 (9th Cir. 1991)(excluding an expert because the limited probative value of the witness was outweighed).

**Report of Edward F. Dragan**

The perfect example of irrelevance and prejudicial effect is the Dragan Report. The entire report of Dragan is a discussion about the policies, procedures and methods that Dragan contends should have been used by Hopwood Administration before the non-renewal of Plaintiff's contract. The stated goal of the report is "to formulate and present an opinion as to whether the non-renewal of Ms. Black's teaching contract constituted an administrative decision that was reasonable under the circumstances." Dragan Report p. 2.

Whether Defendants made the correct or even the most logical decision is not an issue. Chaffin v. Textron Inc., 861 F.Supp. 972 977 (E.D. Cal 1994); see also, *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) (court does " 'not sit as super-personnel department that reexamines an entity's business decisions' ") (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)). An employer's reasons for termination "need not meet the unqualified approval of a judge or jury so long as they are not based on a discriminatory purpose". *Douglas v. Anderson,* 656 F.2d 528, 534 (9th Cir.1981). A court may not reevaluate "business decisions made in good faith nor second guess an employer's business judgment in an effort to find some possible violation of law". *Madden v. Independence Bank*, 771 F.Supp. 1514, 1517 (C.D.Cal.1991) citing *Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1284-85 (7th Cir.1987). Absent proof of discrimination, an employer must be afforded "a considerable degree of discretion with respect to management of employees . . ." *Id.* citing *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921-22 (2nd Cir.1981). Dragan's proposed expert testimony in this case is an assessment of the business judgment of Defendant Brewer. His assessment is not relevant, particularly with the freedom of speech claim dismissed.

4

It simply does not matter what other schools do or what Dragan believes are appropriate or reasonable practices. As there is no property interest in continued employment, Defendants, by law, do not need any reason to support a decision not to renew an employment contract. The alleged discriminatory reason, free speech, is no longer a cause of action. Defendants have every right not to renew Plaintiff for any reason so long as it is not a discriminatory one. This Court has already found that no discriminatory reason existed. Dragon's entire report is based on the assumption that Defendants need a reason. Accordingly, the testimony and report of Dragan are inadmissible as irrelevant or outweighed by its prejudicial, confusing and misleading effect.

Dragan's testimony must also be excluded pursuant to Rule 702. Expert testimony must assist the jury in understanding evidence or determining a main issue of fact in the case but may not usurp the prerogative of the jury. *Lipsett v. University of Puerto Rico*, 740 F.Supp. 921, 925 (D.Puerto Rico 1990). The inquiry is whether an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. Fed.R.Evid. 702 Advisory Committee's notes.

The jury here does not need expert testimony to determine whether Defendants' conduct was extreme and outrageous or whether the alleged blacklisting of plaintiff violated due process. The issues are quite simple and do not require the testimony of an "educational policy" expert to assist the jury. See, *Lipsett,* 740 F.Supp. at 925 (holding that jurors did not need additional enlightenment from expert testimony to determine whether a work environment was hostile "because it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life and their attitudes toward sexual matters"). It is the intent and conduct of Jim Brewer that may create liability in an intentional infliction of emotional distress claim and such intent cannot be established by expert testimony.

Dragan's testimony would not bring to the jury "anything more than the lawyers can offer in argument." See, *In re Air Crash Disaster,* 795 F.2d 1230, 1233 (5th Cir. 1986). An

5

expert must be more "than an advocate of policy before the jury". *Id.* Dragan is simply another advocate for plaintiff and his expert testimony is at best tangentially related. In *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991), the Ninth Circuit upheld the exclusion of a qualified expert under Fed.R.Evid.403 because of the risk of confusion of an expert's conclusion on a tangentially related matter. The Ninth Circuit stated:

> Jurors may well assume that an expert unlike an ordinary mortal will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path and thus focus unduly on the expert's issues to the determined of issues that are in fact controlling. *Id.*

The testimony of Dragan must be excluded to guard against the jury focusing on the expert's policy issues rather than on the controlling facts and issues of this case.

Even when discrimination claims are still viable, so called policy experts have been excluded in numerous employment discrimination cases. See, *Ward v. Westland Plastics Inc*. 651 F.2d 1266, 1270-71(9th Cir. 1980)(affirmed refusal to admit an expert in discrimination and affirmative action in a gender discrimination case); *Lipsett,* 740 F.Supp. at 925 (expert testimony from a social worker and a psychologist regarding sexual harassment " invades the prerogative of the jury as fact finder and would not assist the jury in understanding the evidence or determining a main issue of fact in the case"); *Smith v. Colorado Interstate Gas Co*., 794 F.Supp. 1035, 1044 (D.Colo. 1992)(gender and race discrimination are issues the jury can evaluate without the assistance of an expert). Quite simply, the testimony of a policy expert in this case where there is no discrimination claim is not relevant and is more prejudicial than probative.

**Dr. Larry Hocog**

The testimony and report of Dr. Hocog must be excluded because it is irrelevant and unreliable. First, Hocog's analysis and conclusion are based on wrongful discharge, which, as

6

discussed earlier, is no longer a claim in this lawsuit. Hocog's report contains numerous references and assumptions regarding wrongful discharge. These include:

> She [Plaintiff] was abruptly terminated for reasons Ms. Black believed were unrelated and not meriting such action. Hocog Report. P. 2.

> The stress culminated in March 3004, when for no valid reason, her employment as a teaching was not renewed. The non-renewal of her contract was then justified to her for reasons that seemed unfair and amounted to a wrongful termination. At this point, her Vitiligo became aggravated and began to spread. Hocog Report. p. 7-8.

In fact, Dr. Hocog's conclusion is based on the assumption of wrongful discharge. His report states: "It is my medical opinion with reasonable medical certainty that Ms. Black's disease diagnosed as Vitiligo could be and probably was further aggravated by the stress of her termination from employment." Hocog Report. p. 6. His conclusions, therefore, are not applicable to the present case because plaintiff was not terminated from her employment and has no action for wrongful discharge.

In the event the court finds that Hocog's testimony is relevant, it still must be excluded. The trial court's gate-keeping function requires more than "simply taking the expert's word for it." *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1319 (9th Cir.1995) (*Daubert II*). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As a preliminary matter, the trial court is required to determine whether a proposed expert is qualified to give expert testimony. *Kumho,* 526 U.S. at 156. Plaintiff must establish that the Dr. Hocog is an expert in a particular field.

Dr. Hocog is a general practitioner currently employed as Emergency Medicine

Physician. He is not a dermatologist and has asserted no prior experience with vitiligo. He is not even Plaintiff's treating physician. Dr. Hocog acknowledges "[v]itiligo is a dermatologic disease of low incidence and prevalence when compared to other well-know disease like diabetes and hypertension (1-2%)". His report does not reference any experience in treating skin conditions or Vitiligo. He bases his "expertise" on the fact that primary care specialists (Family Medicine and Internal Medicine) are usually the managing physicians and that it is "his duty to stay current with medical knowledge and development in diagnosing a variety of disease." Hocog Report p. 3. Plaintiff offers him as an expert simply because he has an M.D. This does not meet the *Daubert* standard. The Ninth Circuit has held "something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive". *Daubert II,* 43 F.3d. at 1315-16. Dr. Hocog's experience as a family medicine and emergency medical practitioner in the CNMI and his claim that he stays current with medical knowledge is not enough to qualify him as an expert in Vitiligo. Just because a person may be qualified "to give opinion in one subject does not mean that he is necessarily qualified to opine in others". *Rogers*, 922 F.2d at 1431.

Dr. Hocog's methodology and conclusions also require this court to exclude his testimony because they are not reliable. If the trial court determines that the expert is qualified in the relevant field, then the court must exercise its gatekeeper function as provided in *Daubert* and *Kumho.* In *Daubert,* the Court held that Rule 702 imposes a special obligation upon the trial judge to "ensure that any and all scientific testimony ... is not only relevant but **reliable**." *Daubert I,* 509 U.S. at 589-90 (emphasis added).

Dr. Hocog bases his assumptions on plaintiff's conditions purely on an e-mail interview with her and documents produced as a result of the present litigation. His report states:

> Source and Reliability "the medical history was obtained by personal e-mail interview. Other pertinent information was obtained from pleadings and her deposition testimony." Hocog Report p. 2.

8

His report is not based on an examination of the Plaintiff, a biopsy of her skin or even a review of her medical records. There is no comparison of Plaintiff's condition before and after her employment with Hopwood Junior High School. Quite simply, Dr. Hocog did not employ reliable methods that any ordinary physician would to reach his conclusion, which are required to show reliability of an expert witness. See, *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420-23(9th Cir 1998)(excluding expert who prepared opinions for purposes of litigation and did not subject conclusions to peer review); *In re Paloi R.R. Yard PCB Litigation*, 35 F.3d. 717, 755 (3rd Cir 1994)(finding as unreliable the testimony of experts who simply rely on plaintiff's self-reported symptoms and causation who do not conduct physical examinations, review medical records, take medical history and conduct laboratory tests). Dr. Hocog conducted an e-mail interview only and bases his conclusions on the fact that Plaintiff "appeared to be very reliable and well-informed about her condition". Hocog Report p. 2. Clearly, a physician's faith in the reliability of a Plaintiff who is in the midst of litigation fails to meet the standard of reliability under 702.

Dr. Hocog acknowledges that the cause of Vitiligo is unknown but leaps to the conclusion that stress is an aggravating fact without so much as a reference to any study connecting vitiligo and stress. Hocog Report p. 7. An expert's "bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology". *Daubert II,* 43 F.3d at 1316. The court "must determine whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue". *Daubert I*, 509 U.S. at 592-93. A general practitioner reaching a conclusion that stress based on wrongful discharge aggravates a skin condition of unknown causes is clearly not based on sound science and valid methodology.

It is quite clear that Dr. Hocog's proposed testimony is entirely the result of this litigation and is not based on any independent treatment of Plaintiff or any independent research or findings. When determining whether proposed expert testimony amounts to good science,

9

"courts may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.  That the testimony proffered by an expert is based directly on legitimate, preexisting research unrelated to the litigation provides the most persuasive basis for concluding that the opinions he expresses were "derived by the scientific method." *Daubert II* 43 F.3d at 1316.

Plaintiff fails to show that the proposed testimony satisfies the reliability prong of Rule 702, which requires that "the testimony is the product of reliable principles and methods." Courts are not required to admit "an expert opinion that is connected to the underlying data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).  The trial court may conclude "that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*  Dr. Hocog's takes an enormous leap with his connection of vitiligo and stress without any sound basis other than reference to general medical texts and an e-mail interview of the Plaintiff.

Based on the foregoing, the testimony from all of Plaintiff's experts must be excluded pursuant to Federal Rules of Evidence 402, 403, and 702.  In the alternative, if the court decides to allow testimony from any of Plaintiff's proffered experts, Defendant PSS requests that the Court exclude any an all references by the expert witnesses and all other witnesses to termination and wrongful discharge because such testimony is prejudicial and misleading for the reasons stated herein.  Defendant PSS requests an order from the court that all parties, witnesses and attorneys are forbidden from raising the issue of termination and/or wrongful discharge, including all direct and indirect forms of communications, including pleadings, questions, testimony, remarks and arguments.

Dated this 7th day of February, 2007.

        Respectfully submitted by:

        _____/s/_____
        Heather L. Kennedy   F0246
        Attorneys for the Public School System