**GEORGE L. HASSELBACK, ESQ. – (F0325-NMI)**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
**P.O. Box 501969**
**Saipan, MP 96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

*Attorneys for Plaintiff Lisa S. Black*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **LISA S. BLACK,** ) | **CIVIL ACTION NO. 05-0038** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPPOSITION TO DEFENDANT** |
| **JIM BREWER, individually and in his** ) | **PSS'S MOTIONS IN LIMINE** |
| **official capacity as Acting Principal for** ) | |
| **Hopwood Junior High School,** ) | |
| **COMMONWEALTH OF THE NORTHERN** ) | **Trial Date : February 20, 2007** |
| **MARIANA ISLANDS PUBLIC SCHOOL** ) | |
| **SYSTEM, and JOHN AND/OR JANE DOE,** ) | |
| ) | |
| Defendants. ) | |

### I. Introduction.

Plaintiff, Lisa Black, by and through counsel, hereby offers her Opposition to the various Motions In Limine field by Defendant PSS. To save time and resources, Plaintiff will respond to all five Motions In Limine filed by PSS in this document, addressing each in turn.

K:\3200\3221-01 Lisa Black\PL\draft\Motions In Limine\Response to theirs\OppMotLimr-020707-glh.doc

**II. PSS's First Motion In Limine.**

**(Expert Testimony)**

PSS's first Motion In Limine seeks to preclude the testimony of Plaintiff's proposed experts Dr. Edward Dragan ("Dr. Dragan") and Dr. Larry Hocog ("Dr. Hocog"). PSS does so by attacking the relevance of both of these proposed experts' testimony and by then contending that Dr. Hocog is not qualified to render the opinion that he does. The testimony of both proposed experts is relevant and Dr. Hocog is more than qualified to testify about the exacerbation of Plaintiff's skin condition due to stress.

Before addressing each of the experts, Plaintiff must inform this Court that all of PSS's arguments regarding what Plaintiff's proposed experts will and will not say and as to what qualifications they have are extremely speculative. These arguments are speculative because ***neither of the Defendants elected to depose ANY of Plaintiff's proposed expert witnesses.*** Plaintiff fully complied with this Court's Order setting deadlines for expert witness disclosure.[1] The Defendants (including PSS) however, never took their depositions. Now, armed with incomplete knowledge of and speculative assumptions regarding both the qualifications of these experts and the substance of their testimony, PSS asks this Court to fully exclude their testimony. Simply put, because of their failure to depose these proposed experts, Defendants have rendered themselves purposefully ignorant, and this purposeful ignorance should not be rewarded by granting this Motion In Limine.

---

[1] *See* Plaintiff's Expert Witness Disclosure filed previously with this Court.

***A. Dr. Dragan's Testimony Is Relevant To Both Of Plaintiff's Remaining Claims.***

The testimony of Dr. Dragan, while prepared prior to this Court's grant of summary judgment regarding Plaintiff's claims for wrongful termination, is still relevant to both her claims for violation of rights to due process under the U.S. and CNMI Constitutions and for intentional infliction of emotional distress ("IIED").

### *1. Dr. Dragan's Testimony Is Relevant To The "Outrageous" Nature Of Defendant's Actions In The Context Of Educational Administration.*

Dr. Dragan has spent significant time studying the policies and procedures of PSS and how they were implemented with regard to Plaintiff.[2]  Defendants will undoubtedly contend that PSS and Mr. Brewer were simply following the internal procedures of PSS and could not, therefore, have acted in an "outrageous" manner sufficient to be liable for IIED.  They have identified on their final witness list and will present institutional representatives to testify to this effect.  The issue of their adherence to reasonable procedures will inevitably come up.  Plaintiff then should be allowed to present the testimony of an expert witness who will say that PSS and Mr. Brewer did not follow their own procedures.  Failing to follow established internal policies and procedures could contribute to a reasonable jury finding that Defendants are liable for IIED.

### *2. Precluding Dr. Dragan's Testimony Entirely Would "Throw The Baby Out With The Bathwater."*

Plaintiff recognizes that there is no longer any claim before this Court for wrongful termination.  Dr. Dragan's testimony, as explained above, is still relevant.  All of Dr. Dragan's

---

[2] *See generally* Dr. Dragan's Report previously filed with this Court.

testimony and report should not be eliminated from evidence simply because *some* of it may no longer be relevant.  The better approach in an instance like this would be appropriate limits on testimony, redaction of written reports and admonishments to the jury to disregard any irrelevant portions.[3]  Furthermore, appropriate jury instructions would operate to remove any lingering concern of potential confusion amongst the jurors.

### B. Dr. Hocog's Testimony Is Relevant To Plaintiff's IIED Claim And He Is Qualified To Give It.

Dr. Hocog's testimony regarding the exacerbation, by stress, of a skin condition from which Plaintiff suffers is relevant to Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") and as a licensed and certified family practitioner of medicine he is qualified to give it.

#### 1. Dr. Hocog's Opinion Can Help Establish Damages For IIED.

Under Commonwealth law, if a defendant commits the tort of IIED, and this commission results in a physical manifestation of symptoms, that defendant may be liable to the victim of their actions for damages arising from that physical manifestation. RESTATEMENT (SECOND) OF TORTS § 46.[4]  So then, one issue of fact for the jury to determine is whether or not Plaintiff suffered from some physical ailment as a result of the emotional distress caused by the

---

[3] For example, Dr. Dragan explains in his report why it was inappropriate to use student evaluations with regard to Ms. Black.  A jury will not likely know that this is true.  Additionally, the manner in which the opinions were solicited (by asking students to write down everything that they did not like about Ms. Black) made these "evaluations" even more inappropriate and rising to the level of "outrageous conduct."  Then when it was communicated to Ms. Black that these "evaluations" would factor into her continued employment that amounted to IIED.  An expert, such as Dr. Dragan is needed so that the jury will understand how teachers should be evaluated so that the jury can compare that to what happened here.

[4] The Restatements being the CNMI's common law under 7 CMC § 3401.

actions of Defendants[5] Dr. Hocog will testify that the skin condition from which Plaintiff suffers can be exacerbated by stress.[6] Dr. Hocog will also testify that, to a reasonable degree of medical certainty, Plaintiff's skin condition was exacerbated by the stress that she suffered in losing her job and her home and having to move away from the CNMI.[7] The jury is free to believe some, all or none of Dr. Hocog's opinions. His opinions, however, are relevant because they bear directly upon the issue of damages under one of Plaintiff's remaining causes of action. Relevance then, is no bar to Dr. Hocog's testimony.

### *2. Dr. Hocog Is Qualified To Render His Opinions.*

PSS also contends that even if this Court is to find that Dr. Hocog's testimony is relevant, it should not be admitted into evidence because he is not qualified to render such an opinion. This is not accurate. First of all, how would PSS know whether or not Dr. Hocog possesses the requisite experience and/or training to render his opinions? PSS ***has never conducted his deposition.*** PSS simply reads Dr. Hocog's report (which could never distill the entirety of Dr. Hocog's experience and training) and summarily declares that he falls short. Again, PSS relies upon its unsupported assumptions and ignorance. It should not be rewarded for doing so.

Furthermore, the gravamen of PSS's attack on Dr. Hocog's qualifications is that, as a "general practitioner employed as [an] Emergency Medicine Physician" he cannot offer any

---

[5] Of course the predicate facts must be proven to find that their actions indeed constitute IIED, but for this discussion that can be assumed.

[6] *See generally* the report of Dr. Hocog previously filed with this Court.

[7] *Id.*

opinion as to any skin conditions as he is not a dermatologist.[8] Simply put, PSS contends that since Dr. Hocog is not a specialist in diseases of the skin, he is automatically precluded from offering opinion testimony regarding diseases of the skin. This is a false standard. The generally prevailing rule is that otherwise qualified physicians or surgeons are not incompetent to testify as experts merely or necessarily because they are not specialists in the particular branch of their profession involved in the case. *See Harris v. Smith*, 372 F.2d 806 (8th Cir. 1967); *Fay v. Mincey*, 454 So. 2d 587 (Fla. Dist. Ct. App. 2d Dist. 1984); *Shover v. Iowa Lutheran Hospital*, 107 N.W.2d 85 (Iowa 1961); *Matter of Aaron*, 417 So. 2d 105 (La. Ct. App. 3d Cir. 1982).

Dr. Hocog is a licensed physician and he is qualified to render a medical opinion. PSS is welcome to cross-examine him as to his qualifications, methodology and conclusions, much as it should have done during a deposition. This, however, does not disqualify him as an expert witness and he should be allowed to testify.

### III. PSS's Second Motion In Limine.

### (Damages)

PSS's second Motion in Limine seeks to preclude Plaintiff's economic damages expert, Roger Slater ("Mr. Slater") from testifying. This Motion should also be denied because PSS again, misconstrues the nature of an expert's testimony and disregards the causes of action still before this Court.

---

[8] PSS's first Motion in Limine at 8.

*A.  Mr. Slater's Testimony Is Admissible.*

Again, PSS, having neglected to depose Plaintiff's experts, hopes that it can preclude their testimony by characterizing it as inadmissible. Each and every of the grounds upon which PSS relies, however, is unsupportable, and this would have been obvious had it prudently deposed Mr. Slater.

*1.  Plaintiff's Damages Arise From Causes Of Action Other Than Wrongful Discharge.*

As they have done with the opinions of Dr. Dragen, PSS attempts to eliminate the entirety of Mr. Slater's opinions because they mention wrongful discharge. Mr. Slater is offered, however, as a damages expert, not to testify as to the ultimate question of liability. Therefore, his opinion is even less likely to result in any inappropriate influence over the jury. This small risk can be eliminated in the same fashion as suggested with regard to Dr. Dragen's. This Court should not eliminate all of Mr. Slater's opinion because the legal theories behind the allegations of liability have changed. His opinions regarding the amount and nature of Plaintiff's damages are still relevant and helpful to the jury.

*2. Mr. Slater's Testimony Regarding Back Pay Could Assist The Jury.*

PSS over-simplifies the nature of the damages calculations in this case. We are not talking about simply multiplying a monthly wage by the number of months that Plaintiff was out of work. Complicated issues of international exchange rates and variables such as limitations on the fungibilty of funds are present here.[9] Again, PSS mis-characterizes the

---

[9] *See* Mr. Slater's report previously filed with this Court.

nature of this case in the hopes that this Court will preclude Mr. Slater from testifying, because it has never deposed him, does not understand as to what he will testify and has made no effort to secure any expert testimony to counter his opinions. This failure should not be rewarded by granting this Motion.

### *3. Plaintiff Has Damages For Her Due Process Violation.*

PSS contends that the only if Plaintiff still had a wrongful discharge claim, could she be entitled to any sort of "front pay" damages. This is incorrect. Plaintiff's due process claim alleges that she was prevented, by the actions of the Defendants, from finding comparable employment as a public or private school teacher on Saipan. This Court has recognized that this is an issue to be tried before the jury. The "cushion" that PSS recognizes "front pay" as being, could be awarded to Plaintiff if the jury finds that she was blacklisted by the Defendants.

### *4. Failure To Mitigate Is A Question For The Jury With Which Mr. Slater Can Aid Them.*

Once again, PSS asks this Court to, in effect, grant a judgment as a matter of law that Plaintiff failed to mitigate her damages. This question should have been properly brought before this Court and briefed in a Motion for Summary Judgment. Since it was not, PSS should not be allowed another bite at the apple and this Motion should be denied.

### *5. PSS Is Speculating That Mr. Slater's Opinion Will Be Speculative?*

Finally, without having conducted his deposition, PSS says that Mr. Slater's opinions are speculative. As has been mentioned repeatedly, this is based upon an assumption. Plaintiff

will take no more of this Court's time, but to say that, once again, Plaintiff's uninformed assumptions should not form the basis for granting this Motion. It should be denied.

### B. Punitive Damages Are Still Available Under Plaintiff's Due Process Claim.

Finally, PSS contends that under CNMI law the Commonwealth cannot be liable for damages in excess of $100.000.00 or any punitive damages, and therefore any mention of punitive damages before the jury would be improper. 7 CMC § 2202. This assertion is based upon the erroneous conclusion that "[t]he federal claims in this case have been dismissed."[10] As this Court has recognized, "because the due process provision [of the Commonwealth Constitution] affords the same protection as does the due process clause of the U.S. Constitution, plaintiff's second claim for a due process violation under the Commonwealth Constitution states a claim for redress under the due process provision of the U.S. Constitution."[11] So contrary to PSS's contention, there still exists a federal claim that is not bound by the damage limitations of CNMI statute.

Furthermore, assuming a plaintiff meets the appropriate burden of proof, punitive damages are recoverable for a claim of violation of due process rights under the U.S. Constitution. *Jones v. City of Modesto*, 408 F.Supp.2d 935, 962-963 (E.D.Cal.,2005) (granting summary judgment eliminating a claim for punitive damages, but recognizing that if sufficiently plead and proven, a claim for violation of due process rights *could* give rise to an award of punitive damages). Here, Plaintiff has alleged, and intends to prove, that Defendants

---

[10] PSS's Memorandum In Support of its Second Motion In Limine at 8.

[11] This Court's January 18, 2007 Order Denying Brewer's Motion To Dismiss, quoting *Office of Attorney General v. Rivera,* 3 N. Mar. I. 438, 445 n.3 (1993).

acted purposefully and with sufficient malicious intent to deprive her of her rights to due process under the U.S. Constitution. Therefore, she should be given the opportunity to present the issue of punitive damages to the jury.[12]

## IV.  PSS's Third Motion In Limine.

### (Evidence of Racism)

Next, PSS asks this Court to preclude any testimony regarding racially motivated comments and jokes made by Mr. Brewer as irrelevant and potentially prejudicial. Central to Plaintiff's case for IIED is the question of what kind of person Mr. Brewer is. Defendants will undoubtedly present him as a competent and effective administrator to rebut the accusation that he could have acted "outrageously." Therefore, they certainly do not want any facts that would counter that contention ever reaching the jury. The jury, however, deserves to know what kind of person Mr. Brewer really is. They deserve to know that one of the principals of the CNMI's public schools makes racially disparaging remarks and racially motivated jokes about persons in general and in reference to specific groups of teachers at his own school.

PSS is correct, Plaintiff does not have a claim for discrimination currently before this Court. She does, however, state a claim for IIED and the jury should know of what outrageous acts Mr. Brewer is capable (made all the more egregious by the fact that he is charged with teaching the CNMI's children). This Motion too should be denied.

---

[12] If PSS desired to have the propriety of punitive damage awards decided as a matter of law, it should have raised this issue prior to the deadline for dispositive motions passed. It did not.

## V.  PSS's Fourth Motion In Limine.

## (The Letter of Concern)

PSS seeks to prohibit any testimony regarding the single most important series of events in the factual background of this case.  PSS seeks to exclude any testimony regarding the "letter of concern" which is central to any explanation of why the Defendants did what they did, and, in the Plaintiff's opinion, why they should be held liable.

### *A.  The Jury Needs To See The Whole Picture.*

Central to Plaintiff's claim for IIED is her burden to prove that Defendants actions were "outrageous."  Central to Plaintiff's claim for violation of her due process rights is her burden to prove that Defendants acted to prevent her from securing employment within the CNMI educational community.  Plaintiff's central contention is that because of her actual and/or perceived involvement in the "letter of concern," she was singled out by the Defendants and that this letter was the impetus that set Defendants on a course of action that culminated in their "outrageous" behavior and Plaintiff's due process violation.  If Plaintiff is not allowed to present any testimony regarding this theory to the jury, she will not be able to explain to them the "why" of this case.  If this Motion is granted, the jury will have no explanation as to why Defendants did what they did.  Without such an explanation, the picture is incomplete and Plaintiff will be prevented from telling her side of the story.  Since it is Plaintiff's contention that the "letter of concern" is the catalyst that started the events leading to this trial, she should be allowed to offer testimony regarding it.[13]

---

[13] Any potential confusion regarding what claims are before the jury can be taken care of with carefully worded jury instructions and explanation to the jurors that there is not claim for wrongful discharge.

### B. *This Court Has Recognized That The Letter Of Concern Is Central To This Case.*

This Court's Final Pretrial Order (at paragraphs 6 and 7), explains that the "letter of concern" involved in this case was delivered to the PSS Board of Education and that Mr. Brewer was charged with investigating its complaints. Therefore, this Court recognized that this letter was important to any explanation of the facts surrounding this case. PSS had an opportunity to review the contents of this Final Pretrial Order, prior to this Court's signature, and propose alternative language. In doing so, ***PSS never objected to the inclusion of these facts in the stipulated and uncontroverted facts section of this Court's Order.*** PSS should not now be allowed to object to testimony on these facts and this Court should stand by its Pretrial Order and allow testimony regarding the "letter of concern" to be offered into evidence at trial.

### VI.  PSS's Fifth Motion In Limine.

### (Various Fact Witnesses)

Finally, PSS seeks to prevent several of Plaintiff's fact-witnesses from testifying for various reasons, all of which do not stand up to any focused scrutiny. Each will be addressed in turn.

### A. *Dr. Janet McCullough and Dr. Anthony Stearns.*

PSS moves to exclude the testimony of Dr. Janet McCullough ("Dr. McCullough") and Dr. Anthony Stearns ("Dr. Stearns") for the same two reasons. Firstly, PSS claims that they were never "revealed as having relevant information during the course of discovery in this litigation,"[14] which is not accurate. Secondly, PSS "anticipates" that these witnesses will be

---

[14] PSS's Memorandum In Support of its Fifth Motion In Limine at 2.

proffered to provide character and/or expert testimony, neither of which is accurate. Again, Plaintiff's refusal to recognize and take advantage of the fruits of discovery and its assumptions regarding the trial strategy of Plaintiff should not form a basis for a Motion In Liming, and this too should be denied.

### *1. Both Of These Witnesses Were Revealed Far In Advance Of Trial.*

PSS is right when it says that neither Dr. McCullough nor Dr. Stearns were revealed as having relevant information in Plaintiff's initial discovery disclosures.[15] Plaintiff did not include these witnesses in her initial discovery because ***at the time of the initial disclosures, they did not possess relevant information.*** However, the notion that they were not "revealed as having relevant information during the course of discovery"[16] insinuating that PSS is somehow surprised that they do is absurd. When Plaintiff's deposition was taken (in part by one of the same PSS attorneys who signed this Motion), both Dr. McCullough and Dr. Stearns were mentioned by name as persons with whom Plaintiff had stayed because of her loss of income and the ability to afford rent. PSS had that information in August of 2006 (when Plaintiff's deposition was taken). It could have followed-up with witness interviews and additional depositions, ***but elected not to.*** PSS's failure to act upon information that it had does not amount to grounds sufficient to support this Motion.

---

[15] *Id.*

[16] *Id.*

### *2. These Witnesses Have Relevant Testimony To Give.*

As it has done with other witnesses that is has failed to depose, PSS assumes (incorrectly) that it knows to what Drs. McCullough and Stearns will testify. They will not testify about anything other than what they have seen, heard, smelled, tasted or touched, as is the prerogative, right and duty of any fact witness so called. Their testimony, as PSS would have learned if it had interviewed or deposed them, will constitute a factual account of what they were able to observe about the Plaintiff after her discharge from PSS. How someone's life is affected is common and acceptable fact testimony in any case for damages, no matter how PSS wishes to categorize it. As before, PSS cannot rely upon its assumptions in the face of its failure to conduct discovery to support this Motion.

### *2. PSS's Standard Would Prevent Any Professional From Testifying As A Fact Witness.*

PSS also seeks to bar these two witnesses from testifying because it contends that their status as physicians will somehow unduly influence the jury. This, taken to its logical conclusion, would prevent any professional that could possibly act as an expert from testifying as a fact witness. If a doctor, engineer or accountant that could possibly be qualified as an expert witness were to observe a traffic accident, they, under PSS's new rule, would not be allowed to say whether the light was red or green. Drs. McCullough and Stearns are offered as fact witnesses, not experts, and simply because they *could* be qualified as the latter, does not preclude them from acting as the former.

K:\3200\3221-01 Lisa Black\PL\draft\Motions In Limine\Response to theirs\OppMotLimr-020707-glh.doc

*B. Nariany Sikyang*

Again, PSS presumes to inform this Court of exactly to what, and in what manner, Nariany Sikyang ("Ms. Sikyang") will testify at trial. They do not offer any deposition testimony to support their contentions, nor do they offer any declaration by Ms. Sikyang demonstrating that they are accurate in their assumptions. As with Plaintiff's other witnesses, PSS has failed to conduct adequate discovery regarding Ms. Sikyang and now wants this Court to reward this failure. Plaintiff should not be penalized by having her witnesses precluded from testifying because PSS has dropped the ball. The appropriate time for objections to Ms. Sikyang's testimony is, again, at trial when PSS will know to what she will testify and not know when it is left to guess.

*C. Roland Brown.*

As Defendant Jim Brewer has[17], PSS asks this Court to preclude the testimony of Dr. Roland Brown ("Dr. Brown"). In the interests of brevity, Plaintiff will direct this Court's attention to her Opposition to Mr. Brewer's sole Motion In Limine.

*D. John B. Joyner.*

Finally, PSS asks that Dr. John B. Joyner ("Dr. Joyner") be precluded from testifying. Once again, PSS has not deposed or interviewed Dr. Joyner. Once again, PSS assumes that it knows to what Dr. Joyner has testified. Once again, PSS wants this Court to reward its failure to depose Dr. Joyner with an order prohibiting him from testifying.[18] As explained above, the

---

[17] *See* Motion In Limine filed by Mr. Brewer.

[18] PSS also complains that Dr. Joyner was not listed in Plaintiff's original disclosures. However, PSS has been aware of Dr. Joyner's involvement in this case from the inception of this lawsuit.

K:\3200\3221-01 Lisa Black\PL\draft\Motions In Limine\Response to theirs\OppMotLimr-020707-glh.doc

"letter of concern" (being central to the factual background of this case), is of paramount importance and Dr. Joyner's testimony regarding the events surrounding it would assist the jury in determining the factual background of this matter.

### III. Conclusion.

For the aforementioned reasons, each of Defendant PSS's Motions In Limine rests either upon erroneous assumptions, misapplied authority or a combination thereof. Therefore, this Court should deny each and every one of PSS's Motions In Limine.

Dated : February 7, 2007            Respectfully submitted,

                                                    O'CONNOR BERMAN DOTTS & BANES
                                                    Attorneys for Plaintiff Lisa Black

                                                    By: _____/s/_____
                                                    GEORGE L. HASSELBACK (F0325)