

28 FPP § 6164
28 Fed. Prac. & Proc. Evid. § 6164

Federal Practice & Procedure
Current through the 2006 Update

Federal Rules Of Evidence
Charles Alan Wright[FNa20], Victor James Gold[FNa21]Pocket Part by , The Late Charles Alan Wright, Victor James Gold

Chapter 7. Witnesses
Rule 611. Mode and Order of Interrogation and Presentation

Link to Monthly Supplemental Service

§   6164 Subdivision (a)--Control Over the Mode and Order of Interrogating Witnesses and Presenting Evidence

**Primary Authority**

Fed.R.Evid. 611

This section identifies the issues courts have decided under Rule 611(a) and describes how those questions have been handled. Because the number of these issues is so great, they are listed at the beginning of this section and a reference to the location at which each is discussed is provided in the footnotes. Limits on the discretion of the courts to decide each issue are also discussed here, including those limits imposed by the Constitution.[FN1]

In deciding the mode of proof under subdivision (a), the courts have controlled the manner in which witnesses may testify. Thus, Rule 611(a) has provided authority for determining whether a witness may give a narrative answer.[FN2] Subdivision (a) also supplies authority for striking direct-examination testimony where the witness on cross-examination was nonresponsive.[FN3] In addition, the rule gives courts power to place other controls over where and how a witness may testify.[FN4]

Rule 611(a) also provides a basis for controlling questions that threaten the rule's policy goals. Thus, the rule permits courts to preclude questions that obscure truth because they are ambiguous, confusing, misleading,[FN5] argumentative,[FN6] compound,[FN7] or assume facts not in evidence.[FN8] Subdivision (a) also provides a basis for controlling questions that waste time because they are collateral,[FN9] cumulative or repetitive,[FN10] have been asked and answered,[FN11] or call for speculation.[FN12] The power to control the mode of proof in order to prevent the waste of time also permits the courts to limit the number of witnesses that will be permitted to testify and the amount of time that may be consumed by their testimony.[FN13] Finally, the rule permits the court to preclude questioning that proceeds in an harassing manner or deals with embarrassing or dangerous matters.[FN14]

The courts also have used Rule 611(a) as a basis for regulating the mode of evidence which is not strictly testimonial. Thus, subdivision (a) has been used as a basis for deciding the manner in which real and demonstrative evidence may be received.[FN15]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In controlling the order of proof courts have exercised their power under subdivision (a) to decide if a party may present evidence out of turn, or must introduce evidence in a particular order,[FN16] obtain a continuance,[FN17] recall a witness,[FN18] reopen a case,[FN19] and conduct rebuttal or surrebuttal.[FN20]

**Controls over mode of proof: testimony**

The most common manner of conducting a direct examination is by asking a series of questions, each of which is aimed at eliciting a specific fact or a limited number of related facts. Alternatively, direct examination can be conducted by asking a general question which seeks from the witness a narrative description of an entire event or transaction. Rule 611(a) grants the courts discretion to permit narrative testimony in order to promote the truth and save time.[FN21] Truth can be promoted because a witness who testifies in the form of a narrative has not been prompted by specific questions suggesting which facts are important. Time can be saved since the cumbersome back and forth of numerous questions and answers is economically replaced with a single question and answer. On the other hand, narrative testimony can also undermine these values. Where the witness testifies in the form of a narrative, the witness may lapse into a discussion of irrelevancies and may refer to facts that are unfairly prejudicial or otherwise inadmissible. Since opposing counsel has not been forewarned of such testimony by a specific question, he cannot object before the testimony is uttered. Instead, he must depend on the questionable efficacy of a motion to strike and instruction to disregard the testimony. Accordingly, Rule 611(a) provides courts with the power to avoid these dangers by precluding narrative testimony.[FN22] However, one prominent commentator concludes that, in most cases, truth will be promoted by permitting narrative testimony.[FN23]

For similar reasons Rule 611(a) gives courts the power to strike direct examination testimony where a witness is nonresponsive on cross-examination.[FN24] Since effective cross-examination is generally assumed to be an indispensable means of discovering the truth,[FN25] testimony on direct examination from a witness who has refused to be cross-examined may undermine rather than reveal the truth.

Rule 611(a) also gives the courts power to control a myriad of other circumstances surrounding the manner in which a witness may give testimony. For example, where the safety or health of a witness or others in the courtroom might be jeopardized by compelling testimony to be given under normal conditions, the courts have permitted testimony to be given in camera,[FN26] outside the courtroom,[FN27] or under other circumstances that afford protection.[FN28]

Rule 611(a) also gives courts the power to permit testimony concerning the remainder of an out-of-court oral statement where testimony as to part of that statement has been admitted and the remainder is needed to clarify or explain.[FN28.1] Rule 611(a) also gives trial courts the power to decide if testimony or recordings will be amplified in the courtroom and what audio equipment will be employed.[FN28.2]

**Controls over mode of proof: questions that undermine truth**

Rule 611(a) is more commonly employed to regulate questions rather than testimony. Objections that a question is ambiguous, confusing, or misleading have been used interchangeably, but should be distinguished because they refer to defects that threaten truth in different ways. A question is ambiguous or unintelligible where it is unclear what facts it seeks to discover.[FN29] This defect is often the result of a poorly constructed question. As a consequence, the appropriate judicial response usually will be to sustain an objection to the question but give the examiner an opportunity to reformulate the inquiry.[FN30] A question is confusing where it may cause the jury to misconstrue its significance. This may occur, for example, where the subject of the question is only remotely connected to the issues in the case and the question and answer may unduly divert the jury's attention away from those issues. The appropriate judicial response usually will be to sustain the objection to the question and not permit that question to be rephrased since it is the subject of inquiry, and not just the form of the question, that is the problem.[FN31] Finally, a question is misleading where it mischaracterizes earlier received evidence or in some other manner tricks the witness into assuming a fact that has not been proven.[FN32] A common solution is to compel the examining party to restate the question in a form that eliminates its misleading aspects, if this is possible. If this is not possible, the question may be precluded and any answer thereto may be struck from the record.[FN33]

The objection that a question is argumentative is closely related to the objections just mentioned. At the outset, it is important to distinguish between an argumentative question and cross-examination that has a sharp edge. An

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 FPP § 6164
28 Fed. Prac. & Proc. Evid. § 6164

Page 3

argumentative question is a question only in form. It is, in substance, an argument because it asserts facts with such a forceful tone it suggests those facts are established and the answer of the witness is of no consequence.[FN34] In contrast, even a vigorous cross-examination has as its central object the extraction of particular answers from the witness. Like a question that assumes facts not in evidence,[FN35] the danger of an argumentative question is that it is suggestive without evidentiary support and, thus, may mislead. Further, because argumentative questions are often stated in a manner that ridicules the witness and any testimony contrary to the argument, those questions often unduly harass and embarrass.[FN36] The appropriate judicial response to an argumentative question is to sustain an objection thereto and permit the question to be rephrased so as to remove its argumentative aspects.[FN37]

[p. 354] A compound question simultaneously poses more than one inquiry and calls for more than one answer. [FN37.1] Such a question presents two problems. First, the question may be ambiguous because of its multiple facets and complexity. Second, any answer may be confusing because of uncertainty as to which part of the compound question the witness intended to address. Where a compound question has been posed, the court may require that its component questions be posed separately. Where a compound question has been posed and answered, the court may require that the answer be clarified so as to eliminate confusion. However, where the answer's content or context makes its meaning clear, no such clarification is needed. Further, even where there is confusion, the court has discretion under Rule 611(a) to deny objections on the ground the objecting party has the opportunity to clarify matters on cross-examination.[FN38]

A question that assumes facts not in evidence goes beyond merely mischaracterizing prior evidence; it simply invents facts never asserted by any admitted evidence.[FN39] Where this is done on direct examination with a friendly witness, the danger is that the questions are suggestive to that witness.[FN40] Thus, the question may also be objectionable under subdivision (c) of Rule 611 on the grounds it is improperly leading.[FN41] Where a question on cross-examination assumes facts not in evidence, the danger is no longer that the question is suggestive to the witness. Subdivision (c) permits cross-examination to be conducted with leading questions, which by definition are suggestive.[FN42] Rather, if the question is not met with an affirmative answer, the danger is that the question suggests the assumed facts to the jury based solely on the unverified assertion of the examiner. This means that cross-examination questions that assume facts not in evidence normally are not objectionable[FN43] on that basis[FN44] so long as the cross-examiner had a good-faith belief that the assumed fact may be true.[FN45] On the other hand, once the witness has answered the question by denying the assumed fact, the direct examiner may be entitled to an instruction that the jury should disregard the suggestions contained within the question.

Finally, Rule 611(a) also gives courts power to deviate from normal witness-examination procedures in order to promote discovery of the truth. Thus, the provision permits courts to determine whether witnesses may be questioned not just by counsel but also by the jury.[FN46]

Rule 611 also gives trial courts power to make comments on the record to guide the questioner and the witness when the examination has reached an impasse.[FN46.1]

**Control over mode of proof: questions that waste time**

Rule 611(a) has also been used as a basis for precluding certain kinds of questions that are objectionable not so much because they obscure the truth, but because they waste time. For example, where a question seeks to elicit testimony that will contradict another witness, questions have been prohibited where the contradiction related only to a so called "collateral matter." Generally, a matter is collateral if the fact would not be relevant for any purpose other than the contradiction.[FN47] Courts sometimes preclude questioning as to such matters because they are of little probative value and, thus, waste time.[FN48] Similarly, the courts may curtail or entirely preclude questioning as to any matter of questionable relevance.[FN49]

More difficult are questions concerning witness examination into matters that are clearly relevant but already have been or will be addressed by other evidence. As a general matter, the courts have discretion to preclude questions that are repetitive or seek cumulative evidence.[FN50] Difficulty results from the fact that witness examination is usually repetitive or cumulative only in a relative sense; while much of the effort may be duplicative, it is rare that a line of questioning has absolutely no prospect of uncovering something new. Thus, the issue the courts must decide is whether the point has been reached in witness examination when the probable benefits of further questioning do not justify the time that questioning will consume.[FN51] In making this decision, the courts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 FPP § 6164
28 Fed. Prac. & Proc. Evid. § 6164

Page 4

must carefully consider the state of the record in the case before it.[FN52] In addition to the evidence already adduced, the court may also consider evidence that is clearly forthcoming.[FN53] In weighing the value of continuing examination, the court should consider not only the prospect of uncovering something new but also the importance of the subject being addressed.[FN54] Courts should not be too quick to terminate an examination on the grounds it is cumulative or repetitive. It is often impossible to determine what an examination will uncover until counsel has been given a reasonable chance to make progress.[FN55] Further, it is often necessary to repeat or subtly alter questions to clarify witness ambiguity or overcome evasion.[FN56] Finally, a certain amount of repetition usually should be permitted to allow the advocates an opportunity to emphasize certain evidence so as to insure that the jury grasps its significance.[FN57]

The power to control repetitive examination includes the discretion to require multiple parties with a similar interest to designate a single attorney to conduct the principal examination of a given witness.[FN57.1]

The objection that a question has been "asked and answered" asserts that the examiner is simply repeating a question to which there has already been an adequate response. Usually the objection is stated where the examiner is repeating a question he has asked himself.[FN58] Occasionally, however, the objection also is proper where the examiner is restating questions posed by another party sharing similar interests, such as a codefendant.[FN59] But courts should be reluctant to sustain where a question posed by one party was asked and answered during examination by an opposing party. A basic goal of cross-examination is to undermine testimony given on direct examination. One of the most effective ways to achieve this goal is to ask the same questions that were posed on direct for the purpose of showing inconsistencies, a failure of memory, or as a foundation to delve into additional details that undermine the impact of the direct.[FN60] Similarly, the restatement during redirect examination of a question first posed on cross-examination may give the witness an opportunity to provide explanation and elaboration not permitted by the cross-examiner. While courts have the discretion to preclude questions that have been asked and answered,[FN61] it is also clear they can permit such questions where there is a reasonable chance that new evidence will be revealed.[FN62]

Questions that call for a lay witness's speculation, conclusion, or opinion with no grounding in personal knowledge have also been precluded on the grounds such questions and the answers thereto are a waste of time.[FN63] Rule 602 establishes the requirement that witnesses usually must testify based on personal knowledge.[FN64] Rules 701 and 702 describe the limited circumstances under which lay and expert witnesses may testify as to their opinions.[FN65]

In addition to regulating specific questions that may waste time, Rule 611(a) permits courts to set limits on the number of witnesses and the amount of time permitted for the trial of a case.[FN66] Establishing such limits may be necessary to encourage attorneys, who might otherwise dither endlessly over minutiae, to get to the point.[FN67] The discretion to establish such limits is especially broad in cases where the complexity of issues or the number of parties threatens to make the trial incomprehensible and intolerably long.[FN68] On the other hand, time limits are arbitrary and abuse Rule 611 discretion where they are formulated without regard to the amount of probative, non-cumulative evidence in a case.[FN69]

Rule 611(a) also gives courts discretion to save time in other ways, such as permitting a witness to summarize testimony[FN69.1] or requiring a witness to give testimony in written form.[FN69.2]

**Controls over mode of proof: questions that harass or unduly embarrass**

Rule 611(a) also provides courts with discretion to protect witnesses from questioning that causes "harassment or **undue embarrassment**." "Harassment" is apparently intended to refer to a manner of examination that is offensive. However, it should be obvious that the provision is not intended to protect witnesses from any and all manner of questioning that would be inappropriate in polite conversation. For example, subdivision (c) expressly permits the manner of questioning to be suggestive in certain circumstances. This is because evasive, nonresponsive, and mendacious witnesses often will reveal the truth only after application of some verbal force. This suggests that "harassment" under Rule 611(a) constitutes the sort of coercive, intimidating behavior that is as likely to confuse and distort as it is likely to squeeze out the truth.[FN70] Rule 611(a) permits trial courts the discretion to require that counsel conform their manner of examination to the needs and dangers of the situation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 FPP § 6164
28 Fed. Prac. & Proc. Evid. § 6164

Page 5

"**Undue embarrassment**" seems to refer to the offense that is caused by the subject matter of questioning.[FN71] Most of the cases where courts have intervened involve questioning concerning illegality[FN72] or acts involving sex,[FN73] drugs,[FN74] religion,[FN75] and other matters of a highly personal nature.[FN76] Limits on such questions are justifiable not only in light of the intrusion into the privacy of the witness but also, again, because such questioning may inhibit rather than advance discovery of the truth. Since inquiry into such matters is likely to be upsetting, responses by the witness may be emotionally reactive rather than thoughtful and give an inaccurate picture of the truth.[FN77] In addition, questions on such subjects may prejudice the jury against the witness and the party with whom he is associated.[FN78] On the other hand, it is clear that Rule 611(a) contemplates that courts will prevent only "**undue**" embarrassment. There are several reasons why some embarrassing questioning should be tolerated. Merely threatening to confront a witness with such matters may provide an impetus to speak the truth. Further, since the subject of many trials is illegal or otherwise improper behavior, it is obvious that Rule 611(a) cannot protect witnesses from all questions concerning such acts. Finally, Rules 608 and 609 make it clear that some embarrassing activity is considered probative of untruthfulness and, thus, may be admissible to impeach.[FN79] Rule 611(a) simply permits the courts to balance the extent to which the subject of questioning is offensive against the potential probative value to be derived from the examination. Where this balance suggests the questioning is not merited, the rule permits the courts to preclude it.[FN80]

The courts have also treated as "undue harassment" questions which, if answered in open court, could jeopardize the safety of the witness or his family.[FN81] In the typical case, the court in a criminal prosecution precludes disclosure of a witness's address or other personal details that could be used by violent criminal elements to locate the witness.[FN82] The problem is that such background matters traditionally have been thought admissible to give the jury a general notion of who the witness is so that the jury might properly weigh his testimony and credibility.[FN83] Moreover, such matters may also be pertinent to credibility or other issues in more than just a general way.[FN84] As a consequence, withholding such details from the jury may impede discovery of the truth and, in a criminal case, also may deny to the accused his right of confrontation.[FN85] The courts accommodate the accused's interests in three ways. First, the courts will preclude disclosure only where there has been at least some showing of danger to the witness.[FN86] Second, the accused must have been permitted to make inquiries into other matters relating to the witness's background sufficient to give the jury an adequate basis to weigh his testimony and credibility.[FN87] Finally, the accused may still be entitled to the disputed information if his need therefor outweighs the risks to the witness.[FN88]

### Controls over mode of proof: real and demonstrative evidence

Rule 611(a) has also been used as a basis for determining the mode of proof when the evidence is tangible rather than purely testimonial.[FN89] Thus, the provision has been used to regulate both real and demonstrative evidence.[FN90] The same issues arising in connection with witness testimony also may be presented when the evidence is tangible. For example, the courts have applied Rule 611(a) to tangible evidence in order to avoid misleading the jury,[FN91] prevent argument,[FN92] save time,[FN93] * * * clarify the facts,[FN93.1] protect against tampering,[FN93.2] * * * and reduce prejudice.[FN94] As with testimonial evidence, Rule 611(a) affords the court great discretion in regulating the use of real and demonstrative evidence.[FN94.1] However, that discretion may be abused where the court precludes a demonstration that is fundamental to a central issue.[FN94.2]

### Control over order of proof: traditional sequence of presentation and the power to deviate

Rule 611(a) gives courts discretion to regulate the order of proof. In most cases, trial courts compel the parties to follow a traditional sequence of presentation.[FN95] That conventional order begins with the party who bears the burden of production presenting its case in chief. That party, the plaintiff in a civil case and the prosecution in a criminal case, presents its physical evidence and calls its witnesses, who first testify on direct examination. The defendant is then permitted to cross-examine, followed by redirect and recross. The testimony of each witness is normally conducted in this fashion until completion and without interruption by testimony from other witnesses. When the examination of a witness has been completed, he is normally excused from any further obligation to appear and testify unless one of the parties expressly reserves the right to recall. At the completion of the presentation of this evidence, the party with the burden of persuasion rests. At this point in the normal order of presentation, the defendant presents its evidence attacking the opponent's case and supporting any affirmative defenses. In a civil case, this is also the time when defendant presents evidence in support of any counterclaim. Direct examination by defendant is again normally followed by cross-examination, redirect, and recross. At the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 FPP § 6164
28 Fed. Prac. & Proc. Evid. § 6164

Page 6

completion of the presentation of this evidence, the defense rests. The plaintiff or prosecution is now entitled to present rebuttal evidence. This evidence must refute the evidence presented by the defense and may not merely support the case-in-chief of the prosecution or plaintiff. Rebuttal is followed by defendant's surrebuttal, which is similarly limited to refuting the rebuttal. Importantly, in each of these various stages of the case, it is normally left to counsel to decide the order in which each item of evidence appropriate for that stage will be presented. Where, however, the admissibility of an item of evidence depends on the existence of certain preliminary facts, evidence of those facts usually must first be shown.

The courts frequently have exercised their discretion under Rule 611(a) to permit deviations from this conventional order of proof where deviation can save time, avoid confusion and prejudice, or accommodate witnesses.[FN96] For example, the courts have permitted or required a party to call a witness while another party's case is still being presented,[FN97] permitted a witness to testify in installments rather than all at once,[FN98] permitted plaintiff to offer rebuttal evidence before defendant's case-in-chief,[FN99] compelled a party to present evidence in an order other than he desired,[FN100] ... delayed cross-examination of a witness until well after the direct examination,[FN100.1] ... and permitted evidence to be received before proof of all preliminary facts necessary to the admissibility of that evidence.[FN101] Four issues of this sort arise with sufficient frequency to merit individual attention: whether the court should permit a continuance, recall of a witness, reopening of a case, and rebuttal or surrebuttal.

### Control over order of proof: continuances

A continuance affects the order of proof in the sense that it delays the order from progressing. In addition to delaying the proceeding in question, a continuance may affect other matters on the court's calendar, which may have been scheduled without anticipating such delays. Thus, since a continuance may waste the time and disrupt the plans of the court as well as other litigants, the court has broad discretion to refuse to continue a case.[FN102] Requests for continuance are usually based on the grounds that the requesting party is not prepared or evidence is not yet available. Accordingly, resolving such questions often requires balancing a number of factors such as the diligence of the requesting party in both preparing to go forward and giving the court timely notice of problems, the benefit to be gained by a continuance, the prejudice to the requesting party if there is no continuance, and the costs of the continuance to the court and other litigants.[FN103]

### Control over order of proof: recalling witnesses

Deciding whether to permit a witness to be recalled often requires balancing the values identified by Rule 611(a) as pertinent to determining the order of proof.[FN104] Permitting recall may advance truth where the witness can testify as to new matters of significance or even just clarify old testimony.[FN105] On the other hand, even where recall can make such a contribution, it consumes time and subjects the witness to the rigors and inconvenience of testifying a second time. The courts have justified striking the balance in favor of denying recall where it would offer nothing new,[FN106] new matter to be disclosed on recall could have been shown during the original examination,[FN107] new matter would simply be cumulative,[FN108] the party seeking recall had an adequate opportunity to question the witness initially[FN109] ... or engaged in misconduct necessitating the recall[FN109.1] ... or failed when the witness was first excused to reserve the right to recall,[FN110] and the evidence to be offered during recall would be inadmissible.[FN111]

The courts also may refuse to permit a witness to be recalled where recall may unduly emphasize the testimony of that witness.[FN111.1]

Because the question is one of balancing conflicting values, appellate courts afford trial courts broad discretion to resolve these issues.[FN112] On the other hand, denial of a request to recall a witness occasionally has been held to be an abuse of discretion where new and crucial evidence was to be adduced.[FN113]

### Control over order of proof: reopening a case

The question of whether a case should be reopened presents a similar conflict of values pertinent to Rule 611(a). On the one hand, reopening a case may advance truth where it is done for the purpose of receiving new and important evidence.[FN114] In addition, reopening to permit the receipt of evidence previously excluded in error

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.